**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : | |

**[PROPOSED ORDER]**

**AND NOW,** this ____day of January, 2025, upon consideration of Defendant City of Philadelphia's Motion for to Dismiss Plaintiffs' Complaint, it is hereby **ORDERED** that the Motion is **GRANTED** and the Complaint is **DISMISSED** as to the City, in its entirety.

_____
Jeffrey L. Schmehl, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : | |

**DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Defendant the City of Philadelphia, by and through its undersigned counsel, hereby files this Motion to Dismiss Plaintiffs' Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6).

Pursuant to Federal Rule of Civil Procedure 10(c), the City hereby incorporates by reference the attached Memorandum of Law as though fully set forth herein.

The City respectfully requests that the Court grant its motion and dismiss Plaintiffs' Complaint as to the City.

Date: January 6, 2025     Respectfully submitted,

          PHILADELPHIA LAW DEPARTMENT
          RENEE GARCIA, CITY SOLICITOR

          */s/ Ryan B. Smith*
          MELISSA MEDINA
          Divisional Deputy City Solicitor
          Pa. Bar No. 327048
          MICHAEL PFAUTZ
          Deputy City Solicitor
          Pa. Bar No. 325323
          RYAN B. SMITH
          Deputy City Solicitor
          Pa. Bar No. 324643
          City of Philadelphia Law Department
          1515 Arch Street, 15th Floor
          Philadelphia, PA 19102
          (215) 410-8264
          Ryan.Smith@phila.gov
          *Counsel for Defendant City of Philadelphia*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, *et al.*, | : | Civil Action |
| | : | No. 24-6348-JLS |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE CITY OF PHILADELPHIA'S MOTION TO DISMISS THE COMPLAINT**
**<u>PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

I.     INTRODUCTION ..........................................................................................................1

II.    BACKGROUND & PROCEDURAL HISTORY ..........................................................2

   A.   Philadelphia Enacts the Nuisance Ordinance ................................................... 2

   B.   Philadelphia Enacts the Commercial Curfew Ordinances ................................. 5

   C.   Plaintiffs Challenge the Ordinances ................................................................... 7

III.   ARGUMENT ..................................................................................................................9

   A.   Legal Standard .................................................................................................. 10

   B.   Plaintiffs Lack Standing to Bring Their Claims .............................................. 12

      1.   The Individual Plaintiffs Lack Standing Because They Fail to Allege Legally Cognizable Harm .......................................................................... 12

      2.   The Organizational Plaintiffs Cannot Maintain Associational Standing ..................... 15

   C.   Counts V & VI Fail to State a Claim for a Violation of Equal Protection ....................... 17

      1.   The Complaint Does Not Allege a Policy or Practice on Which to Base Municipal Liability under Section 1983 ............................................................... 17

      2.   Plaintiffs Fail to State a Claim for Discrimination Through Selective Enforcement of the Ordinances. ........................................................................................ 19

   D.   Counts I and II Fail to State a Claim Because the Ordinances at Issue Are Not Vague or Overbroad .......................................................................................... 22

      1.   The Ordinances Are Not Vague ............................................................... 23

         a.   The Curfew Ordinances Are Not Vague ................................................... 24

         b.   The Nuisance Ordinance Is Not Vague .................................................... 25

      2.   The Overbreadth Doctrine Does Not Apply to Due Process Claims .......................... 26

   E.   Counts III & IV Fail to State a Right to Petition Claim ................................... 28

   F.   Plaintiffs Fail to State a Claim for Conspiracy ................................................ 29

IV.    RELIEF SOUGHT ........................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
   669 F.3d 359 (3d Cir. 2012) ............................................................................. 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 11

*Berrios v. City of Philadelphia*,
   96 F. Supp. 3d 523 (E.D. Pa. 2015)................................................................. 30

*Bielevicz v. Dubinon*,
   915 F.2d 845 (3d Cir. 1990) ............................................................................ 19

*Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*,
   241 A.3d 687 (Pa. Cmwlth. 2020)................................................................... 25

*Boutilier v. Immigration & Naturalization Serv.*,
   387 U.S. 118 (1967) ......................................................................................... 24

*City of New Orleans v. Dukes*,
   427 U.S. 297 (1976) ......................................................................................... 22

*Clapper v. Amnesty Intern. USA*,
   568 U.S. 398 (2013) ......................................................................................... 12

*CMR D.N. Corp. v. City of Philadelphia*,
   703 F.3d 612 (3d Cir. 2013) ...................................................................... 23, 24

*Commonwealth v. Costa*,
   861 A.2d 358 (Pa. Super. 2004) ...................................................................... 24

*Dique v. New Jersey State Police*,
   603 F.3d 181 ..................................................................................................... 20

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
   665 F.3d 524 (3d Cir. 2011) ............................................................................ 22

*Evancho v. Fisher*,
   423 F.3d 347 (3d Cir. 2005) ............................................................................ 18

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ................................................................. 11, 19, 21

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ......................................................................................... 12

*Giaccio v. Pennsylvania.*,
   382 U.S. 399 (1966) ......................................................................................... 24

*Gould Elec. Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000) ............................................................................ 10

*HAPCO v. City of Philadelphia*,
   482 F.Supp.3d 337 (E.D. Pa. 2020)................................................................. 23

*Hill v. Colorado*,
   530 U.S. 703 (2000) ............................................................................... 23, 24, 26

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ........................................................................ 24

*Hosp. & Healthsystem Ass'n. of Pa. v. Com.*,
  77 A.3d 587 (2013) ..................................................................... 23

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) .................................................................... 16

*In re Miller*,
  335 B.R. 335 (Bankr. E.D. Pa. 2005) ........................................ 25

*In re Schering Plow Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) ........................................ 10, 11, 19, 21

*Jewish Home of E. PA v. Ctrs for Medicare & Medicaid Servs.*,
  693 F.3d 359 (3d Cir. 2012) ...................................... 20, 21, 23

*Lutz v. City of York*,
  899 F.2d 255 (3d Cir. 1990) ........................................................ 28

*McTernan v. City of York*,
  564 F.3d 636 (3d Cir. 2009) ........................................................ 18

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) .................................................................... 18

*Mulholland v. County of Berks*,
  706 F.3d 227 (3d Cir. 2013) ........................................................ 18

*Pa. Prison Soc'y v. Cortes*,
  622 F.3d 215 (3d Cir. 2010) ........................................................ 16

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .................................................................... 18

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ................................................ 2, 11

*Rees v. Office of Children & Youth*,
  473 F. App'x 139 (3d Cir. 2012) ................................................ 18

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
  181 F.3d 410 (3d Cir. 1999) ......................................................... 2

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ........................................................ 11

*Schaller v. United States Soc. Sec. Admin.*,
  844 F. App'x 566 (3d Cir. 2021) ................................................ 12

*Startzell v. City of Phila.*,
  533 F.3d 183 (3d Cir. 2008) ........................................................ 20

*Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*,
  733 F. App'x 34 (3d Cir. 2018) .................................................. 28

*Suber v. Wright*,
  574 F. App'x 207 (3d Cir. 2014) ................................................ 20

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................... 16

*Torres v. City of Allentown*,
  2008 WL 2600314 (E.D. Pa. June 30, 2008) ............................ 18

*United Presbyterian Church in the U.S. v. Reagan*,
  738 F.2d 1375 (D.C. Cir. 1984) ................................................. 15

*United States v. Salerno*,
  481 U.S. 739 (1987) ................................................................................................ 28
*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ...................................................................................... 26, 27, 28

Statutes

13 Pa. C.S. § 9102 ................................................................................................... 25
42 U.S.C. Section 1983 ........................................................................................ 7, 10

Rules

Civil Procedure] 12(b)(1) ........................................................................................ 10
Fed. R. Civ. P. 12(b)(6) ........................................................................................... 11
Rule 12(b)(6) ........................................................................................................... 10

I.    **INTRODUCTION**

This case concerns Plaintiffs' constitutional challenge to Philadelphia and the Commonwealth's regulation of businesses that contribute to neighborhood nuisance activity. Philadelphia enacted the Responsible Business Operations and Commercial Business Hour Restrictions Ordinances, which address nuisance behavior by enabling the City to regulate businesses that contribute to public nuisances and enforce late-night curfews in certain areas of the City where crime and nuisance behavior are more prevalent. Plaintiffs are two business affinity groups and several of their members that challenge the Ordinances, claiming the City has selectively enforced the Ordinances against them. Plaintiffs also claim the Ordinances are void for vagueness, overbroad, and that the Ordinances punish them for calling the police in violation of their right to petition.

Plaintiffs' claims suffer from myriad legal deficiencies. *First,* Plaintiffs lack standing because the individual member Plaintiffs have suffered no injury as a result of the City's enactment or enforcement of the Ordinances, and the affinity groups are unable to assert claims on behalf of their unnamed members. *Second,* the Complaint contains only conclusory assertions that the Ordinances are being selectively enforced against Plaintiffs based on race, without identifying a *single* similarly situated business that is not subject to the same level of enforcement, and is devoid of any factual allegations of a policy or practice of intentional discrimination under *Monell*. *Third,* Plaintiffs' due process claims fail because the overbreadth doctrine does not apply to due process claims, and because the language of the Ordinances is clear and does not encourage discriminatory enforcement. *Fourth,* Plaintiffs cannot succeed on their right-to-petition claims because the Nuisance Ordinance does not regulate expressive activity and only applies to businesses that contribute to nuisance behavior. *Fifth,* Plaintiffs have

not pled facts to support an agreement or concerted action on the part of Defendants to violate their constitutional rights, so their conspiracy claims fail.

For the reasons discussed *infra*, the City respectfully requests that the Court dismiss the claims against it.

## II.    BACKGROUND & PROCEDURAL HISTORY[1]

Plaintiffs challenge the City's Responsible Business Operations ("Nuisance") Ordinance, which regulates businesses that cause or contribute to chronic nuisance behaviors throughout the City, and the City's four Commercial Business Hour Restrictions ("Curfew") Ordinances, which impose late-night commercial curfews in certain areas of the City.

### A.  Philadelphia Enacts the Nuisance Ordinance

Philadelphia first enacted the Nuisance Ordinance in 2016 and amended it twice in 2023. During hearings on the first bill in 2016, City Council heard testimony about the prevalence of nuisance-related issues throughout the City and how businesses contributed to them. A representative of the North 22nd Street Business Corridor testified that some businesses were particularly problematic due to "their lack of cleanliness, loitering, and people urinating outside on the sides of their buildings." Tr. of Hearing (June 6, 2016) ("Ex. A") 44:11-20.[2] The

---

[1] For the purposes of this Motion only, the City accepts the facts alleged in Plaintiffs' Complaint as true. At the same time, the Court may also consider matters of public record such as legislative history, judicial documents, "and published reports of administrative bodies." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[2] Testimony of Thera Martin Milling, Manager of the North 22nd Street Business Corridor The cited portions of the transcript of the June 6, 2016, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. A**. The full transcript is available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/1218696?docType=30&FileName=li060616.pdf.

representative testified that these issues were particularly problematic at 'stop-and-gos',[3] and a Ward Committeeperson testified he had seen children "hanging out in the stop-and-go where they're serving alcohol." *Id.* 73:24-74:8.[4]

      As currently enacted, the Nuisance Ordinance applies City-wide and targets businesses contributing to specific, undesirable behaviors ("nuisance behaviors"). Nuisance behaviors include, *inter alia*, unlawful consumption or sale of alcohol, drug activity, street or sidewalk obstruction, and litter. *See* Phila. Code § 9-4401(3) (listing types of "nuisance" behaviors). If a business contributes to a nuisance behavior, the City may issue a warning notice to the business owner, informing the owner that a nuisance behavior occurred either inside or on the street abutting the business and identifying remedial measures the business may take to avoid contributing to the nuisance behavior. *Id.* § 9-4402(2)-(3). In particular, when the Philadelphia Police Department ("PPD") receives a complaint of nuisance behavior, it engages in a process to determine whether there is a nexus between the business and the behavior before citing the business. *See* Tr. of Hearing (June 6, 2023) ("Ex. B"), 25:16-24 (PPD Deputy Commissioner Francis Healy ("DC Healy") explaining that complaints of nuisance behavior are referred to

---

[3] 'Stop-and-gos' "are businesses that typically operate as convenience stores or delis and sell alcohol under either a type R (restaurant liquor) or type E (eating place retail dispenser) license. Despite being licensed to sell alcohol, these entities fail to operate as a bona fide restaurant or eating place, barely complying with minimum requirements associated with their licenses." Pennsylvania Stop-and-Go Legislative Task Force Report and Recommendations (Oct. 2, 2024), ECF No. 1-1 at 7.

[4] The North 22nd Street representative also testified that she met with the then-president of the Plaintiff organization Asian-American Licensed Beverage Association ("AALBA"), Adam Xue, who "commit[ed] that stop-and-gos that are members of his organization will work by a new set of standards and mandates that his organization has come up with to become better neighbors to other businesses and to become better neighbors to the community." *Id.* 44:21-45:6. The witness "believe[d] that's a great step forward," but "underst[ood] that all stop-and-gos are not members of [AALBA], and it is those stop and go owners who most of all need to clean up and fix up their businesses and clean up their act." *Id.* 45:6-13.

3

District captains, but that "just because nuisances happen at a location doesn't mean that the owner is aware of it or responsible for it," so "there's a step-by-step process" in addressing complaints); 36:7-21 (DC Healy emphasizing that the nuisance must be "actually connected to the establishment" to establish a "nexus,", because the "goal" is "to get people to come into the Police Department and come up with an abatement plan").[5]

If a business is cited for three such nuisances within a twelve-month period, it is classified as a "chronic nuisance business." Phila. Code § 9-4401(1) (as amended July 5, 2023). A business may also be designated as a "critical nuisance business" if a serious, violent crime, such as murder, occurs on its premises or as a result of the business's activity. *Id.* § 9-4401(5) & (6). The City may take enforcement action under the Nuisance Ordinance by issuing a "Notice of Intent to Cease Operations" ("Cease Notice") to the owner of the business upon classification as a chronic or critical nuisance business. *Id.* § 9-4403.

The Cease Notice does not operate as an automatic or immediate ground for business closure; instead, it triggers the owner's responsibility to demonstrate adequate remedial measures have been taken or to enter into an abatement plan with the City. *Id.* § 9-4403(1) & (3). Abatement plans include taking steps to prevent the specific, cited nuisance behaviors through the owner's vigilance or by hiring security; installing lighting; maintaining security cameras; displaying signage; addressing litter; and other measures, including "any other measures deemed likely to abate or prevent the recurrence of" the nuisance behavior. *Id.* § 9-4404 (as amended Dec. 13, 2023). One component of an abatement plan may include "documenting proactive

---

[5] The cited portions of the transcript of the June 6, 2023, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. B**. The full transcript is available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/4799255?docType=30&FileName=li060623.pdf.

efforts with the Police Department regarding nuisance behavior or serious violent behavior activities." *Id.*

Only if the owner refuses to respond or to enter into an abatement plan after issuance of a Cease Notice can the City issue a Cease Operations Order (except in cases of emergency, where the owner is provided a post-Order opportunity to take remedial measures). Phila. Code § 9-4403(3)(a)-(c). At every stage of the process, the owner may request administrative review and has the right to appeal any adverse administrative decision. *Id.* §§ 9-4403(2); 9-4405.

### B.  Philadelphia Enacts the Commercial Curfew Ordinances

In 2024, the City enacted ordinances regulating business hours for certain commercial establishments in specific areas of certain City neighborhoods through a series of "Commercial Business Hour Restriction" bills. Bill Nos. 240013-A (effective Apr. 3, 2024), 240414, 240468, 240474, 240476, 240498, codified at Phila. Code §§ 9-630, 9-640, and 9-641 (effective June 13, 2024).[6]

The Curfew Ordinances apply to "Commercial Establishments" that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for consumption or use off premises," including "Food Establishments," defined elsewhere in the Code, and excluding "Food Establishments with a Restaurant Liquor License," as well as those that "serve[] customers exclusively from a drive-through window" or any "vehicle fueling station." Phila. Code § 9-630; *id.* § 9-641 (same); *id.* § 9-642 (same); *id.* § 9-643 (same except for exclusions omitted). The Ordinances prohibit covered establishments from serving the public

---

[6] The Bills are substantially the same except for the geographic area covered by each Bill. Bill No. 240013-A is available at: https://files.amlegal.com/pdffiles/Philadelphia/240013-A.pdf. The Bills are publicly available at https://phila.legistar.com/Legislation.aspx by searching by Bill Number.

between 11 p.m. and 6 a.m. in specified areas, except for Section 9-642, which prohibits public service from 12 midnight to 6 a.m. *Id.*

The Ordinances cover areas described by street boundaries, including both sides of the boundary blocks, in parts of the City's Sixth, Seventh, Ninth, and the boundary of the Eighth and Ninth City Council Districts.  Phila. Code §§ 9-641(2) (effective Aug. 12, 2024); 9-630(2) (as amended Aug. 12, 2024); 9-642(2) (effective Aug. 12, 2024); 9-643(2) (effective Aug. 12, 2024).

On February 23, 2024, the City Council Committee on Licenses and Inspections held a public hearing on Bill No. 240013, the first of the Curfew Ordinances. At the hearing, DC Healy testified that the purpose of the Curfew Ordinances is to "positively impact crime and disorder that historically occurs during the overnight hours." Tr. of Hearing (Feb. 23, 2024) ("Ex. C") 6:5-9.[7] DC Healy further testified that PPD received many complaints between 11 p.m. and 6 a.m. in the designated areas often related to "public disorder," and "open air drug use," much of which "has a nexus to certain businesses." *Id.* 8:3-9.

The Executive Director of the Frankford Community Development Corporation testified that the Frankford neighborhood "has a number of what we call smoke shops and businesses that operate with food establishment licenses, but they barely sell any food that have hours that extend for twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor." *Id.* 15:22-16:9. "They have been a site for illegal drug sales, prostitution, shootings and other violent crimes." *Id.* 16:9-17.

On June 3, 2024, the Committee held a public hearing on Curfew Bills Nos. 240414, 240468, 240474, 240476, and 240498, designating additional areas to be covered by the

---

[7] The cited portions of the transcript are attached hereto as **Ex. C.** The full transcript is publicly available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/2223200?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20022324.pdf.

operating hours restrictions. The President of the Harrowgate Civic Association testified that she requested the business curfew be extended into those areas due to an abundance of "take-out restaurants [in those areas] that are selling . . . drug paraphernalia, are selling papers, pipes and some of them have some needles in there, to sell them loose cigarettes and keeping the individuals that we are having issues with on the business corridors." Tr. of Hearing (June 3, 2024) ("Ex. D"), 8:15-20, 9:1-9.[8]

### C. **Plaintiffs Challenge the Ordinances**

On November 26, 2024, Plaintiffs filed a Complaint against the City, the Commonwealth of Pennsylvania, the Pennsylvania State Police Bureau of Liquor Control Enforcement ("BLCE"), and the Pennsylvania Liquor Control Board ("PLCB") (collectively, the "Commonwealth Defendants"). Compl., ECF No. 1. Plaintiffs are six (6) individual businesses (the "Individual Plaintiffs") and two (2) business affinity organizations (the "Organizational Plaintiffs"): AALBA and the Arab American Business and Professional Association of the Delaware Valley ("AAB"). *Id.* ¶¶ 12-20. The Individual Plaintiffs allege that they are members of AALBA but provide no other information regarding their businesses, save for entity names and addresses. *Id.* As to the City, Plaintiffs bring federal constitutional claims under 42 U.S.C. Section 1983 ("Section 1983") and their state constitutional analogues, alleging the Ordinances violate due process, equal protection, and the right to petition. Plaintiffs also make a claim for civil conspiracy against all Defendants.

---

[8] The cited portions of the transcript are attached hereto as **Ex. D.** The full transcript is publicly available at:
https://www.transcriptroom.org/tr/CAF/DownloadFile/1005365?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20060324.pdf.

The Complaint alleges a handful of enforcement actions taken by the City under the Nuisance Ordinance against some but not all Plaintiffs. The Complaint alleges that, in February 2024, Plaintiff 7701 Ogontz received a "warning letter" from PPD after two individuals were arrested inside the business for allegedly selling drugs near the business. Compl. ¶¶ 168, 169, 171 & Ex. C. Plaintiff 7701 Ogontz claims it is "afraid to even contact the police or report criminal activity in the neighborhood" for fear of "receiv[ing] another nuisance violation," which Plaintiffs believe "could result in the closing of the establishment." *Id.* ¶ 175. Plaintiffs do not claim that 7701 Ogontz has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff Maya 2008 Investment Group LLC alleges that it received two "CVNs"[9] from the Philadelphia Police Department in September 2024 for "patrons drinking on the sidewalk in front of the establishment and creating a nuisance." *Id.* ¶¶ 184, 185. Plaintiff Maya 2008 Investment Group received another CVN days later for creating a nuisance, due to "multiple individuals [. . .] blocking the active pedestrian sidewalk and, when politely asked, fail[ing] to disperse from outside the store." *Id.* ¶ 188. The CVNs were accompanied by warning letters from PPD. *Id.* ¶ 190, Ex. F. Plaintiff was not fined or otherwise penalized by the City as a result of the CVN. *See* Compl. Ex. F. Plaintiffs do not claim that Maya 2008 Investment Group has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff 700 SE Inc. alleges that it received two "citations" from PPD, one for "consumption of alcohol in public parks and similar spaces," and one for "empty beer containers in bushes nearby." *Id.* ¶¶ 193, 194, 199. Plaintiffs do not claim that 700 SE Inc. has been subject

---

[9] Code Violation Notice; *see* Phila. Code § A-506 *et seq.*

to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff CDD 725, Inc. alleges that it has been "subjected to numerous unfounded and unnecessary inspections," including three separate inspections at which "no issues were noted," the last of which the manager on duty refused to sign. *Id.* ¶¶ 205-210 & Ex. G (two signed inspection reports and one unsigned report). Plaintiff alleges that the "officer threatened to return every day for further inspections," including with "PLCB." *Id.* ¶¶ 212, 214. Plaintiffs do not claim that CDD 725 has been subject to any enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiffs seek to enjoin the City "from continuing their unlawful and discriminatory treatment of Plaintiffs," and "from denying or obstructing the renewal of Plaintiffs' liquor licenses or business permits based on discriminatory, unconstitutional, or unlawful criteria." *Id.* at 42-43. Plaintiffs also seek monetary damages in an unspecified amount. *Id.*

## III.    <u>ARGUMENT</u>

Plaintiffs' allegations against the City fail to establish standing and fail to state a claim for relief. As an initial matter, they fail to identify a single instance in which one of their businesses or their member's business was closed by the City or suffered any financial harm from any ordinance, and Individual Plaintiffs have not even established they are located within the catchment area of the Curfew Ordinances. And Plaintiffs' claims on the merits consist entirely of boilerplate assertions and legal conclusions.

The main thrust of Plaintiffs' Complaint is their unsupported conclusion that the Ordinances, while facially neutral, are selectively enforced in a racially discriminatory fashion. But Plaintiffs have not, and cannot, show discriminatory intent or point to a single similarly

situated business that is not subject to the same level of enforcement for violations, destroying their equal protection claim. Nor can Plaintiffs show discriminatory intent on the part of the City, or a policy or practice that would establish municipal liability for their claims under Section 1983.

Plaintiffs also claim the Ordinances are "vague and overbroad" in violation of "Due Process." But Plaintiffs acknowledge that their businesses are covered by the Ordinances, defeating their vagueness claims. Moreover, none of the Ordinances encourage arbitrary enforcement, even without further definition of the terms "primarily" and "goods," about which Plaintiffs complain. And Plaintiffs' overbreadth claim is misplaced; the doctrine does not apply to due process claims and the Ordinances do not regulate any constitutionally protected First Amendment activity. While Plaintiffs separately claim the Nuisance Ordinance penalizes them for calling the police in violation of their right to petition, it does no such thing. Instead, any penalties stem from the business contributing to, not merely reporting, nuisance activity.

Finally, Plaintiffs' failure to plead underlying constitutional violations or any agreement among the Defendants to infringe on their civil rights precludes their baseless conspiracy claim.

## A. <u>Legal Standard</u>

A motion to dismiss for lack of standing is "properly brought pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plow Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citation omitted). Where defendants "contend that the [Complaint] lack[s] sufficient factual allegations to establish standing," *id.*, they raise a "facial challenge" and courts "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *id.* (quoting *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). The standard governing motions to dismiss pursuant to Rule 12(b)(6) applies. *Id.*

Under Rule 12(b)(6), the Court should dismiss an action on a motion made before a responsive pleading is filed when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts undertake a three-step analysis in ruling on a motion to dismiss pursuant to Rule 12(b)(6):

> **First**, the court must tak[e] note of the elements a plaintiff must plead to state a claim. **Second**, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. **Finally**, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)) (emphasis added) (internal quotation marks omitted).

A complaint must "show" its "entitlement" to relief "with its facts." *Id.* at 244 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)). The Court may also consider matters of public record such as legislative history, judicial documents, "letter decisions of government agencies, . . . and published reports of administrative bodies," where "the public ha[s] unqualified access to all of the documents at issue." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) (internal quotation marks and citations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (stating that a Complaint must contain something more than "naked assertion[s]" devoid of "further factual enhancement.").

**B.  Plaintiffs Lack Standing to Bring Their Claims**

The Individual Plaintiffs fail to allege any actual or imminent injury caused by the City and the Organizational Plaintiffs cannot maintain associational standing. For these reasons alone, the Complaint should be dismissed in its entirety.

1.  The Individual Plaintiffs Lack Standing Because They Fail to Allege Legally Cognizable Harm.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167,185 (2000) (citations omitted). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Friends of the Earth*, 528 U.S. at 180-81 (citation omitted). "These elements are conjunctive, with no one being dispositive and all necessary." *Id.* (citation omitted).

To confer standing, the "threatened injury must be certainly impending to constitute injury in fact," and "there must be at least a substantial risk that the harm will occur." *Schaller v. United States Soc. Sec. Admin.*, 844 F. App'x 566, 571 (3d Cir. 2021) (cleaned up). *See also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that a "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are insufficient).

Here, Individual Plaintiffs claim that the City enforces the Ordinances in a racially discriminatory fashion but point to no consequences of the alleged enforcement. As to the Curfew Ordinances, no Individual Plaintiff alleges that they are even located in a covered area or that they have suffered any harm as a result of having to close during the curfew period. The

12

only specific business the Complaint alleges is subject to any Curfew Ordinance[10] is Quick Stop, a non-party member of Organizational Plaintiff AAB, but the Complaint does not allege Quick Stop has suffered any actual injury, and in any event, AAB's alleged harm cannot establish standing for the Individual Plaintiffs. Compl. ¶¶ 220–23.

With regard to the Nuisance Ordinance, per the Complaint, half of the six Individual Plaintiffs—Yo Deli Inc., Best Beer, Inc., and CDD 725 Inc.— have had no interaction at all with the City under the Nuisance Ordinance. The Complaint identifies a handful of warning notices and two CVNs issued by the City to other Individual Plaintiffs, none of which resulted in a fine or a Cease Operations Order, or even a precursor Notice of Intent to Cease Operations. And even if they had, the City is required to give Plaintiffs the opportunity to remediate the issues through an abatement plan before moving forward with ceasing operations. *See* Phila. Code § 9-4403(3)(a)-(c).

Any argument that one or two nuisance citations constitutes harm is speculative at best and cannot confer standing, as it depends on a long line of events that may or may not even occur: another nuisance behavior *possibly* occurring at a Plaintiff's business, PPD *possibly* responding to that nuisance behavior and *possibly* issuing a citation, only after there is a determination that the behavior has a nexus to the business, then *possibly* issuing a Notice of Intent to Cease Operations, if the business has already had two other violations in a twelve month period, and *possibly* ceasing operations if the owner refused to remediate the issues. This is precisely the speculative, hypothetical harm courts have held is insufficient to confer standing.

---

[10] Each Curfew Ordinance is a separate law, so in order to challenge one, Plaintiffs would need to identify a separate member business that was harmed for each individual ordinance. *See supra* Part II.B.

*See Clapper*, 568 U.S. at 409 ("[A] threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are insufficient).

Much of the harm Plaintiffs cite in the Complaint refers to action by the Commonwealth Defendants that Plaintiffs claim poses a threat to their liquor licenses—specifically, the Complaint repeatedly emphasizes that some Plaintiffs and other members of AALBA have received only temporary license renewals for the most recent period. *See, e.g.*, Compl. ¶ 227. But the City is not involved in the issuance, renewal, or revocation of state liquor licenses—nor have Plaintiffs claimed as much. And in the two specific examples of temporary license renewal cited in the Complaint, no action by the City is even alleged. *See* Compl. ¶¶ 151–165 (alleging temporary license renewal for Plaintiff Yo Deli Inc. but action only by the Commonwealth); *id.* 176–182 (alleging temporary license renewal for Best Beer but action only by the Commonwealth). Therefore, any injury related to Plaintiffs' liquor licenses is not traceable to the City.

Finally, Plaintiffs lack standing for their First Amendment right-to-petition claim. It is undisputed that the Nuisance Ordinance does not govern speech or conduct. Where the law "issues no commands or prohibitions . . . and sets forth no standards governing . . . [protected] conduct," a plaintiff lacks sufficient First Amendment harm to invoke the jurisdiction of the federal courts. *United Presbyterian Church in the U.S. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (then-Circuit Judge Scalia). And as discussed above, Plaintiffs have suffered no harm.

Instead, Plaintiffs claim a "chilling effect," in that they are afraid to report crimes because they may receive a citation under the Ordinance. *See* Compl. ¶¶ 175, 256. But merely fearing a consequence from expressive activity, where the expressive activity itself is not subject to the

challenged regulation, is not a legally cognizable harm.[11] "All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) **apart from the 'chill' itself.**" *Id.* (emphasis added) (giving examples of being denied admission to the bar, threatened or actual firing, or denied mail delivery). In those cases, the 'chilling effect' constitutes "the *reason* why the governmental imposition is invalid rather than . . . the *harm* which entitles the plaintiff to challenge it." *Id.* And this distinction makes sense where, as here, there is no causal connection between the alleged chilled behavior (reporting a crime) and the Ordinance (regulating nuisance behavior).

At most, Plaintiffs have alleged hypothetical fears, which cannot confer standing. For that reason alone, the Complaint should be dismissed in its entirety as to the Individual Plaintiffs.

2.  The Organizational Plaintiffs Cannot Maintain Associational Standing.

It is well-settled that an association only "has standing to bring suit on behalf of its members when; (a) its members would otherwise have standing to sue in their own right; (b) the interests at stake are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 n.10 (3d Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). As to the third element, this turns on whether the claim(s) at issue and relief requested require "individualized proof." *Hunt*, 432 U.S. at 344.

Here, the Organizational Plaintiffs lack standing for multiple, independently fatal reasons. First, Organizational Plaintiffs lack standing because they fail to make "specific

---

[11] Plaintiffs are no different from anyone else who reports a suspected crime—if they had a part in the crime, they may be liable, but not simply because they called the police, and their subjective fear of reporting the crime does not implicate the First Amendment.

allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). As discussed above, none of the member Individual Plaintiffs, have alleged cognizable harm by the City, and the Complaint does not allege any harm to the only non-plaintiff member identified. *See* Compl. ¶¶ 220-224 (alleging that individuals in the community rely on Quick Stop only that members of the community rely on the business for groceries, without alleging any harm to the business, enforcement by the City, or the racial identity of the business's owner). For the Nuisance Ordinance specifically, Plaintiff AAB has not alleged *any* action by the City against *any* of its members, in the form of a citation, warning, Notice to Intent, or otherwise.

Second, the nature of the ordinances Plaintiffs challenge requires the participation of their individual members in the lawsuit. The Curfew Ordinances apply only within distinct geographical areas of the City, requiring individualized proof that a business falls within the catchment areas. Moreover, application and enforcement of the Nuisance Ordinance is quite nuanced and hinges on details that will necessarily vary significantly from business to business. *See* Ex. B at 25:16-24 (DC Healy explaining that complaints of nuisance behavior are referred to District captains, and that "just because nuisances happen at a location doesn't mean that the owner is aware of it or responsible for it," so "there's a step-by-step process" in addressing complaints). As discussed *supra*, the circumstances of just the six Individual Plaintiffs, all of whom are members of AALBA, vary greatly, with half the group alleging no action at all by the City under the Ordinance.

Because the Complaint does not contain allegations showing that any member of AALBA or AAB would have standing in their own right to challenge each of the Ordinances,

and because the participation of individual member businesses is necessary to litigate the types of claims in the Complaint, the Organizational Plaintiffs also lack standing.

C. **Counts V & VI Fail to State a Claim for a Violation of Equal Protection**

Plaintiffs' claims for equal protection violations should be dismissed, as Plaintiffs have not alleged a policy or practice to establish a basis for municipal liability under Section 1983, have not identified any similarly situated business that was treated differently, and cannot show discriminatory intent or purpose on the part of the City.

1. The Complaint Does Not Allege a Policy or Practice on Which to Base Municipal Liability under Section 1983.

Plaintiffs' Section 1983 selective enforcement claims should be dismissed for failure to state a claim for municipal liability on the part of the City. It is well-settled that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A municipality can be sued directly under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a **policy statement, ordinance, regulation, or decision officially adopted and promulgated** by that body's officers." *Id.* at 690 (emphasis added). Thus, a complaint that asserts a Section 1983 claim against a municipality must include "**specific factual allegations** referencing the **conduct, time, place, and persons** responsible for any official municipal policy or custom." *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)) (emphasis added).

A complaint that fails to allege conduct by a municipal decisionmaker cannot survive a motion to dismiss. *See McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."); *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (holding that a complaint cannot state a claim against a municipality if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority").

In adjudicating Section 1983 claims against local governments, "courts have recognized a two-path track to municipal liability . . . depending on whether the allegation is based on municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *Id.* (citations and quotations omitted). Regardless of whether the claim is based on an alleged municipal policy or custom, "a plaintiff must show that **an official who has the power to make policy is responsible** for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (emphasis added).

Plaintiffs plead no action by a City decisionmaker with policymaking authority, nor have they asserted a City custom regarding selective enforcement that is at all permanent or well-settled. The Complaint does not identify a single City official who was responsible for the City's alleged selective enforcement of the Ordinances. The only mention made of a City policy is in one boilerplate legal conclusion: "The acts complained of were carried out by the Defendants under the color of state law in their capacities as policymakers, city and state officials and/or police officers, pursuant to the customs, usages, practices, procedures, and laws of the City of Philadelphia, the Philadelphia Police Department, the Commonwealth of Pennsylvania and the

Pennsylvania Liquor Control Board." Compl. ¶¶ 271, 285. Such legal conclusions are "not entitled to the assumption of truth" and should be disregarded by courts when ruling on motions to dismiss. *In re Schering Plow Corp. Intron*, 678 F.3d at 243. *Ssee also Fowler*, 578 F.3d at 210–11 ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

At best, the Complaint points to several isolated instances in which the Nuisance Ordinance was validly enforced against Plaintiffs, with no factual allegations concerning enforcement of any of the Ordinances against other businesses in the City. Plaintiffs set forth no factual allegations concerning the issuance of any supposed City 'policy' or 'custom' of selectively enforcing the Ordinances or the City officials purportedly involved. Plaintiffs have simply failed to plead a plausible claim for municipal liability and their Section 1983 equal protection claims should be dismissed.

2. Plaintiffs Fail to State a Claim for Discrimination Through Selective Enforcement of the Ordinances.

Plaintiffs' equal protection claims fail on the merits because Plaintiffs have not, and cannot, plead discriminatory intent or treatment with respect to the Curfew or Nuisance Ordinances. Neither Ordinance discriminates based on race, religion, or any other protected class: the Nuisance Ordinance is aimed at behavior and the Curfew Ordinance is based on geographical location and business model. *See* Phila. Code §§ 9-4400 *et seq.*, 9-630, 9-640, and 9-641. Recognizing that the Ordinances are neutral on their face, Plaintiffs attempt to manufacture an argument that the Ordinances are being selectively enforced but plead no facts to support their threadbare assertions.

"To establish a selective enforcement claim, a party must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment

was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010); *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). "Persons or parties are similarly situated for Equal Protection Clause purposes when they are alike in all relevant aspects." *Id.* "In order to prove selective enforcement, a party must also 'provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.'" *Id.* at 212 (quoting *Jewish Home of E. PA v. Ctrs for Medicare & Medicaid Servs.*, 693 F.3d 359 (3d Cir. 2012)).

Here, the Complaint cites no evidence of a discriminatory purpose on the part of the City in enacting the Ordinances, nor does it identify a single similarly situated business that is subject to a different level of enforcement of the Ordinances. As to the Nuisance Ordinance, Plaintiffs' claim regarding selective enforcement consists of one boilerplate assertion: "[o]n information and belief, white-owned businesses, takeouts, grocery stores, or restaurants are not similarly designated as potential nuisances." Compl. ¶ 236. Plaintiffs do not identify what "white-owned businesses" they claim are subject to different enforcement of the Ordinance or how those businesses are similarly situated to Plaintiffs in all other respects. Put simply, Plaintiffs do not allege that any other businesses are committing the same violations of the Ordinance without the same enforcement by the City.

As to the Curfew Ordinances, Plaintiffs' claim is similarly deficient—Plaintiffs simply state that, "[u]pon information and belief, other businesses not owned by minorities are not subject to the same level of enforcement. Compl. ¶ 225. Plaintiffs also baldly conclude that "[m]ore affluent, whiter, neighborhoods within Philadelphia are not subject to the same restrictions and oversite as Plaintiffs' businesses," without providing a single example of a

similarly situated "whiter" neighborhood not subject to the Ordinance. Compl. ¶ 93. All of the Complaint's assertions regarding selective enforcement amount to legal conclusions and boilerplate assertions, which are insufficient to overcome a motion to dismiss. *In re Schering Plow Corp. Intron*, 678 F.3d at 243. *See also Fowler*, 578 F.3d at 210–11 ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

Even if Plaintiffs could show differential treatment in relation other businesses, their claims still fail because they cannot show the differential treatment was "based on an unjustifiable standard," *Jewish Home*, 693 F.3d at 363, nor can they show the City had a discriminatory purpose in enacting or enforcing the Ordinances. City Council enacted the Nuisance Ordinance after hearing testimony that undesirable, often dangerous behavior occurs on the grounds of, and is sometimes enabled, intentionally or unintentionally, by certain business models. *See* Ex. C 15:22-16:17 (testimony during Council hearings that certain City neighborhoods have "a number of what we call smoke shops and businesses that operate with food establishment licenses, but they barely sell any food that have hours that extend for twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor . . . [t]hey have been a site for illegal drug sales, prostitution, shootings and other violent crimes.").

As to the Curfew Ordinance, City Council heard testimony that the geographical areas and business models subject to the Curfew Ordinances had higher rates of overnight crime and nuisance behavior than other areas in the City. *See* Ex. C 6:5-9 & 8:39 (testimony describing higher rates of crime overnight including "public disorder" and "open air drug use" with "a nexus to certain businesses"). Thus, it was certainly reasonable for the City to enact ordinances

21

aimed directly at those issues, even if it resulted in the regulation of some businesses more than others. *See, e.g.*, *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 556 (3d Cir. 2011) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) ("Under rational basis review, the challenged classification must be upheld if it is 'rationally related to a legitimate state interest.'"); *Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)) ("[A party must] show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.'").

Beyond alleging a handful of minority businesses that were cited under the Nuisance Ordinance, Plaintiffs plead no facts that even begin to show discriminatory intent or selective enforcement of the Ordinances, so their equal protection claims should be dismissed.

**D.** **Counts I and II Fail to State a Claim Because the Ordinances at Issue Are Not Vague or Overbroad**

In Counts I and II of the Complaint, Plaintiffs assert that the Curfew and Nuisance Ordinances are so vague and "overbroad" that they violate state and federal due process. The parties agree the same analysis applies under both constitutions. Compl. ¶ 250; *see also HAPCO v. City of Philadelphia*, 482 F.Supp.3d 337, 356 (E.D. Pa. 2020) ("The federal and Pennsylvania due process clauses are '"substantially equivalent" in their protective scope.'" (quoting *Hosp. & Healthsystem Ass'n. of Pa. v. Com.*, 77 A.3d 587, 600 n.15 (2013)). But Plaintiffs fail to state a claim under state or federal law, for ***three reasons***. ***First***, the Ordinances are not unconstitutionally vague; ***second,*** the overbreadth doctrine only applies to First Amendment claims, not due process; and ***third,*** the Ordinances are not overbroad in any event.

1.  <u>The Ordinances Are Not Vague</u>

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

"[T]o find an economic civil statute void for vagueness, it must be so vague as to be "no rule or standard at all." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631-32 (3d Cir. 2013) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 1231 (1967)). "That an ordinance may contain some ambiguities does not render it impermissibly vague," *id.*, so long as it does not lack "any legally fixed standards," *Giaccio v. Pennsylvania.*, 382 U.S. 399, 403 (1966).

Further, "[t]o succeed on a facial vagueness challenge, the plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications.'" *CMR D.N. Corp.*, 703 F.3d at 632. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733.

Importantly, "a plaintiff whose [action] is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010); *Commonwealth v. Costa*, 861 A.2d 358, 362 (Pa. Super. 2004) ("[V]agueness challenges may be rejected where an appellant's conduct is clearly prohibited by the statute in question."). Here, Individual Plaintiffs cannot even proceed with a vagueness challenge because, to the extent they have standing, they do not dispute that the Ordinances apply to them. *See, e.g.*, *Holder*, 561 U.S. at 20; *Costa*, 861 A.2d at 362.

Further, "[t]o succeed on a facial vagueness challenge, a plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications." *CMR D.N. Corp.*, 703 F.3d at 632. Because the Ordinances are not vague as applied to the Individual Plaintiffs, the Organizational Plaintiffs, who are not themselves subject to the Ordinances, cannot satisfy this high burden.

> a.   *The Curfew Ordinances Are Not Vague*

The Curfew Ordinances apply to establishments within certain geographic areas of the City that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for consumption or use off premises." Phila. Code §§ 9-630(1)(a), 9-641, 9-642 and 9-643. Plaintiffs claim this language is unduly vague because the terms "primarily" and "goods" are not further defined. Compl. ¶¶ 126-133. But these terms are easily understood by a person of reasonable intelligence, and Plaintiffs provide no explanation as to how these terms are otherwise confusing or leave law enforcement with unfettered discretion.

"Webster's Dictionary defines 'primarily' as 'for the most part; chiefly' and 'in the first place.'" *Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*, 241 A.3d 687 (Pa. Cmwlth. 2020) (quoting Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/primarily (last visited November 4, 2020)). Similarly, the term has been construed to mean at least a "bare majority." *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005) (collecting examples in bankruptcy context).

The term "goods" is even more obvious, to the point that Plaintiffs make no effort to explain how it even could be vague in this context. The term refers to tangible objects, as opposed to services. *See, e.g.*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/goods#dictionary-entry-2 (last updated December 23, 2024) (defining "goods" as, among other things, "something manufactured or produced for sale" such as "canned *goods*"); *see also* 13 Pa. C.S. § 9102 (defining for Pennsylvania's Uniform Commercial Code

24

"goods" as ""All things which are movable"). Further, the Ordinances provide additional clarity by giving the example of an establishment that sells "food" or drinks. Phila. Code § 6-102(19); *see also id.* § 6-102(18) (defining "[f]ood" as any "substance intended for human consumption, whether in solid or liquid form").

In the context of the Curfew Ordinances, these terms are easily applied to provide guidance. The Ordinances apply to establishments where the majority of business consists of customers purchasing tangible items, like food or drink, that they take elsewhere to consume. Plaintiffs do not even dispute that they or their members fall into this category. In fact, they specifically allege that they sell "grocer[ies]" and "alcoholic beverages."  Compl. ¶¶ 28-34.

Nor do Plaintiffs explain how this definition encourages arbitrary enforcement. The most they do is suggest "upon information and belief" that this clear language will nonetheless be enforced arbitrarily. Compl. ¶¶ 132-133. But a void-for-vagueness claim must allege how the language of the law itself supports arbitrary enforcement. *Cf. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (holding that where the "*language* of the ordinance is sufficiently clear . . . the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness." (emphasis added)). Plaintiffs do not identify any part of the Ordinances that leave room for law enforcement to make subjective determinations or policy judgments that would run afoul of due process. Having failed to make that showing, Plaintiffs fail to state a claim that the Curfew Ordinances are unconstitutionally vague.

>          b.  *The Nuisance Ordinance Is Not Vague*

Plaintiffs' vagueness challenge to the Nuisance Ordinance is facially deficient. While Plaintiffs couch their claim as one of vagueness (and overbreadth, addressed below), they fail to identify any problematic language in the law itself; instead they take issue with the so-called "wide range of behaviors" for which a citation may be issued. Compl. ¶¶ 134-135, 242-251. But

the fact that a statute may apply to a broad range of behavior alone is no basis for finding it void for vagueness absent some language "encourag[ing] arbitrary and discriminatory enforcement," *Hill*, 530 U.S. at 732.

Beyond pointing to its broad range, Plaintiffs do not explain what part of the Ordinance's language encourages arbitrary or discriminatory enforcement. To the extent Plaintiffs take issue with the appropriateness of penalizing a business for third party conduct, that is a challenge to the rationality of the legislature's policy decision and one they have failed to plead in the Complaint.[12] *See* Compl. ¶ 135 (suggesting the Ordinance is problematic because it allegedly prohibits behavior "not related to the operation of the business itself"). And as discussed above, Plaintiffs incorrectly interpret the statutory scheme, which only punishes businesses that contribute to the harmful conduct and refuse to make efforts to remedy it. *See supra* Part II.A.

2.   The Overbreadth Doctrine Does Not Apply to Due Process Claims

Plaintiffs also suggest the Curfew and Nuisance Ordinances are "unconstitutionally overbroad" in violation of due process because the Ordinances have "overbroad terms" that do not provide fair notice of what conduct is prohibited, leading to arbitrary enforcement. Compl. ¶¶ 134-135, 139, 242-251. Not only do Plaintiffs fundamentally misunderstand the nature of an overbreadth claim, but precedent in this Circuit clearly forecloses one not based on the First Amendment.[13] As a result, any claim that the Ordinances are "overbroad" in violation of due process fails as a matter of law.

_____

[12] Of course, such a challenge would fail, both because the Ordinance in question does no such thing and because a legislature could rationally conclude that a business whose operation contributes to behavior harmful to the public should be limited to decrease the risk of future harm.

[13] Plaintiffs have not plead an overbreadth argument for their Right to Petition claims in Counts III and IV, but such a claim would fail as a matter of law as well because the Ordinances do not

"Overbreadth is a [federal] standing doctrine that permits parties in cases involving First Amendment challenges to government restrictions on noncommercial speech to argue that the regulation is invalid because of its effect on the First Amendment rights of others not presently before the Court." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 508 (1982). Thus, whether a plaintiff "may make use of the overbreadth doctrine depends, in the first instance, on whether or not it has a colorable claim that the ordinance infringes on constitutionally protected, noncommercial speech of others." *Id.* That is because "[t]he overbreadth doctrine has only been applied in First Amendment cases." *Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*, 733 F. App'x 34, 39 (3d Cir. 2018) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); *Lutz v. City of York*, 899 F.2d 255, 270-71 (3d Cir. 1990) ("[T]he overbreadth doctrine has never been recognized outside the context of the First Amendment[.]")).

Here, Plaintiffs do not claim that the Ordinances infringe on constitutionally protected speech, grounding their claim for overbreadth in due process rather than the First Amendment. As a result, as to Counts I and II, Plaintiffs "overbreadth arguments are misplaced, because [t]he[y] allege[] substantive due process violations rooted in the Fifth and Fourteenth Amendments, not a First Amendment claim." *Id.*

And even if Plaintiffs could invoke overbreadth for purposes of their due process claim, it would fail as a matter of law. Plaintiffs do not identify any fundamental due process rights belonging to third parties that the Ordinances unconstitutionally infringe. Just as they fail to

---

apply to any expressive activity of Plaintiffs or third parties, as discussed in greater detail below in Part III(E), *infra*.

articulate how the Ordinances are vague as applied to Plaintiffs, they also do not allege any vagueness as to third parties. And in any event, businesses generally have no constitutional right to engage in non-expressive commercial activity that harms the public. Cf. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012) ("'[A] public program adjusting the benefits and burdens of economic life to promote the common good . . . ordinarily will not be compensable.'" (citation omitted) (alteration in original)).

### E. Counts III & IV Fail to State a Right to Petition Claim

Plaintiffs' Complaint fails to state a claim for violation of the right to petition the government, Counts III & IV,[14] because they allege only a subjective chilling effect, not that the challenged laws penalize protected conduct.[15] On their face, the Ordinances do not regulate or restrict Plaintiffs' speech in any manner, including their right to petition the government. Plaintiffs instead claim that they are afraid to call PPD to report crimes because they may receive a nuisance warning, which they characterize as a "strike" towards being labeled a chronic nuisance business. *See* Compl. ¶¶ 175, 256. As discussed *supra* in Part III.B.1, this subjective chilling effect is not a legally cognizable harm and is insufficient to maintain a right-to-petition claim.

Far from barring Plaintiffs from contacting police, the plain language of the Ordinance contemplates a dialogue between business owners and the City. *See* Phila. Code §§ 9-4403 (providing that a Cease Operations Order may be issued only if the business refuses to respond or fails to comply with an abatement plan), 9-4404 (describing nuisance abatement plans as

---

[14] Count IV is merely the Pennsylvania Constitution's analog to the U.S. Constitution's right to petition. *See* Compl., §§ 261-65.

[15] Plaintiffs lack standing because they assert no cognizable harm, as discussed in Part III.C, *supra*.

agreements between a business and the City). Moreover, the warning notices attached as exhibits to Plaintiffs' Complaint expressly invite Plaintiffs to contact PPD, providing that if Plaintiffs "need recommendations of how to stop this nuisance behavior from occurring, please feel free to contact the Crime Prevention Officer." Compl., Ex. C, ECF No. 1-3, at 3; *id.*, Ex. F, ECF No. 1-6 at 2. And Plaintiffs do not allege that they have contacted PPD for assistance with nuisance behavior and then received a citation under any Ordinance, nor do they allege any retaliation for having contacted PPD.

Counts III & IV fail to state a right-to-petition claim, so the Court should dismiss them.

### F. <u>Plaintiffs Fail to State a Claim for Conspiracy</u>

Plaintiffs fail to state underlying constitutional claims and fail to allege facts to support a civil conspiracy claim beyond a mere recitation of the elements. A conspiracy under Section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citations omitted). "To prove a conspiracy, a plaintiff must establish: (1) a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for the consequences; (2) the purpose of the plan was to violate the constitutional rights of the plaintiff; and (3) an overt act resulted in the actual deprivation of the plaintiff's constitutional rights." *Id.* at 534-35 (citation omitted). When a plaintiff fails to "demonstrate a deprivation of a constitutional right" in its underlying claims, their "conspiracy claims fail" as well. *Id.* at 535 (citation omitted). "A plaintiff must allege a factual basis to support **agreement** and **concerted action**-the elements of conspiracy." *Id.* at 534 (citations omitted) (emphasis added).

The Complaint is devoid of any allegation regarding a plan, purpose, agreement, or concerted activity between Defendants. As discussed *supra*, the City is not involved in the

issuance, renewal or revocation of state liquor licenses, and in the two specific licensing incidents cited in the Complaint, no action by the City is even alleged. Moreover, Plaintiffs fail to state underlying constitutional violations by Defendants. Because the Complaint is devoid of facts necessary to establish conspiracy, this claim should be dismissed.

IV.   **RELIEF SOUGHT**

For the reasons discussed *supra*, the City respectfully requests that the Court grant this Motion and dismiss Plaintiffs' Complaint for lack of standing and failure to state a claim.

Date: January 6, 2025                    Respectfully submitted,

                                                    PHILADELPHIA LAW DEPARTMENT
                                                    RENEE GARCIA, CITY SOLICITOR

                                                    */s/ Ryan B. Smith*_____
                                                    MELISSA MEDINA
                                                    Divisional Deputy City Solicitor
                                                    Pa. Bar No. 327048
                                                    MICHAEL PFAUTZ
                                                    Deputy City Solicitor
                                                    Pa. Bar No. 325323
                                                    RYAN B. SMITH
                                                    Deputy City Solicitor
                                                    Pa. Bar No. 324643
                                                    City of Philadelphia Law Department
                                                    1515 Arch Street, 15th Floor
                                                    Philadelphia, PA 19102
                                                    (215) 410-8264
                                                    Ryan.Smith@phila.gov
                                                    *Counsel for Defendant City of Philadelphia*

<u>**CERTIFICATE OF SERVICE**</u>

I, Melissa Medina, hereby certify that on January 6, 2025, I caused a true and correct copy of the foregoing Defendant City of Philadelphia's Motion to Dismiss to be served via CM/ECF filing upon counsel for all parties.

Date: January 6, 2025                    <u>*/s/ Melissa Medina*</u>
                                         Melissa Medina
                                         Divisional Deputy City Solicitor