**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : | |

**[PROPOSED ORDER]**

**AND NOW,** this ____day of _____, 2025, upon consideration of Plaintiffs'

Motion for a Preliminary Injunction, and the City of Philadelphia's opposition thereto, it is hereby

**ORDERED** that the Motion is **DENIED**.

_____
Jeffrey L. Schmehl, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, *et al.*, | : | Civil Action |
| | : | No. 24-6348-JLS |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT CITY OF PHILADELPHIA'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendant the City of Philadelphia, by and through its undersigned counsel, hereby files this Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction, ECF No. 3. Pursuant to Federal Rule of Civil Procedure 10(c), the City hereby incorporates by reference the attached Memorandum of Law as though fully set forth herein. The City respectfully requests that the Court deny Plaintiffs' Motion as to the City.

Date: January 16, 2025                    Respectfully submitted,

                                         PHILADELPHIA LAW DEPARTMENT
                                         RENEE GARCIA, CITY SOLICITOR


                                         /s/ Ryan B. Smith
                                         MELISSA MEDINA
                                         Divisional Deputy City Solicitor
                                         Pa. Bar No. 327048
                                         MICHAEL PFAUTZ
                                         Deputy City Solicitor
                                         Pa. Bar No. 325323
                                         RYAN B. SMITH
                                         Deputy City Solicitor
                                         Pa. Bar No. 324643
                                         City of Philadelphia Law Department
                                         1515 Arch Street, 15th Floor
                                         Philadelphia, PA 19102
                                         (215) 410-8264
                                         Ryan.Smith@phila.gov
                                         *Counsel for Defendant City of Philadelphia*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, *et al.*, | : | Civil Action |
| | : | No. 24-6348-JLS |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT CITY OF PHILADELPHIA'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION .........................................................................................................1

II.   BACKGROUND & PROCEDURAL HISTORY ..........................................................2

    A. Philadelphia Enacts the Nuisance Ordinance .......................................................... 2

    B. Philadelphia Enacts the Commercial Curfew Ordinances .........................................5

    C. Plaintiffs Challenge the Ordinances ......................................................................... 7

III.  ARGUMENT ..............................................................................................................10

    A. Legal Standard ........................................................................................................ 11

    B. Plaintiffs Have Not Shown Immediate, Irreparable Harm ...................................... 12

    C. Plaintiffs Are Not Likely to Succeed on the Merits ............................................... 16

        1. Plaintiffs Lack Standing to Bring Their Claims ................................................ 16

            a.   The Individual Plaintiffs Lack Standing Because They Fail to Allege
                 Legally Cognizable Harm. ...................................................................... 16

            b.   The Organizational Plaintiffs Cannot Maintain Associational Standing. ............. 20

        2. Plaintiffs Are Not Likely to Succeed on Their Equal Protection Claims .................... 21

            c.   Plaintiffs Do Not Allege a Policy or Practice on Which to Base Municipal
                 Liability under Section 1983. .................................................................. 21

            d.   Plaintiffs Have Not Shown Discrimination Through Selective
                 Enforcement of the Ordinances. .............................................................. 23

        3. Plaintiffs Are Not Likely to Succeed on Their Due Process Claims ......................... 26

            a.   The Ordinances Are Not Vague ................................................................ 27

            b.   The Overbreadth Doctrine Does Not Apply to Due Process Claims ................... 30

        4. Plaintiffs Are Not Likely to Succeed on Their Right to Petition Claims .................... 32

        5. Plaintiffs Are Not Likely to Succeed on Their Conspiracy Claim .......................... 33

    D. The Equities and the Public Interest Do Not Support Injunctive Relief........................ 34

IV.   RELIEF SOUGHT ......................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*A.O. Smith Corp. v. F.T.C.*,
  530 F.2d 515 (3d Cir. 1976) ................................................................. 13

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir. 1994) ........................................................ 12, 13, 14

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
  669 F.3d 359 (3d Cir. 2012) ................................................................. 32

*Berrios v. City of Philadelphia*,
  96 F. Supp. 3d 523 (E.D. Pa. 2015) ................................................ 33, 34

*Bielevicz v. Dubinon*,
  915 F.2d 845 (3d Cir. 1990) ................................................................. 23

*Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*,
  241 A.3d 687 (Pa. Cmwlth. 2020) ........................................................ 28

*Boutilier v. Immigration & Naturalization Serv.*,
  387 U.S. 118 (1967) ............................................................................. 27

*Bradley v. Pittsburgh Bd. of Educ.*,
  910 F.2d 1172 (3d Cir. 1990) ............................................................... 36

*Cigar Ass'n of Am. v. City of Philadelphia*,
  500 F. Supp. 3d 428 (E.D. Pa. 2020) .................................................... 14

*City of New Orleans v. Dukes*,
  427 U.S. 297 (1976) ............................................................................. 26

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) ....................................................................... 17, 18

*CMR D.N. Corp. v. City of Philadelphia*,
  703 F.3d 612 (3d Cir. 2013) ........................................................... 27, 28

*Commonwealth v. Costa*,
  861 A.2d 358 (Pa. Super. 2004) ..................................................... 27, 28

*Constructors Ass'n of W. Pa. v. Kreps*,
  573 F.2d 811 (3d Cir. 1978) ................................................................. 13

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ........................................................ 12, 13

*Dique v. New Jersey State Police*,
  603 F.3d 181 ........................................................................................ 24

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) ................................................................. 26

*Doe v. Banos*,
  713 F. Supp. 2d 404 (D.N.J. 2010) ....................................................... 15

*EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*,
  2006 WL 892718 (D.N.J. Apr. 4, 2006) ................................................. 15

*Evancho v. Fisher*,
  423 F.3d 347 (3d Cir. 2005) ................................................................. 22

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................... 16, 17
*Giaccio v. Pennsylvania*,
  382 U.S. 399 (1966) ........................................................................ 27
*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................. 15
*Gray v. Jennings*,
  2025 WL 76443 (U.S. Jan. 13, 2025) ...................................... 12, 13
*Grp., Inc. v. Amoco Chems. Corp.*,
  614 F.2d 351 (3d Cir. 1980) ........................................................... 13
*HAPCO v. City of Philadelphia*,
  482 F.Supp.3d 337 (E.D. Pa. 2020) ............................................... 26
*Hill v. Colorado*,
  530 U.S. 703 (2000) ................................................................... 27, 30
*Hohe v. Casey*,
  868 F.2d 69 (3d Cir. 1989) ............................................................. 13
*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ...................................................................... 27, 28
*Hosp. & Healthsystem Ass'n. of Pa. v. Com.*,
  77 A.3d 587 (2013) ......................................................................... 26
*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ........................................................................ 20
*In re Miller*,
  335 B.R. 335 (Bankr. E.D. Pa. 2005) ............................................. 28
*In re Schering Plow Corp. Intron*,
  678 F.3d ......................................................................................... 23
*J.C. Penney Co. v. Giant Eagle, Inc.*,
  813 F. Supp. 360 (W.D. Pa. 1992) ................................................. 14
*Jewish Home of E. PA v. Ctrs for Medicare & Medicaid Servs.*,
  693 F.3d 359 (3d Cir. 2012) ............................................... 24, 25, 26
*Kessler v. Broder*,
  851 A.2d 944 (Pa. Super. 2004) ............................................... 14, 15
*K-Mart Corp. v. Oriental Plaza, Inc.*,
  875 F.2d 907 (1st Cir. 1989) .......................................................... 15
*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004) ........................................................... 12
*Lutz v. City of York*,
  899 F.2d 255 (3d Cir. 1990) ........................................................... 31
*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ........................................................................ 12
*McTernan v. City of York*,
  564 F.3d 636 (3d Cir. 2009) ........................................................... 22
*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) .................................................................. 21, 22
*Mulholland v. County of Berks*,
  706 F.3d 227 (3d Cir. 2013) ........................................................... 22

*New Dana Perfumes Corp. v. The Disney Store, Inc.*,
 131 F. Supp. 2d 616 (M.D. Pa. 2001) .................................................................. 15

*Nken v. Holder*,
 556 U.S. 418 (2009) ............................................................................................. 34

*Orson, Inc. v. Miramax Film Corp.*,
 836 F. Supp. 309 (E.D. Pa. 1993) ....................................................................... 15

*Pa. Prison Soc'y v. Cortes*,
 622 F.3d 215 (3d Cir. 2010) ................................................................................ 20

*Pembaur v. City of Cincinnati*,
 475 U.S. 469 (1986) ............................................................................................. 22

*Pennsylvania v. Trump*,
 281 F. Supp. 3d 553 (E.D. Pa. 2017) ................................................................... 34

*Quaker Chemical Corp. v. Varga*,
 509 F.Supp.2d 469 (E.D. Pa. 2007) ..................................................................... 14

*Rees v. Office of Children & Youth*,
 473 F. App'x 139 (3d Cir. 2012) .......................................................................... 22

*Reilly v. City of Harrisburg*,
 858 F.3d 173 (3d. Cir. 2017) ......................................................................... 12, 34

*Sampson v. Murray*,
 415 U.S. 61 (1974) ............................................................................................... 12

*Santoro v. Morse*,
 781 A.2d 1220 (Pa. Super. 2001) ........................................................................ 15

*Schaller v. United States Soc. Sec. Admin.*,
 844 F. App'x 566 (3d Cir. 2021) .......................................................................... 17

*Sovereign Bank v. Harper*,
 674 A.2d 1085 (Pa. Super. 1996) ........................................................................ 15

*Startzell v. City of Phila.*,
 533 F.3d 183 (3d Cir. 2008) ................................................................................ 24

*Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*,
 733 F. App'x 34 (3d Cir. 2018) ............................................................................ 31

*Suber v. Wright*,
 574 F. App'x 207 (3d Cir. 2014) .......................................................................... 24

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ............................................................................................. 20

*Torres v. City of Allentown*,
 2008 WL 2600314 (E.D. Pa. June 30, 2008) ...................................................... 22

*United Presbyterian Church in the U.S. v. Reagan*,
 738 F.2d 1375 (D.C. Cir. 1984) .......................................................................... 19

*United States v. Salerno*,
 481 U.S. 739 (1987) ............................................................................................. 31

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
 455 U.S. 489 (1982) ...................................................................................... 29, 31

*Wayte v. United States*,
 470 U.S. 598 (1985) ............................................................................................. 26

*Winter*,
 555 U.S. ................................................................................................................. 34

v

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ................................................................................................ 34

Statutes

13 Pa. C.S. § 9102................................................................................................................ 29
42 U.S.C. Section 1983................................................................................................... 8, 11

Defendant the City of Philadelphia, by and through its undersigned counsel, respectfully requests that this Court deny Plaintiffs' Motion for a Preliminary Injunction (ECF No. 3), and in support thereof, submits this memorandum of law.

## I.    <u>INTRODUCTION</u>

Plaintiffs must jump a high hurdle to obtain the extraordinary relief of a preliminary injunction. This is particularly true where, as here, the harm they claim from the City's enforcement of its ordinances is purely financial and entirely speculative. Plaintiffs cannot establish either of the two gateway requirements—that they will suffer irreparable harm and are likely to succeed on the merits— let alone all four factors for injunctive relief.

At the outset, they cannot show they have or will suffer irreparable harm. Plaintiffs identify only speculative financial harms that could be redressed with damages. They cannot even show that a single Plaintiff business has or will be closed. And they fail to address their delay of nearly a year in bringing these claims and the appeal rights they would have if the City ever took steps to close them.

Plaintiffs also cannot show a likelihood of success on the merits because their claims suffer from myriad legal deficiencies. ***First,*** Plaintiffs' lack standing because the individual member Plaintiffs have suffered no injury as a result of the City's enactment or enforcement of the Ordinances, and the affinity groups are unable to assert claims on behalf of their unnamed members. ***Second,*** the Complaint contains only conclusory assertions that the Ordinances are being selectively enforced against Plaintiffs based on race, without identifying a *single* similarly situated business that is not subject to the same level of enforcement, and is devoid of any factual allegations of a policy or practice of intentional discrimination under *Monell*. ***Third,*** Plaintiffs' due process claims fail because the overbreadth doctrine does not apply to due process claims,

and because the language of the Ordinances is clear and does not encourage discriminatory enforcement. ***Fourth,*** Plaintiffs cannot succeed on their right-to-petition claims because the Nuisance Ordinance does not regulate expressive activity and only applies to businesses that contribute to nuisance behavior. ***Fifth,*** Plaintiffs have not pled facts to support an agreement or concerted action on the part of Defendants to violate their constitutional rights, so their conspiracy claims fail.

Meanwhile, the Ordinances Plaintiffs challenge are designed to reduce public nuisances, ranging from violent crime, illegal gambling, and unlicensed alcohol sales to public drunkenness and excessive noise. Thus, the balance of equities and the public interest favor continued enforcement.

For the reasons discussed *infra*, the City respectfully requests that the Court deny Plaintiffs' Motion without a hearing.

## II.    BACKGROUND & PROCEDURAL HISTORY

Plaintiffs seek to enjoin enforcement of the City's Responsible Business Operations ("Nuisance") Ordinance, which regulates businesses that cause or contribute to chronic nuisance behaviors throughout the City, and the City's four Commercial Business Hour Restrictions ("Curfew") Ordinances, which impose late-night commercial curfews for certain businesses located in defined areas of the City.

### A.    Philadelphia Enacts the Nuisance Ordinance

Philadelphia first enacted the Nuisance Ordinance in 2016 and amended it twice in 2023. During hearings on the first bill in 2016, City Council heard testimony about the prevalence of nuisance-related issues throughout the City and how businesses contributed to them. A representative of the North 22nd Street Business Corridor testified that some businesses were particularly problematic due to "their lack of cleanliness, loitering, and people urinating outside

2

on the sides of their buildings." Tr. of Hearing (June 6, 2016) ("Ex. A") 44:11-20.[1] The

representative testified that these issues were particularly problematic at 'stop-and-gos',[2] and a

Ward Committeeperson testified he had seen children "hanging out in the stop-and-go where

they're serving alcohol." *Id.* 73:24-74:8.[3]

As currently enacted, the Nuisance Ordinance applies City-wide and targets businesses

contributing to specific, undesirable behaviors ("nuisance behaviors"). Nuisance behaviors

include, *inter alia*, unlawful consumption or sale of alcohol, drug activity, street or sidewalk

obstruction, and litter. *See* Phila. Code § 9-4401(3) (listing types of "nuisance" behaviors). If a

business contributes to a nuisance behavior, the City may issue a warning notice to the business

owner, informing the owner that a nuisance behavior occurred either inside or on the street

abutting the business and identifying remedial measures the business may take to avoid

continuing contribution to the nuisance behavior. *Id.* § 9-4402(2)-(3). In particular, when the

---

[1] Testimony of Thera Martin Milling, Manager of the North 22nd Street Business Corridor The cited portions of the transcript of the June 6, 2016, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. A**. The full transcript is available at: https://www.transcriptroom.com/tr/CAF/DownloadFile/1218696?docType=30&FileName=li060616.pdf.

[2] 'Stop-and-gos' "are businesses that typically operate as convenience stores or delis and sell alcohol under either a type R (restaurant liquor) or type E (eating place retail dispenser) license. Despite being licensed to sell alcohol, these entities fail to operate as a bona fide restaurant or eating place, barely complying with minimum requirements associated with their licenses." Pennsylvania Stop-and-Go Legislative Task Force Report and Recommendations (Oct. 2, 2024), ECF No. 1-1 at 7.

[3] The North 22nd Street representative also testified that she met with the then-president of the Plaintiff organization Asian-American Licensed Beverage Association ("AALBA"), Adam Xue, who "commit[ed] that stop-and-gos that are members of his organization will work by a new set of standards and mandates that his organization has come up with to become better neighbors to other businesses and to become better neighbors to the community." *Id.* 44:21-45:6. The witness "believe[d] that's a great step forward," but "underst[ood] that all stop-and-gos are not members of [AALBA], and it is those stop and go owners who most of all need to clean up and fix up their businesses and clean up their act." *Id.* 45:6-13.

Philadelphia Police Department ("PPD") receives a complaint of nuisance behavior, it engages in a process to determine whether there is a nexus between the business and the behavior before citing the business. *See* Tr. of Hearing (June 6, 2023) ("Ex. B"), 25:16-24 (PPD Deputy Commissioner Francis Healy ("DC Healy") explaining that complaints of nuisance behavior are referred to District captains, but that "just because nuisances happen at a location doesn't mean that the owner is aware of it or responsible for it," so "there's a step-by-step process" in addressing complaints); 36:7-21 (DC Healy emphasizing that the nuisance must be "actually connected to the establishment" to establish a "nexus,", because the "goal" is "to get people to come into the Police Department and come up with an abatement plan").[4]

If a business is cited for three such nuisances within a twelve-month period, it is classified as a "chronic nuisance business." Phila. Code § 9-4401(1) (as amended July 5, 2023). A business may also be designated as a "critical nuisance business" if a serious, violent crime, such as murder, occurs on its premises or as a result of the business's activity. *Id.* § 9-4401(5) & (6). The City may take enforcement action under the Nuisance Ordinance by issuing a "Notice of Intent to Cease Operations" ("Cease Notice") to the owner of the business upon classification as a chronic or critical nuisance business. *Id.* § 9-4403.

The Cease Notice does not operate as an automatic or immediate ground for business closure; instead, it triggers the owner's responsibility to demonstrate adequate remedial measures have been taken, or to enter into an abatement plan with the City to remediate the issues. *Id.* § 9-4403(1) & (3). Abatement plans include taking steps to prevent the specific, cited nuisance

---

[4] The cited portions of the transcript of the June 6, 2023, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. B**. The full transcript is available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/4799255?docType=30&FileName=li060623.pdf.

behaviors through the owner's vigilance or by hiring security; installing lighting; maintaining security cameras; displaying signage; addressing litter; and other measures, including "any other measures deemed likely to abate or prevent the recurrence of" the nuisance behavior. *Id.* § 9-4404 (as amended Dec. 13, 2023). One component of an abatement plan may include "documenting proactive efforts with the Police Department regarding nuisance behavior or serious violent behavior activities." *Id.*

Only if the owner refuses to respond to the City or enter into an abatement plan after issuance of a Cease Notice can the City issue a Cease Operations Order (except in cases of emergency, where the owner is provided a post-Order opportunity to take remedial measures). Phila. Code § 9-4403(3)(a)-(c). At every stage of the process, the owner may request administrative review and has the right to appeal any adverse administrative decision. *Id.* §§ 9-4403(2); 9-4405.

**B. Philadelphia Enacts the Commercial Curfew Ordinances**

In 2024, the City enacted a series of "Commercial Business Hour Restriction" Ordinances, which regulate business hours for certain commercial establishments in specific areas of some City neighborhoods. Bill Nos. 240013-A (effective Apr. 3, 2024), 240414, 240468, 240474, 240476, 240498, codified at Phila. Code §§ 9-630, 9-640, and 9-641 (effective June 13, 2024).[5]

These Curfew Ordinances apply to "Commercial Establishments" that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for

---

[5] The Bills are substantially the same except for the geographic area covered by each Bill. Bill No. 240013-A is available at: https://files.amlegal.com/pdffiles/Philadelphia/240013-A.pdf. The Bills are publicly available at https://phila.legistar.com/Legislation.aspx by searching by Bill Number.

consumption or use off premises," including "Food Establishments," defined elsewhere in the Code, and excluding "Food Establishments" with a liquor license, as well as those that "serve[] customers exclusively from a drive-through window" or any "vehicle fueling station." Phila. Code § 9-630; *id.* § 9-641 (same); *id.* § 9-642 (same); *id.* § 9-643 (same except for exclusions omitted). The Ordinances prohibit covered establishments from serving the public between 11 p.m. and 6 a.m. in specified areas, except for Section 9-642, which prohibits public service from 12 midnight to 6 a.m. *Id.*

The Ordinances cover areas described by street boundaries, including both sides of the boundary streets, in parts of the City's Sixth, Seventh, Ninth, and the boundary of the Eighth and Ninth City Council Districts.  Phila. Code §§ 9-641(2) (effective Aug. 12, 2024); 9-630(2) (as amended Aug. 12, 2024); 9-642(2) (effective Aug. 12, 2024); 9-643(2) (effective Aug. 12, 2024).

On February 23, 2024, the City Council Committee on Licenses and Inspections held a public hearing on the first of the Curfew Ordinances. At the hearing, DC Healy testified that the purpose of the Curfew Ordinances is to "positively impact crime and disorder that historically occurs during the overnight hours." Tr. of Hearing (Feb. 23, 2024) ("Ex. C") 6:5-9.[6] DC Healy further testified that PPD received many complaints between 11 p.m. and 6 a.m. in the designated areas, often related to "public disorder," and "open air drug use," and often having "a nexus to certain businesses." *Id.* 8:3-9.

The Executive Director of the Frankford Community Development Corporation testified that the Frankford neighborhood "has a number of . . . smoke shops and businesses that operate with food establishment licenses, but they barely sell any food [and] have hours that extend for

---

[6] The cited portions of the transcript are attached hereto as **Ex. C.** The full transcript is publicly available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/2223200?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20022324.pdf.

twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor." *Id.* 15:22-16:9. "They have been a site for illegal drug sales, prostitution, shootings and other violent crimes." *Id.* 16:9-17.

On June 3, 2024, the Committee held a public hearing on Curfew Bills Nos. 240414, 240468, 240474, 240476, and 240498, designating additional areas to be covered by the operating hours restrictions. The President of the Harrowgate Civic Association testified that she requested the business curfew be extended into those areas due to an abundance of "take-out restaurants [in those areas] that are selling . . . drug paraphernalia, are selling papers, pipes and some of them have some needles in there, to sell them loose cigarettes and keeping the individuals that we are having issues with on the business corridors." Tr. of Hearing (June 3, 2024) ("Ex. D"), 8:15-20, 9:1-9.[7]

C. **Plaintiffs Challenge the Ordinances**

On November 26, 2024, Plaintiffs filed a Complaint against the City, the Commonwealth of Pennsylvania, the Pennsylvania State Police Bureau of Liquor Control Enforcement ("BLCE"), and the Pennsylvania Liquor Control Board ("PLCB") (collectively, the "Commonwealth Defendants"). Compl., ECF No. 1. Plaintiffs are six (6) individual businesses (the "Individual Plaintiffs") and two (2) business affinity organizations (the "Organizational Plaintiffs"): the Asian-American Licensed Beverage Association ("AALBA") and the Arab American Business and Professional Association of the Delaware Valley ("AAB"). *Id.* ¶¶ 12-20. The Individual Plaintiffs allege that they are members of AALBA but provide no other

---

[7] The cited portions of the transcript are attached hereto as **Ex. D.** The full transcript is publicly available at:
https://www.transcriptroom.org/tr/CAF/DownloadFile/1005365?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20060324.pdf.

information regarding their businesses, save for entity names and addresses. *Id.* As to the City, Plaintiffs bring federal constitutional claims under 42 U.S.C. Section 1983 ("Section 1983") and their state constitutional analogues, alleging the Ordinances violate due process, equal protection, and the right to petition. Plaintiffs also make a claim for civil conspiracy against all Defendants.

The Complaint alleges a handful of enforcement actions taken by the City under the Nuisance Ordinance against some but not all Plaintiffs. The Complaint alleges that, in February 2024, Plaintiff 7701 Ogontz received a "warning letter" from PPD after two individuals were arrested inside the business for allegedly selling drugs near the business. Compl. ¶¶ 168, 169, 171 & Ex. C. Plaintiff 7701 Ogontz claims it is "afraid to even contact the police or report criminal activity in the neighborhood" for fear of "receiv[ing] another nuisance violation," which Plaintiffs believe "could result in the closing of the establishment." *Id*. ¶ 175. Plaintiffs do not claim that 7701 Ogontz has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff Maya 2008 Investment Group LLC alleges that it received two "CVNs"[8] from the Philadelphia Police Department in September 2024 for "patrons drinking on the sidewalk in front of the establishment and creating a nuisance." *Id*. ¶¶ 184, 185. Plaintiff Maya 2008 Investment Group received another CVN days later for creating a nuisance, due to "multiple individuals [. . .] blocking the active pedestrian sidewalk and, when politely asked, fail[ing] to disperse from outside the store." *Id*. ¶ 188. The CVNs were accompanied by warning letters from PPD. *Id*. ¶ 190, Ex. F. Plaintiff was not fined or otherwise penalized by the City as a result of the CVN. *See* Compl. Ex. F. Plaintiffs do not claim that Maya 2008 Investment Group has been

---

[8] Code Violation Notice; *see* Phila. Code § A-506.

subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff 700 SE Inc. alleges that it received two "citations" from PPD, one for "consumption of alcohol in public parks and similar spaces," and one for "empty beer containers in bushes nearby." *Id*. ¶¶ 193, 194, 199. Plaintiffs do not claim that 700 SE Inc. has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff CDD 725, Inc. alleges that it has been "subjected to numerous unfounded and unnecessary inspections," including three separate inspections at which "no issues were noted," the last of which the manager on duty refused to sign. *Id*. ¶¶ 205-210 & Ex. G (two signed inspection reports and one unsigned report). Plaintiff alleges that the "officer threatened to return every day for further inspections," including with "PLCB." *Id*. ¶¶ 212, 214. Plaintiffs do not claim that CDD 725 has been subject to any enforcement action by the City, or that it ever received a notice of intent to cease operations.

The same day they filed the Complaint, Plaintiffs also filed a motion for a temporary restraining order, preliminary injunction, and expedited discovery. As to injunctive relief, Plaintiffs seek to enjoin the City from "selective enforcement" of the Curfew and Nuisance Ordinances and "any further harassment, intimidation, or retaliation related to Plaintiffs' business operations." Pls' Proposed Order, ECF No. 3, at 2-3[9] ¶ 3. They also seek to enjoin all Defendants from "obstructing the renewal of Plaintiffs' liquor licenses or business permits based

---

[9] Because Plaintiffs' Motion, Proposed Order, and Memorandum of Law are combined in one file on ECF, pin cites refer to the specific document's pagination.

on discriminatory, unconstitutional, or unlawful criteria, including the improper application of the Curfew and Nuisance Ordinances." *Id*. at 3 ¶ 4.

III.  **<u>ARGUMENT</u>**

Plaintiffs do not satisfy any of the requirements for a preliminary injunction. Their allegations of irreparable harm are purely speculative and based on alleged compensable financial harms. They fail to state any claim for relief, much less establish a likelihood of success on the merits. And they seek to enjoin enforcement of health and safety laws that benefit the public by reducing a variety of nuisances that cause a detriment to City residents, a benefit that far outweighs any mere financial injury Plaintiffs claim they might potentially face at some unknown point in the future.

Plaintiffs are not at risk of irreparable harm. While they complain of selective enforcement as to liquor licenses and business closure, they fail to identify a single instance in which one of their businesses or a member's business was closed by the City or even received a notice of the City's intent to cease business operations. Their claims of financial harm are also insufficient. They offer no concrete factual allegations that the Ordinances are harming their businesses at all, let alone to the extent that they could not continue to operate. And even if they had, it is black letter law that compensable money damages are not irreparable harm. In reality, the only "harm" Plaintiffs could allege is a speculative fear that they may be forced at some future time to take responsibility for the conditions in their business and on their property by entering into an abatement plan that remediates nuisance behaviors.

On the merits, Plaintiffs lack standing to challenge the Curfew Ordinances, since no named Plaintiff or identified member falls within the geographic catchment area or has suffered cognizable harm from the Nuisance Ordinance. Their Equal Protection claims are legally

deficient because Plaintiffs have not, and cannot, show discriminatory intent or point to a single similarly situated business that is not subject to the same level of enforcement for violations, nor can Plaintiffs show a policy or practice of discrimination that would establish municipal liability for their Section 1983 claims.

Plaintiffs' due process vagueness claims are also fatally flawed, as Plaintiffs acknowledge that their businesses are covered by the Ordinances; Plaintiffs also fail to explain how the Ordinances encourage arbitrary enforcement. Plaintiffs' overbreadth argument is misplaced; the doctrine does not apply to due process claims and the Ordinances do not regulate any constitutionally protected First Amendment activity. And while Plaintiffs separately claim the Nuisance Ordinance penalizes them for calling the police in violation of their right to petition, it does no such thing. Instead, any penalties under the Ordinance stem from the business contributing to and not merely reporting nuisance activity, and Plaintiffs plead no facts to the contrary. Finally, Plaintiffs' failure to plead underlying constitutional violations or any agreement among the Defendants to infringe on their civil rights precludes their baseless conspiracy claim.

On the other hand, enjoining enforcement of the Ordinances would harm the public interest by preventing the City from combatting public nuisances and crime. Because every injunction factor favors the City, Plaintiffs' request for preliminary injunctive relief must be denied.

A. **Legal Standard**

To obtain preliminary injunctive relief,

the moving party must generally show as a prerequisite[:] "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are

relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d. Cir. 2017) (citation omitted). "[A] movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors," and if those are met "a court then considers the remaining two factors." *Id.* at 179.

"Because 'a preliminary injunction is an extraordinary and drastic remedy,' the movant bears the burden of making '*a clear showing*,'" *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (quoting *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025), and it "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

## B. Plaintiffs Have Not Shown Immediate, Irreparable Harm

At the outset, Plaintiffs fail to show they have suffered or are about to suffer irreparable harm. They appear to claim their businesses will be forced to close because of selective enforcement of the Ordinances, but this argument is purely speculative, lacks factual support, and is insufficient as a matter of law.

"In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). Economic losses, such as a temporary loss of income, "however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). A plaintiff asserting irreparable harm must be able to demonstrate "potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Id.* (citation omitted). "Thus, in order to warrant a preliminary injunction, the injury created by a

failure to issue the requested injunction must '"be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* (quoting *A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 525 (3d Cir. 1976)). And even where such harm is present, it must be real and imminent. An injunction "may not be used simply to eliminate a possibility of a remote future injury" or "merely to allay the fears and apprehensions" of a party. *Cont'l. Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted).

The only tangible harm Plaintiffs claim they will suffer from the City[10] is that the Curfew Ordinances will allegedly "mak[e] it economically untenable" to operate their businesses. Pls.' Mem. of Law, ECF No. 3, at 45-46. But Plaintiffs provide no facts whatsoever to support this speculative claim, so it is insufficient to sustain preliminary injunctive relief. In fact, none of the named Plaintiffs even claim to be located within the catchment areas of any of the Curfew Ordinances, and only one organizational Plaintiff, AAB, cites a single member that falls within

---

[10] Plaintiffs also suggest they will suffer irreparable harm because the Commonwealth Defendants will engage in selective enforcement against them and revoke their liquor licenses, which will allegedly force them to close. Pls.' Mem. at 44-45. Of course, claims about enforcement of the Liquor Code do not provide a basis for enjoining the Ordinances, and the City has no involvement in the issuance or renewal of liquor licenses, nor do Plaintiffs claim as much. Moreover, asserting an equal protection violation alone is insufficient for irreparable harm. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep''t of Safety & Homeland Sec.*, 108 F.4th 194, 203-04 (3d Cir. 2024) ("We explicitly refused to presume that an alleged equal-protection violation irreparably injured the plaintiff." (citing *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 819–20 (3d Cir. 1978)), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025). "[C]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Id.* (quoting *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989)). The only exception to this rule is for First Amendment claims, *see Del. State Sportsmen's Ass'n*, 108 F.4th at 203-04, but Plaintiffs do not assert they are suffering irreparable harm from their right-to-petition claims, Pls.' Mem. at 44-46. And even if Plaintiffs were to put forward such an argument, it would fail because their First Amendment claim is not likely to succeed on the merits, *see infra* Part III.C.4.

Finally, even if they had cited the selective enforcement of the Nuisance Ordinance, that would not present a risk of imminent irreparable harm, since Plaintiffs have the right to appeal any City enforcement before their business is closed. Phila. Code §§ 9-4403(2); 9-4405.

the catchment area. *See* Compl. ¶¶ 220–23. Plaintiff AALBA alleges nothing regarding members located in areas covered by the Ordinances.

As Plaintiffs rightly acknowledge, they must show "[m]ore than a risk of irreparable harm"; preliminary injunctive relief requires "a '**clear showing of immediate irreparable injury**, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'" Pls.' Mem. at 44 (quoting *Acierno*, 40 F.3d at 655) (emphasis added). Failing to demonstrate their claimed harm is an "actual threat" means Plaintiffs are not at risk of irreparable harm.

Moreover, even if Plaintiffs could establish that the Ordinances somehow make their business operations economically untenable, this would merely be a classic financial harm that could be redressed by money damages after trial. *Acierno*, 40 F.3d at, 653 (3d Cir. 1994) ("'however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough'" (citation omitted)). Citing only a nonbinding decision from one of Pennsylvania's intermediate appellate courts[11] and a 30-year-old decision from the Western District, Plaintiffs try to suggest that they somehow fall into exceptions for "'loss of business opportunity'" and "'damage to interest in real estate.'" Pls. Mem. at 44 (quoting *Kessler v. Broder*, 851 A.2d 944, 951 (Pa. Super. 2004); *J.C. Penney Co. v. Giant Eagle, Inc.*, 813 F. Supp. 360, 369 (W.D. Pa. 1992)). But not only does the general rule as explained by the Third Circuit in *Acierno* control here, Plaintiffs do not even meet their claimed exceptions.

At best, the cases Plaintiffs cite explain how financial harm can be considered irreparable if it is impossible to estimate, not that *any* harm to a business or property owner suffices for

---

[11] Federal, not state, law, applies to procedural issues such as the standard for a preliminary injunction. *See, e.g.*, *Quaker Chemical Corp. v. Varga*, 509 F.Supp.2d 469, 478 n.8 (E.D. Pa. 2007); *Cigar Ass'n of Am. v. City of Philadelphia*, 500 F. Supp. 3d 428, 435–36 (E.D. Pa. 2020).

injunctive relief. The theory espoused in *Kessler* stemmed from caselaw discussing the difficulty in quantifying the harm of loss of goodwill resulting from violation of a noncompete agreement and subsequent inference with customer relationships. *See Kessler*, 851 A.2d at 951 & n.11 (citing *Santoro v. Morse*, 781 A.2d 1220, 1229 (Pa. Super. 2001) (citing *Sovereign Bank v. Harper*, 674 A.2d 1085, 1093 (Pa. Super. 1996)). And even *J.C. Penney* recognized that "[b]reach of an exclusive provision in a shopping center lease may not *necessarily* cause irreparable damage to the tenant protected by such a clause." 813. F. Supp. at 369. Instead, the reference to "real estate" is just another variation of the impossible-to-estimate exception, where lost profits from forced competition or damaged sightlines may not reliably be ascertained. *See id.* (citing *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) ("[L]oss of revenues resulting from considerations such as diminished visibility, restricted access, less commodious parking, and the like are sufficiently problematic as to defy precise dollar quantification").

Plaintiffs here do not come close to making a clear showing that their alleged damages cannot be estimated. Plaintiff businesses could easily calculate the profits they previously earned from after curfew hours. Plaintiffs do not even attempt to show that their businesses rely on such revenue to continue. And even Plaintiffs' alleged harm might not manifest at all if customers shift their business to earlier hours. In any event, such alleged harm is by no means impossible to estimate or otherwise irreparable.[12]

---

[12] Moreover, Plaintiffs' delay in bringing their actions demonstrate that their claimed irreparable harm was not of the urgency requiring preliminary injunctive relief. *See, e.g., EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006) (citing *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("[W]here a [movant] delays in seeking preliminary injunctive relief, such delay is evidence that speedy relief is not needed."); *Gidatex, S.r.L. v. Campaniello Imports,*

Because Plaintiffs have not established irreparable harm is immediate and imminent from the Ordinances, preliminary injunctive relief against enforcement cannot be issued.

### C. **Plaintiffs Are Not Likely to Succeed on the Merits**

1. Plaintiffs Lack Standing to Bring Their Claims

The Individual Plaintiffs fail to allege any actual or imminent injury caused by the City, and the Organizational Plaintiffs cannot maintain associational standing. Plaintiffs' Motion fares no better than their Complaint—both are devoid of specific factual allegations of harm, relying instead on their subjective, hypothetical fears of future action by the City under the Ordinances that may never come to pass. For these reasons alone, Plaintiffs cannot show a likelihood of success on the merits.

*a. The Individual Plaintiffs Lack Standing Because They Fail to Allege Legally Cognizable Harm.*

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167,185 (2000) (citations omitted). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

---

*Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *Orson, Inc. v. Miramax Film Corp.*, 836 F. Supp. 309, 312 (E.D. Pa. 1993))). This is true even in the First Amendment context. *See Doe v. Banos*, 713 F. Supp. 2d 404, 415 n.15 (D.N.J. 2010) ("John Doe's lack of urgency as reflected in how this motion was brought before the Court undermines his claim of immediate and irreparable harm to his First Amendment rights"), *aff'd*, 416 Fed. App'x 185 (3d Cir. 2010)). The Complaint cites nuisance notices issued close to a year ago, yet Plaintiffs waited months before seeking injunctive relief. This conduct highlights that even Plaintiffs do not believe any alleged harm requires interim relief.

decision."" *Friends of the Earth*, 528 U.S. at 180-81 (citation omitted). "These elements are conjunctive, with no one being dispositive and all necessary." *Id.* (citation omitted).

To confer standing, the "threatened injury must be certainly impending to constitute injury in fact," and "there must be at least a substantial risk that the harm will occur." *Schaller v. United States Soc. Sec. Admin.*, 844 F. App'x 566, 571 (3d Cir. 2021) (cleaned up). *See also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that a "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are insufficient).

Here, Individual Plaintiffs claim that the City enforces the Ordinances in a racially discriminatory fashion but point to no consequences of the alleged enforcement. As to the Curfew Ordinances, no Individual Plaintiff alleges that they are even located in a covered area or that they have suffered any harm as a result of having to close during the curfew period. The only specific business the Complaint alleges is subject to any Curfew Ordinance[13] is Quick Stop, a non-party member of Organizational Plaintiff AAB, but the Complaint does not allege Quick Stop has suffered any actual injury, and in any event, AAB's alleged harm cannot establish standing for the Individual Plaintiffs. Compl. ¶¶ 220–23.

With regard to the Nuisance Ordinance, per the Complaint, half of the six Individual Plaintiffs—Yo Deli Inc., Best Beer, Inc., and CDD 725 Inc.— have had no interaction at all with the City under the Nuisance Ordinance. The Complaint identifies a handful of warning notices and two CVNs issued by the City to other Individual Plaintiffs, none of which resulted in a fine or a Cease Operations Order, or even a precursor Notice of Intent to Cease Operations. And even

---

[13] Each Curfew Ordinance is a separate law, so in order to challenge one, Plaintiffs would need to identify a separate member business that was harmed for each individual ordinance. *See supra* Part II.B.

if they had, the City is required to give Plaintiffs the opportunity to remediate the issues through an abatement plan before moving forward with ceasing operations. *See* Phila. Code § 9-4403(3)(a)-(c).

While Plaintiffs suggest that one or two nuisance citations constitute harm, that argument rests on speculation, which is insufficient to confer standing as it depends on a long string of events that may or may not even occur: (1) another nuisance behavior *possibly* occurring at a Plaintiff's business, (2) PPD *possibly* responding to that nuisance behavior and *possibly* issuing a citation, only after there is a determination that the behavior has a nexus to the business, (3) then *possibly* issuing a Notice of Intent to Cease Operations, if the business has already had two other violations in a twelve month period, and (4) *possibly* ceasing operations if the owner refused to remediate the issues. This is precisely the speculative, hypothetical harm courts have held is insufficient to confer standing. *See Clapper*, 568 U.S. at 409 ("[A] threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are insufficient).[14]

Finally, Plaintiffs lack standing for their First Amendment right-to-petition claim. It is undisputed that the Nuisance Ordinance does not govern speech or protected conduct. Where the law "issues no commands or prohibitions . . . and sets forth no standards governing . . .

---

[14] Instead, much of the harm Plaintiffs cite in the Complaint refers to action by the Commonwealth Defendants that Plaintiffs claim poses a threat to their liquor licenses—specifically, the Complaint repeatedly emphasizes that some Plaintiffs and other members of AALBA have received only temporary license renewals for the most recent period. *See, e.g.*, Compl. ¶ 227. But the City is not involved in the issuance, renewal, or revocation of state liquor licenses—nor have Plaintiffs claimed as much. And in the two specific examples of temporary license renewal cited in the Complaint, no action by the City is even alleged. *See* Compl. ¶¶ 151–165 (alleging temporary license renewal for Plaintiff Yo Deli Inc. but action only by the Commonwealth); *id.* 176–182 (alleging temporary license renewal for Best Beer but action only by the Commonwealth). Therefore, any injury related to Plaintiffs' liquor licenses is not "fairly traceable" to the City.

[protected] conduct," a plaintiff lacks sufficient First Amendment harm to invoke the jurisdiction

of the federal courts. *United Presbyterian Church in the U.S. v. Reagan*, 738 F.2d 1375, 1378

(D.C. Cir. 1984) (then-Circuit Judge Scalia). And as discussed above, Plaintiffs have suffered no

harm.

Instead, Plaintiffs claim a "chilling effect," in that they are afraid to report crimes because

they may receive a citation under the Ordinance. *See* Compl. ¶¶ 175, 256. But merely fearing a

consequence from expressive activity, where the expressive activity itself is not subject to the

challenged regulation, is not a legally cognizable harm.[15] "All of the Supreme Court cases

employing the concept of 'chilling effect' involve situations in which the plaintiff has

unquestionably suffered some concrete harm (past or immediately threatened) **apart from the**

**'chill' itself.**" *Id.* (emphasis added) (giving examples of being denied admission to the bar,

threatened or actual firing, or denied mail delivery). In those cases, the 'chilling effect'

constitutes "the *reason* why the governmental imposition is invalid rather than . . . the *harm*

which entitles the plaintiff to challenge it." *Id.* And this distinction makes sense where, as here,

there is no causal connection between the alleged chilled behavior (reporting a crime) and the

Ordinance (regulating nuisance behavior).

At most, Plaintiffs have alleged subjective, hypothetical fears, which cannot confer

standing in the absence of identified concrete harm. As a result, the Individual Plaintiffs lack

standing and are unlikely to succeed on the merits for that reason alone.

---

[15] Plaintiffs are no different from anyone else who reports a suspected crime—if they had a part in the crime, they may be liable, but not simply because they called the police, and their subjective fear of reporting the crime does not implicate the First Amendment.

b.  *The Organizational Plaintiffs Cannot Maintain Associational Standing.*

It is well-settled that an association only "has standing to bring suit on behalf of its members when; (a) its members would otherwise have standing to sue in their own right; (b) the interests at stake are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 n.10 (3d Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). As to the third element, this turns on whether the claim(s) at issue and relief requested require "individualized proof." *Hunt*, 432 U.S. at 344.

Here, the Organizational Plaintiffs lack standing for multiple, independently fatal reasons. First, Organizational Plaintiffs lack standing because they fail to make "specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). As discussed above, none of the member Individual Plaintiffs have alleged cognizable harm by the City, and the Complaint does not allege any harm to the only non-plaintiff member identified. *See* Compl. ¶¶ 220-224 (alleging that individuals in the community rely on Quick Stop only that members of the community rely on the business for groceries, without alleging any harm to the business, enforcement by the City, or the racial identity of the business's owner). For the Nuisance Ordinance specifically, Plaintiff AAB has not alleged *any* action by the City against *any* of its members, in the form of a citation, warning, Notice of Intent, or otherwise.

Second, the nature of the ordinances Organizational Plaintiffs challenge requires the participation of their individual members in the lawsuit. The Curfew Ordinances apply only within distinct geographical areas of the City, requiring individualized proof that a business falls within the catchment areas, is affected by the curfew, and is not otherwise exempt. Moreover, application and enforcement of the Nuisance Ordinance is quite nuanced and hinges on details

that will necessarily vary significantly from business to business. *See* Ex. B at 25:16-24 (DC Healy explaining that complaints of nuisance behavior are referred to District captains, and that "just because nuisances happen at a location doesn't mean that the owner is aware of it or responsible for it," so "there's a step-by-step process" in addressing complaints). As discussed *supra*, the circumstances of just the six Individual Plaintiffs, all of whom are members of AALBA, vary greatly, with half the group alleging no action at all by the City under the Ordinance.

Because the Complaint does not contain allegations showing that any member of AALBA or AAB would have standing in their own right to challenge each of the Ordinances, and because the participation of individual member businesses is necessary to prove the types of claims in the Complaint, the Organizational Plaintiffs also lack standing and cannot succeed on the merits.

    2.  <u>Plaintiffs Are Not Likely to Succeed on Their Equal Protection Claims</u>

Plaintiffs' equal protection claims are not likely to succeed, as they have not alleged a policy or practice to establish a basis for municipal liability under Section 1983, have not identified a single similarly situated business that was treated differently, and cannot show discriminatory intent or purpose on the part of the City.

    *c.  Plaintiffs Do Not Allege a Policy or Practice on Which to Base Municipal Liability under Section 1983.*

Plaintiffs cannot succeed on their Section 1983 selective enforcement claims because they fail to state a claim for municipal liability on the part of the City. It is well-settled that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A municipality can be sued directly under Section 1983 only where "the action that is alleged to be

unconstitutional implements or executes a **policy statement, ordinance, regulation, or decision officially adopted and promulgated** by that body's officers." *Id.* at 690 (emphasis added). Thus, a complaint that asserts a Section 1983 claim against a municipality must include "**specific factual allegations** referencing the **conduct, time, place, and persons** responsible for any official municipal policy or custom." *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)) (emphasis added).

A complaint that fails to allege conduct by a municipal decisionmaker is legally insufficient. *See McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."); *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (holding that a complaint cannot state a claim against a municipality if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority").

In adjudicating Section 1983 claims against local governments, "courts have recognized a two-path track to municipal liability . . . depending on whether the allegation is based on municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *Id.* (citations and quotations omitted). Regardless of whether the claim is based on an alleged municipal policy or custom, "a plaintiff must show that **an official who has the power to make policy is responsible** for either the

affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (emphasis added).

Plaintiffs plead no action by a City decisionmaker with policymaking authority, nor have they asserted a City custom regarding selective enforcement that is at all permanent or well-settled. The Complaint does not identify a single City official who was responsible for the City's alleged selective enforcement of the Ordinances. The only mention made of a City policy is in one boilerplate legal conclusion: "The acts complained of were carried out by the Defendants under the color of state law in their capacities as policymakers, city and state officials and/or police officers, pursuant to the customs, usages, practices, procedures, and laws of the City of Philadelphia, the Philadelphia Police Department, the Commonwealth of Pennsylvania and the Pennsylvania Liquor Control Board." Compl. ¶¶ 271, 285. Such legal conclusions are "not entitled to the assumption of truth," *In re Schering Plow Corp. Intron*, 678 F.3d at 243, and are therefore insufficient to support a preliminary injunction.

At best, the Complaint points to several isolated instances in which the Nuisance Ordinance was validly enforced against Plaintiffs, with no factual allegations concerning enforcement of any of the Ordinances against other businesses in the City. Plaintiffs set forth no factual allegations concerning the issuance of any supposed City 'policy' or 'custom' of selectively enforcing the Ordinances or the City officials purportedly involved. Plaintiffs have simply failed to plead a plausible claim for municipal liability and so cannot show a likelihood of success on their Section 1983 equal protection claims.

   d.   *Plaintiffs Have Not Shown Discrimination Through Selective Enforcement of the Ordinances.*

Plaintiffs' equal protection claims also fail on the merits because Plaintiffs have not, and cannot, plead discriminatory intent or treatment with respect to the Curfew or Nuisance

Ordinances. Neither Ordinance discriminates based on race, religion, or any other protected class: the Nuisance Ordinance is aimed at behavior and the Curfew Ordinances are based on geographical location and business model. *See* Phila. Code §§ 9-4400 *et seq.*, 9-630, 9-640, and 9-641. Recognizing the Ordinances are neutral on their face, Plaintiffs attempt to manufacture an argument that the Ordinances are being selectively enforced but plead no facts to support their threadbare assertions, falling far short of the clear showing required for preliminary injunctive relief.

"To establish a selective enforcement claim, a party must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010); *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). "Persons or parties are similarly situated for Equal Protection Clause purposes when they are alike in all relevant aspects." *Id.* "In order to prove selective enforcement, a party must also 'provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.'" *Id.* at 212 (quoting *Jewish Home of E. PA v. Ctrs for Medicare & Medicaid Servs.*, 693 F.3d 359 (3d Cir. 2012)).

Here, the Complaint cites no evidence of a discriminatory purpose on the part of the City in enacting the Ordinances, nor does it identify a single similarly situated business that is subject to a different level of enforcement of the Ordinances. As to the Nuisance Ordinance, Plaintiffs' claim regarding selective enforcement consists of one boilerplate assertion: "[o]n information and belief, white-owned businesses, takeouts, grocery stores, or restaurants are not similarly designated as potential nuisances." Compl. ¶ 236. Plaintiffs do not identify what "white-owned

24

businesses" they claim are subject to different enforcement of the Ordinance or how those businesses are similarly situated to Plaintiffs in all other respects. Put simply, Plaintiffs do not allege that any other businesses are committing the same violations of the Ordinance without the same enforcement by the City.

As to the Curfew Ordinances, Plaintiffs' claim is similarly deficient—Plaintiffs simply state that, "[u]pon information and belief, other businesses not owned by minorities are not subject to the same level of enforcement." Compl. ¶ 225. Plaintiffs also baldly conclude that "[m]ore affluent, whiter, neighborhoods within Philadelphia are not subject to the same restrictions and oversite as Plaintiffs' businesses," without providing a single example of a similarly situated "whiter" neighborhood not subject to the Ordinance. Compl. ¶ 93. All of the Complaint's assertions regarding selective enforcement amount to legal conclusions and boilerplate assertions, not the kind of specific evidence necessary to obtain injunctive relief.

Even if Plaintiffs could show differential treatment in relation other businesses, their claims still fail because they cannot show the differential treatment was "based on an unjustifiable standard," *Jewish Home*, 693 F.3d at 363, nor can they show the City had a discriminatory purpose in enacting or enforcing the Ordinances. City Council enacted the Nuisance Ordinance after hearing testimony that undesirable, often dangerous behavior occurs on the grounds of, and is sometimes enabled by, certain business models. *See* Ex. C 15:22-16:17 (testimony during Council hearings that certain City neighborhoods have "a number of what we call smoke shops and businesses that operate with food establishment licenses, but they barely sell any food that have hours that extend for twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor . . . [t]hey have been a site for illegal drug sales, prostitution, shootings and other violent crimes.").

As to the Curfew Ordinance, City Council heard testimony that the geographical areas and business models subject to the Curfew Ordinances had higher rates of overnight crime and nuisance behavior than other areas in the City. *See* Ex. C 6:5-9 & 8:39 (testimony describing higher rates of crime overnight including "public disorder" and "open air drug use" with "a nexus to certain businesses"). Thus, it was certainly reasonable for the City to enact ordinances aimed directly at those issues, even if it resulted in the regulation of some businesses more than others. *See, e.g.*, *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 556 (3d Cir. 2011) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) ("Under rational basis review, the challenged classification must be upheld if it is 'rationally related to a legitimate state interest.'"); *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)) ("[A party must] show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.'").

Beyond alleging a handful of minority businesses that were cited under the Nuisance Ordinance, Plaintiffs plead no facts that even begin to show discriminatory intent or selective enforcement of the Ordinances, so their equal protection claims have no likelihood of success on the merits.

    3.  <u>Plaintiffs Are Not Likely to Succeed on Their Due Process Claims</u>

Plaintiffs also assert that the Curfew and Nuisance Ordinances are so vague and "overbroad" that they violate state and federal due process.[16] But Plaintiffs are not likely to

---

[16] The parties agree the same analysis applies under both constitutions. Compl. ¶ 250; *see also* *HAPCO v. City of Philadelphia*, 482 F.Supp.3d 337, 356 (E.D. Pa. 2020) ("The federal and Pennsylvania due process clauses are '"substantially equivalent" in their protective scope.'" (quoting *Hosp. & Healthsystem Ass'n of Pa. v. Com.*, 77 A.3d 587, 600 n.15 (2013)).

succeed on these claims either, for **_three reasons_**. **_First_**, the Ordinances are not

unconstitutionally vague; **_second,_** the overbreadth doctrine only applies to First Amendment

claims, not due process; and **_third,_** the Ordinances are not overbroad in any event.

       *a.  The Ordinances Are Not Vague*

"A statute can be impermissibly vague for either of two independent reasons. First, if it

fails to provide people of ordinary intelligence a reasonable opportunity to understand what

conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory

enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

"[T]o find an economic civil statute void for vagueness, it must be so vague as to be "no

rule or standard at all." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631-32 (3d Cir.

2013) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 1231 (1967)).

"That an ordinance may contain some ambiguities does not render it impermissibly vague," *id.*,

so long as it does not lack "any legally fixed standards," *Giaccio v. Pennsylvania.*, 382 U.S. 399,

403 (1966).

Further, "[t]o succeed on a facial vagueness challenge, the plaintiff must 'demonstrate

that the law is impermissibly vague in all of its applications.'" *CMR D.N. Corp.*, 703 F.3d at 632.

But "speculation about possible vagueness in hypothetical situations not before the Court will

not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended

applications.'" *Hill*, 530 U.S. at 733.

Importantly, "a plaintiff whose [action] is clearly proscribed cannot raise a successful

vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010); *Commonwealth

v. Costa*, 861 A.2d 358, 362 (Pa. Super. 2004) ("[V]agueness challenges may be rejected where

an appellant's conduct is clearly prohibited by the statute in question."). Here, Individual

Plaintiffs cannot even proceed with a vagueness challenge because, to the extent they have

standing, they do not dispute that the Ordinances apply to them. *See, e.g.*, *Holder*, 561 U.S. at 20; *Costa*, 861 A.2d at 362.

Further, "[t]o succeed on a facial vagueness challenge, a plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications." *CMR D.N. Corp.*, 703 F.3d at 632. Because the Ordinances are not vague as applied to the Individual Plaintiffs, the Organizational Plaintiffs, who are not themselves subject to the Ordinances, cannot satisfy this high burden.

      *i.*    *The Curfew Ordinances Are Not Vague*

The Curfew Ordinances apply to establishments within certain geographic areas of the City that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for consumption or use off premises." Phila. Code §§ 9-630(1)(a), 9-641, 9-642 and 9-643. Plaintiffs claim this language is unduly vague because the terms "primarily" and "goods" are not further defined. Compl. ¶¶ 126-133. But these terms are easily understood by a person of reasonable intelligence, and Plaintiffs provide no explanation as to how they are otherwise confusing or leave law enforcement with unfettered discretion.

"Webster's Dictionary defines 'primarily' as 'for the most part; chiefly' and 'in the first place.'" *Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*, 241 A.3d 687 (Pa. Cmwlth. 2020) (quoting Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary /primarily (last visited November 4, 2020)). Similarly, the term has been construed to mean at least a "bare majority." *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005) (collecting examples in bankruptcy context).

The term "goods" is even more obvious, to the point that Plaintiffs make no effort to explain how it even could be vague in this context. The term refers to tangible objects, as opposed to services. *See, e.g.*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/goods#dictionary-entry-2 (last updated December 23, 2024) (defining

"goods" as, among other things, "something manufactured or produced for sale" such as "canned *goods*"); *see also* 13 Pa. C.S. § 9102 (defining for Pennsylvania's Uniform Commercial Code "goods" as ""All things which are movable"). Further, the Ordinances provide additional clarity by giving the example of an establishment that sells "food" or drinks. Phila. Code § 6-102(19); *see also id.* § 6-102(18) (defining "[f]ood" as any "substance intended for human consumption, whether in solid or liquid form").

In the context of the Curfew Ordinances, these terms are easily applied to provide guidance. The Ordinances apply to establishments where the majority of business consists of customers purchasing tangible items, like food or drink, that they take elsewhere to consume. Plaintiffs do not even dispute that they or their members fall into this category. In fact, they specifically allege that they sell "grocer[ies]" and "alcoholic beverages."  Compl. ¶¶ 28-34.

Nor do Plaintiffs explain how this definition encourages arbitrary enforcement. The most they do is suggest "upon information and belief" that this clear language will nonetheless be enforced arbitrarily. Compl. ¶¶ 132-133. But a void-for-vagueness claim must allege how the language of the law itself supports arbitrary enforcement. *Cf. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (holding that where the "*language* of the ordinance is sufficiently clear . . . the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness." (emphasis added)). Plaintiffs do not identify any part of the Ordinances that leave room for law enforcement to make subjective determinations or policy judgments that would run afoul of due process. Having failed to make that showing, Plaintiffs fail to state a claim that the Curfew Ordinances are unconstitutionally vague.

ii.    *The Nuisance Ordinance Is Not Vague*

Plaintiffs' vagueness challenge to the Nuisance Ordinance is facially deficient. While Plaintiffs couch their claim as one of vagueness (and overbreadth, addressed below), they fail to

identify any problematic language in the law itself; instead, they take issue with the so-called "wide range of behaviors" for which a citation may be issued. Compl. ¶¶ 134-135, 242-251. But the fact that a statute may apply to a broad range of behavior alone is no basis for finding it void for vagueness absent some language "encourag[ing] arbitrary and discriminatory enforcement," *Hill*, 530 U.S. at 732.

Beyond pointing to its broad range, Plaintiffs do not explain what part of the Ordinance's language encourages arbitrary or discriminatory enforcement. To the extent Plaintiffs take issue with the appropriateness of penalizing a business for third-party conduct, that is a challenge to the rationality of the legislature's policy decision and one they have failed to plead in the Complaint.[17] *See* Compl. ¶ 135 (suggesting the Ordinance is problematic because it allegedly prohibits behavior "not related to the operation of the business itself"). And as discussed above, Plaintiffs incorrectly interpret the statutory scheme, which only punishes businesses that contribute to the harmful conduct and refuse to make efforts to remedy it. *See supra* Part II.A.

> b.  *The Overbreadth Doctrine Does Not Apply to Due Process Claims*

Plaintiffs also suggest the Curfew and Nuisance Ordinances are "unconstitutionally overbroad" in violation of due process because the Ordinances have "overbroad terms" that do not provide fair notice of what conduct is prohibited, leading to arbitrary enforcement. Compl. ¶¶ 134-135, 139, 242-251. Not only do Plaintiffs fundamentally misunderstand the nature of an overbreadth claim, but precedent in this Circuit clearly forecloses one not based on the First

---

[17] Of course, such a challenge would fail, both because the Ordinance in question does no such thing and because a legislature could rationally conclude that a business whose operation contributes to behavior harmful to the public should be limited to decrease the risk of future harm.

Amendment.[18] As a result, any claim that the Ordinances are "overbroad" in violation of due process fails as a matter of law.

"Overbreadth is a [federal] standing doctrine that permits parties in cases involving First Amendment challenges to government restrictions on noncommercial speech to argue that the regulation is invalid because of its effect on the First Amendment rights of others not presently before the Court." *Vill. of Hoffman Ests.*, 455 U.S. at 508. Thus, whether a plaintiff "may make use of the overbreadth doctrine depends, in the first instance, on whether or not it has a colorable claim that the ordinance infringes on constitutionally protected, noncommercial speech of others." *Id.* That is because "[t]he overbreadth doctrine has only been applied in First Amendment cases." *Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*, 733 F. App'x 34, 39 (3d Cir. 2018) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); *Lutz v. City of York*, 899 F.2d 255, 270-71 (3d Cir. 1990) ("[T]he overbreadth doctrine has never been recognized outside the context of the First Amendment[.]")).

Here, Plaintiffs do not claim that the Ordinances infringe on constitutionally protected speech, grounding their claim for overbreadth in due process rather than the First Amendment. As a result, as to Counts I and II, Plaintiffs "overbreadth arguments are misplaced, because [t]he[y] allege[] substantive due process violations rooted in the Fifth and Fourteenth Amendments, not a First Amendment claim." *Id.*

---

[18] Plaintiffs have not plead an overbreadth argument for their Right to Petition claims in Counts III and IV, but such a claim would fail as a matter of law as well because the Ordinances do not apply to any expressive activity of Plaintiffs or third parties, as discussed in greater detail below in Part III.C.4, *infra*.

And even if Plaintiffs could invoke overbreadth for purposes of their due process claim, it would fail as a matter of law. Plaintiffs do not identify any fundamental due process rights belonging to third parties that the Ordinances unconstitutionally infringe upon. Just as they fail to articulate how the Ordinances are vague as applied to Plaintiffs, they also do not allege any vagueness as to third parties. And in any event, businesses generally have no constitutional right to engage in non-expressive commercial activity that harms the public. Cf. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012) ("'[A] public program adjusting the benefits and burdens of economic life to promote the common good . . . ordinarily will not be compensable.'" (citation omitted) (alteration in original)).

4.  <u>Plaintiffs Are Not Likely to Succeed on Their Right to Petition Claims</u>

Plaintiffs are also unlikely to succeed in their claims that the City is violating their right to petition the government because they allege only a subjective chilling effect, not that the Nuisance Ordinance penalizes protected conduct.[19] On its face, the Nuisance Ordinance does not regulate or restrict Plaintiffs' speech in any manner, including their right to petition the government. Plaintiffs instead claim that they are afraid to call PPD to report crimes because they may receive a nuisance warning, which they characterize as a "strike" towards being labeled a chronic nuisance business. *See* Compl. ¶¶ 175, 256. As discussed *supra* in Part III.C.1.a, this subjective chilling effect is not a legally cognizable harm and is insufficient to maintain a right-to-petition claim.

Far from barring Plaintiffs from contacting police, the plain language of the Ordinance contemplates a dialogue between business owners and the City. *See* Phila. Code §§ 9-4403

---

[19] Plaintiffs lack standing because they assert no cognizable harm, as discussed in Part III.C, *supra*.

(providing that a Cease Operations Order may be issued only if the business refuses to respond or fails to comply with an abatement plan), 9-4404 (describing nuisance abatement plans as agreements between a business and the City). Moreover, the warning notices attached as exhibits to Plaintiffs' Complaint expressly *invite* Plaintiffs to contact PPD, providing that if Plaintiffs "need recommendations of how to stop this nuisance behavior from occurring, please feel free to contact the Crime Prevention Officer." Compl., Ex. C, ECF No. 1-3, at 3; *id.*, Ex. F, ECF No. 1-6 at 2. And Plaintiffs do not allege that they have contacted PPD for assistance with nuisance behavior and then received a citation under any Ordinance, nor do they allege any retaliation for having contacted PPD.

Because the Nuisance Ordinance does not regulate Plaintiffs' speech, they cannot succeed on their right-to-petition claims in Counts III & IV. [20]

5. <u>Plaintiffs Are Not Likely to Succeed on Their Conspiracy Claim</u>

Plaintiffs fail to state underlying constitutional claims and fail to allege facts to support a civil conspiracy claim, beyond a mere recitation of the elements. A conspiracy under Section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citations omitted). "To prove a conspiracy, a plaintiff must establish: (1) a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for the consequences; (2) the purpose of the plan was to violate the constitutional rights of the plaintiff; and (3) an overt act resulted in the actual deprivation of the plaintiff's constitutional rights." *Id.* at 534-35 (citation omitted). When a plaintiff fails to

---

[20] Count IV is merely the Pennsylvania Constitution's analog to the U.S. Constitution's right to petition. *See* Compl., §§ 261-65.

"demonstrate a deprivation of a constitutional right" in its underlying claims, their "conspiracy claims fail" as well. *Id.* at 535 (citation omitted). "A plaintiff must allege a factual basis to support **agreement** and **concerted action**-the elements of conspiracy." *Id.* at 534 (citations omitted) (emphasis added).

The Complaint is devoid of any allegation regarding a plan, purpose, agreement, or concerted activity between Defendants. As discussed *supra*, the City is not given a role in the issuance, renewal, or revocation of state liquor licenses, and in the two specific licensing incidents cited in the Complaint, no action by the City is even alleged. Moreover, Plaintiffs fail to state underlying constitutional violations by Defendants. Because the Complaint is devoid of facts necessary to establish conspiracy, Plaintiffs cannot succeed on this claim either.

D. **The Equities and the Public Interest Do Not Support Injunctive Relief**

Beyond Plaintiffs' failure to show irreparable harm and a likelihood of success on the merits, the balance of the equities and public interest both support the Ordinances' continued enforcement to prevent further public nuisances and crime in Philadelphia.

"'Balancing the equities' is jurisprudential 'jargon for choosing between conflicting public interests.'" *Pennsylvania v. Trump*, 281 F. Supp. 3d 553 (E.D. Pa. 2017) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1952) (Frankfurter, J., concurring)). "'[C]ourts must *balance* the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Reilly*, 858 F.3d at 177–78 (emphasis in original) (quoting *Winter*, 555 U.S. at 24), *as amended* (June 26, 2017). Further, this factor and the public interest factor merge when the government is the defendant. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, Plaintiffs have not shown any irreparable harm to weigh against the public interest in reduced nuisance behavior, so these factors favor continued enforcement by the City. The

34

Ordinances are specifically designed to further the public interest: they exist to deter behavior that is harmful to the public, such as crime and other public nuisances. The Nuisance Ordinance does this directly by incentivizing businesses whose behavior contributes to the nuisance to take steps to reduce the harmful activity. The Curfew Ordinances build on this by limiting business hours in areas where harmful activity is more likely to occur overnight. Even if Plaintiffs' unsupported allegations of selective enforcement were true, the solution would not be to enjoin enforcement of the Ordinances; it would be increased enforcement against additional, unidentified businesses that are violating the Ordinances and against whom the City is supposedly not taking action.

Because the Ordinances further the public interest in reducing public nuisances, the equities and public interest favor continued enforcement of the Ordinances.

IV.    **RELIEF SOUGHT**

For the reasons discussed *supra*, the City respectfully requests that the Court deny

Plaintiffs' Motion without a hearing.[21]


Date: January 16, 2025                              Respectfully submitted,

                                                   PHILADELPHIA LAW DEPARTMENT
                                                   RENEE GARCIA, CITY SOLICITOR


                                                   */s/ Ryan B. Smith*
                                                   MELISSA MEDINA
                                                   Divisional Deputy City Solicitor
                                                   Pa. Bar No. 327048
                                                   MICHAEL PFAUTZ
                                                   Deputy City Solicitor
                                                   Pa. Bar No. 325323
                                                   RYAN B. SMITH
                                                   Deputy City Solicitor
                                                   Pa. Bar No. 324643
                                                   City of Philadelphia Law Department
                                                   1515 Arch Street, 15th Floor
                                                   Philadelphia, PA 19102
                                                   (215) 410-8264
                                                   Ryan.Smith@phila.gov
                                                   *Counsel for Defendant City of Philadelphia*

---

[21] A district court is not required to hold a hearing on a moving party's request for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990).

**<u>CERTIFICATE OF SERVICE</u>**

I, Ryan B. Smith, hereby certify that on January 16, 2025, I caused a true and correct copy of the foregoing Defendant City of Philadelphia's Opposition to Plaintiffs' Motion for Preliminary Injunction to be served via CM/ECF filing upon counsel for all parties.

Date: January 16, 2025                              */s/ Ryan B. Smith*
                                                    Melissa Medina
                                                    Divisional Deputy City Solicitor