## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : | |

### [PROPOSED ORDER]

**AND NOW,** this ____day of _____, 2025, upon consideration of Plaintiffs'

Motion for a Preliminary Injunction, and the Defendants City of Philadelphia and Mayor Cherelle

Parker's opposition thereto, it is hereby **ORDERED** that the Motion is **DENIED**.


_____
Jeffrey L. Schmehl, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, *et al.*, | : | Civil Action |
| | : | No. 24-6348-JLS |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CITY DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendants City of Philadelphia and Mayor Cherelle Parker (collectively, "City Defendants"), by and through their undersigned counsel, hereby file this Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction, ECF No. 29. Pursuant to Federal Rule of Civil Procedure 10(c), the City Defendants hereby incorporate by reference the attached Memorandum of Law as though fully set forth herein. The City Defendants respectfully request that the Court deny Plaintiffs' Motion as to the City Defendants.

Date: February 10, 2025                Respectfully submitted,

                                          PHILADELPHIA LAW DEPARTMENT
                                          RENEE GARCIA, CITY SOLICITOR

                                          */s/ Ryan B. Smith*
                                          MELISSA MEDINA
                                          Divisional Deputy City Solicitor
                                          Pa. Bar No. 327048
                                          MICHAEL PFAUTZ
                                          Deputy City Solicitor
                                          Pa. Bar No. 325323
                                          RYAN B. SMITH
                                          Deputy City Solicitor
                                          Pa. Bar No. 324643
                                          City of Philadelphia Law Department
                                          1515 Arch Street, 15th Floor
                                          Philadelphia, PA 19102
                                          (215) 410-8264
                                          Ryan.Smith@phila.gov
                                          *Counsel for City Defendants*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : | |

**CITY DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND & PROCEDURAL HISTORY .................................................2

    A. Philadelphia Enacts the Nuisance Ordinance ................................................. 2

    B. Philadelphia Enacts the Commercial Curfew Ordinances .............................. 6

    C. Plaintiffs Challenge the Ordinances................................................................ 8

III.  ARGUMENT.........................................................................................................11

    A. Legal Standard ............................................................................................... 13

    B. Plaintiffs Have Not Shown Immediate, Irreparable Harm.............................. 13

    C. Plaintiffs Are Not Likely to Succeed on the Merits....................................... 18

        1. Plaintiffs Lack Standing to Bring Their Claims ........................................ 18

            a.    The Individual Plaintiffs Lack Standing Because They Fail to Allege
                 Legally Cognizable Harm. ............................................................... 18

            b.    The Organizational Plaintiffs Cannot Maintain Associational Standing............. 22

        2. Plaintiffs Are Not Likely to Succeed on Their Equal Protection Claims .................... 23

            a.    Plaintiffs Do Not Allege a Policy or Practice on Which to Base Municipal
                 Liability under Section 1983............................................................. 23

             b.    Plaintiffs Have Not Shown Discrimination Through Selective
                 Enforcement of the Ordinances. ...................................................... 25

        3. Plaintiffs Are Not Likely to Succeed on Their Due Process Claims ......................... 29

            a.    The Ordinances Are Not Vague....................................................... 29

            b.    The Overbreadth Doctrine Does Not Apply to Due Process Claims.................. 33

        4. Plaintiffs Are Not Likely to Succeed on Their Right to Petition and Related
        Overbreadth Claims .................................................................................. 35

        5. Plaintiffs Are Not Likely to Succeed on Their Conspiracy Claim ............................. 37

        6. Plaintiffs Are Not Likely to Succeed and Cannot Obtain Injunctive Relief on
        Their Declaratory Judgment Claim........................................................... 38

    D. The Equities and the Public Interest Do Not Support Injunctive Relief.......................... 38

IV.   RELIEF SOUGHT.................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*A.O. Smith Corp. v. F.T.C.*,
  530 F.2d 515 (3d Cir. 1976) .................................................................................... 14

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir. 1994) ...................................................................... 14, 15, 16

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
  669 F.3d 359 (3d Cir. 2012) .................................................................................... 34

*Berrios v. City of Philadelphia*,
  96 F. Supp. 3d 523 (E.D. Pa. 2015) ....................................................................... 37

*Bielevicz v. Dubinon*,
  915 F.2d 845 (3d Cir. 1990) .................................................................................... 25

*Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*,
  241 A.3d 687 (Pa. Cmwlth. 2020) .......................................................................... 31

*Boutilier v. Immigration & Naturalization Serv.*,
  387 U.S. 118 (1967) ................................................................................................. 29

*Bradley v. Pittsburgh Bd. of Educ.*,
  910 F.2d 1172 (3d Cir. 1990) .................................................................................. 40

*Cigar Ass'n of Am. v. City of Philadelphia*,
  500 F. Supp. 3d 428 (E.D. Pa. 2020) ...................................................................... 16

*City of New Orleans v. Dukes*,
  427 U.S. 297 (1976) ................................................................................................. 28

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................... 16, 19, 20

*CMR D.N. Corp. v. City of Philadelphia*,
  703 F.3d 612 (3d Cir. 2013) .............................................................................. 29, 30

*Commonwealth v. Costa*,
  861 A.2d 358 (Pa. Super. 2004) .............................................................................. 30

*Constructors Ass'n of W. Pa. v. Kreps*,
  573 F.2d 811 (3d Cir. 1978) .................................................................................... 14

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) .............................................................................. 13, 14

*Dique v. New Jersey State Police*,
  603 F.3d 181 .............................................................................................................. 26

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) .................................................................................... 28

*Doe v. Banos*,
  713 F. Supp. 2d 404 (D.N.J. 2010) ......................................................................... 17

*EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*,
  2006 WL 892718 (D.N.J. Apr. 4, 2006) ................................................................. 17

*Evancho v. Fisher*,
  423 F.3d 347 (3d Cir. 2005) .................................................................................... 24

iii

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................. 18, 19

*Gentile v. State Bar of Nevada*,
501 U.S. 1030 (1991) ...................................................................... 31

*Giaccio v. Pennsylvania.*,
382 U.S. 399 (1966) ......................................................................... 29

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ............................................... 17

*Gray v. Jennings*,
2025 WL 76443 (U.S. Jan. 13, 2025) ........................................ 13, 14

*Grp., Inc. v. Amoco Chems. Corp.*,
614 F.2d 351 (3d Cir. 1980) ............................................................ 14

*HAPCO v. City of Philadelphia*,
482 F.Supp.3d 337 (E.D. Pa. 2020) ................................................ 29

*Hill v. Colorado*,
530 U.S. 703 (2000) .................................................... 29, 30, 32, 36

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989) .............................................................. 14

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ............................................................................ 30

*Hosp. & Healthsystem Ass'n. of Pa. v. Com.*,
77 A.3d 587 (2013) ......................................................................... 29

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977) ........................................................................ 22

*In re Miller*,
335 B.R. 335 (Bankr. E.D. Pa. 2005) .............................................. 31

*In re Schering Plow Corp. Intron*,
678 F.3d .......................................................................................... 25

*J.C. Penney Co. v. Giant Eagle, Inc.*,
813 F. Supp. 360 (W.D. Pa. 1992) .................................................. 16

*Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*,
693 F.3d 359 (3d Cir. 2012) ................................................ 26, 27, 28

*Kessler v. Broder*,
851 A.2d 944 (Pa. Super. 2004) ................................................ 16, 17

*K-Mart Corp. v. Oriental Plaza, Inc.*,
875 F.2d 907 (1st Cir. 1989) ........................................................... 17

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004) ............................................................ 13

*Lutz v. City of York*,
899 F.2d 255 (3d Cir. 1990) ............................................................ 34

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ........................................................................ 13

*McTernan v. City of York*,
564 F.3d 636 (3d Cir. 2009) ............................................................ 24

*Mills v. City of Philadelphia*,
2022 WL 4389518 (E.D. Pa. Sept. 22, 2022) ................................. 38

*Monell v. Dep't of Soc. Servs. of City of New York,*
  436 U.S. 658 (1978) ........................................................................ 24

*Mulholland v. County of Berks,*
  706 F.3d 227 (3d Cir. 2013) ........................................................... 24

*New Dana Perfumes Corp. v. The Disney Store, Inc.,*
  131 F. Supp. 2d 616 (M.D. Pa. 2001) ........................................... 17

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................ 39

*Orson, Inc. v. Miramax Film Corp.,*
  836 F. Supp. 309 (E.D. Pa. 1993) ................................................. 17

*Pa. Prison Soc'y v. Cortes,*
  622 F.3d 215 (3d Cir. 2010) ........................................................... 22

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) ........................................................................ 24

*Pennsylvania v. Trump,*
  281 F. Supp. 3d 553 (E.D. Pa. 2017) ............................................ 38

*Quaker Chemical Corp. v. Varga,*
  509 F.Supp.2d 469 (E.D. Pa. 2007) .............................................. 16

*Rees v. Office of Children & Youth,*
  473 F. App'x 139 (3d Cir. 2012) .................................................... 24

*Reilly v. City of Harrisburg,*
  858 F.3d 173 (3d. Cir. 2017) .................................................... 13, 39

*Sampson v. Murray,*
  415 U.S. 61 (1974) .......................................................................... 14

*Santoro v. Morse,*
  781 A.2d 1220 (Pa. Super. 2001) .................................................. 17

*Schaller v. United States Soc. Sec. Admin.,*
  844 F. App'x 566 (3d Cir. 2021) .................................................... 19

*Sovereign Bank v. Harper,*
  674 A.2d 1085 (Pa. Super. 1996) .................................................. 17

*Startzell v. City of Phila.,*
  533 F.3d 183 (3d Cir. 2008) ........................................................... 26

*Stoltzfoos v. Sec'y of Pa. Dep't of Corr.,*
  733 F. App'x 34 (3d Cir. 2018) ...................................................... 34

*Suber v. Wright,*
  574 F. App'x 207 (3d Cir. 2014) .................................................... 26

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) ........................................................................ 22

*Torres v. City of Allentown,*
  2008 WL 2600314 (E.D. Pa. June 30, 2008) ............................... 24

*United Presbyterian Church in the U.S. v. Reagan,*
  738 F.2d 1375 (D.C. Cir. 1984) ..................................................... 21

*United States v. Salerno,*
  481 U.S. 739 (1987) ........................................................................ 34

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982) .................................................. 32, 33, 34, 36

*Wayte v. United States*,
  470 U.S. 598 (1985) ............................................................................ 28
*Winter*,
  555 U.S. ............................................................................................... 39
*Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*,
  385 F.3d 801 (3d Cir. 2004) ............................................................... 38
*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ............................................................................ 38

Statutes

13 Pa. C.S. § 9102 .................................................................................... 31
42 U.S.C. Section 1983 ......................................................................... 9, 12

City Defendants, by and through their undersigned counsel, respectfully request that this Court deny Plaintiffs' Motion for a Preliminary Injunction (ECF No. 29), and in support thereof, submit this memorandum of law.

## I.  <u>INTRODUCTION</u>

Plaintiffs must clear a high hurdle to obtain the extraordinary relief of a preliminary injunction. This is particularly true where, as here, the harm they claim from the City's enforcement of its ordinances is purely financial and entirely speculative. Plaintiffs cannot establish either of the two gateway requirements—that they will suffer irreparable harm and are likely to succeed on the merits— let alone all four factors for injunctive relief.

At the outset, they cannot show they have or will suffer irreparable harm. Plaintiffs identify only speculative financial harms that could be redressed with damages. They cannot even show that a single Plaintiff business has or will be closed. And they fail to address their delay of nearly a year in bringing these claims and the appeal rights they would have if the City ever took steps to close them.

Nor can Plaintiffs show a likelihood of success on the merits because their amended claims suffer from the same myriad legal deficiencies as their initial complaint. ***First,*** Plaintiffs' lack standing because no individual member Plaintiff has suffered an injury as a result of the City's enactment or enforcement of the Ordinances, and the Organizational Plaintiffs are unable to assert claims on behalf of their unnamed members and unaffected members. ***Second,*** the Motion relies entirely on conclusory assertions that the Ordinances are being selectively enforced against Plaintiffs based on race, without identifying a *single* similarly situated business that is not subject to the same level of enforcement, and is devoid of any factual allegations of a policy or practice of intentional discrimination under *Monell*. ***Third,*** Plaintiffs' due process claims fail

1

because the language of the Ordinances is clear and does not encourage discriminatory enforcement. ***Fourth,*** Plaintiffs cannot succeed on their right-to-petition claims because the Nuisance Ordinance does not regulate expressive activity and only applies to businesses that contribute to nuisance behavior. Nor do Plaintiffs point to a single instance of receiving any adverse outcome from reporting illegal activity to the police. ***Fifth,*** Plaintiffs have not pled facts to support an agreement or concerted action on the part of Defendants to violate their constitutional rights, so their conspiracy claims fail. ***Sixth and finally***, Plaintiffs' duplicative claim for declaratory relief fails as they lack standing and the Amended Complaint does not state a claim for relief.

Meanwhile, the Ordinances Plaintiffs challenge are designed to reduce public nuisances, ranging from violent crime, illegal gambling, and unlicensed alcohol sales to public drunkenness and excessive noise. Thus, the balance of equities and the public interest favor continued enforcement.

For the reasons discussed *infra*, the City Defendants respectfully request that the Court deny Plaintiffs' Motion without a hearing.

## II.   <u>BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiffs seek to enjoin enforcement of the City's Responsible Business Operations ("Nuisance") Ordinance, which regulates businesses that cause or contribute to chronic nuisance behaviors throughout the City, and the City's four Commercial Business Hour Restrictions ("Curfew") Ordinances, which impose late-night commercial curfews for certain businesses located in defined areas of the City.

### A.   <u>Philadelphia Enacts the Nuisance Ordinance</u>

Philadelphia first enacted the Nuisance Ordinance in 2016 and amended it twice in 2023. During hearings on the first bill in 2016, City Council heard testimony about the prevalence of

nuisance-related issues throughout the City and how businesses contributed to them. A representative of the North 22nd Street Business Corridor testified that some businesses were particularly problematic due to "their lack of cleanliness, loitering, and people urinating outside on the sides of their buildings." Tr. of Hearing (June 6, 2016) ("Ex. 1") 44:11-20.[1] The representative testified that these issues were particularly problematic at 'stop-and-gos',[2] and a Ward Committeeperson testified he had seen children "hanging out in the stop-and-go where they're serving alcohol." *Id.* 73:24-74:8.[3]

As currently enacted, the Nuisance Ordinance applies City-wide and targets businesses contributing to specific, undesirable behaviors ("nuisance behaviors"). Nuisance behaviors include, *inter alia*, unlawful consumption or sale of alcohol, drug activity, street or sidewalk obstruction, and litter. *See* Phila. Code § 9-4401(3) (listing types of "nuisance" behaviors). If a business contributes to a nuisance behavior, the City may issue a warning notice to the business

---

[1] Testimony of Thera Martin Milling, Manager of the North 22ⁿᵈ Street Business Corridor The cited portions of the transcript of the June 6, 2016, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. 1**. The full transcript is available at: https://www.transcriptroom.com/tr/CAF/DownloadFile/1218696?docType=30&FileName=li060616.pdf.

[2] 'Stop-and-gos' "are businesses that typically operate as convenience stores or delis and sell alcohol under either a type R (restaurant liquor) or type E (eating place retail dispenser) license. Despite being licensed to sell alcohol, these entities fail to operate as a bona fide restaurant or eating place, barely complying with minimum requirements associated with their licenses." Pennsylvania Stop-and-Go Legislative Task Force Report and Recommendations (Oct. 2, 2024), ECF No. 28-1 at 7.

[3] The North 22nd Street representative also testified that she met with the then-president of the Plaintiff organization Asian-American Licensed Beverage Association ("AALBA"), Adam Xue, who "commit[ed] that stop-and-gos that are members of his organization will work by a new set of standards and mandates that his organization has come up with to become better neighbors to other businesses and to become better neighbors to the community." *Id.* 44:21-45:6. The witness "believe[d] that's a great step forward," but "underst[ood] that all stop-and-gos are not members of [AALBA], and it is those stop and go owners who most of all need to clean up and fix up their businesses and clean up their act." *Id.* 45:6-13.

owner, informing the owner that a nuisance behavior occurred either inside or on the street abutting the business and identifying remedial measures the business may take to avoid continuing contributing to the nuisance behavior. *Id.* § 9-4402(2)-(3).

In particular, when the Philadelphia Police Department ("PPD") receives a complaint of nuisance behavior, it engages in a process to determine whether there is a nexus between the business and the behavior before citing the business. *See* Tr. of Hearing (June 6, 2023) ("Ex. 2") at 25:16-24 (PPD Deputy Commissioner Francis Healy ("DC Healy") explaining that complaints of nuisance behavior are referred to District captains, but that "just because nuisances happen at a location doesn't mean that the owner is aware of it or responsible for it," so "there's a step-by-step process" in addressing complaints); 36:7-21 (DC Healy emphasizing that the nuisance must be "actually connected to the establishment" to establish a "nexus,", because the "goal" is "to get people to come into the Police Department and come up with an abatement plan");[4] *see also* PPD Directive 4.25 at 3, 4, 6, attached hereto as **Exhibit 5** (requiring a documentable "nexus" or "connection" between the behavior and the business).[5] Specifically, officers issuing citations "must articulate the connection between the individual's activity to the business." PPD Directive 4.25 at 3.

If a business is cited for three such nuisances within a twelve-month period, it is classified as a "chronic nuisance business." Phila. Code § 9-4401(1) (as amended July 5, 2023). A business may also be designated as a "critical nuisance business" if a serious, violent crime,

---

[4] The cited portions of the transcript of the June 6, 2023, hearing before the City Council Committee on Licenses & Inspections are attached hereto as **Ex. 2**. The full transcript is available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/4799255?docType=30&FileName=li060623.pdf.

[5] The Police Department issued Directive 4.25, a memorandum on enforcement of the Nuisance Ordinance, on October 20, 2023.

such as murder, occurs on its premises or as a result of the business's activity. *Id.* § 9-4401(5) & (6). The City may take enforcement action under the Nuisance Ordinance by issuing a "Notice of Intent to Cease Operations" ("Intent to Cease Notice") to the owner of the business upon classification as a chronic or critical nuisance business. *Id.* § 9-4403. Enforcement officers must show a "documentable nexus or connection between the nuisance behavior and the actual business" before issuing a notice of intent to cease operations. *Id.* at 3-4. The supporting documentation and draft notice of intent to cease operations are reviewed by the Philadelphia Law Department prior to issuance. *Id.* at 4.

The Intent to Cease Notice does not operate as an automatic or immediate ground for business closure; instead, it triggers the owner's responsibility to demonstrate adequate remedial measures have been taken, or to enter into an abatement plan with the City to remediate the issues before the City issues a Cease Operations Order. *Id.* § 9-4403(1) & (3). Abatement plans include taking steps to prevent the specific, cited nuisance behaviors through the owner's vigilance or by hiring security; installing lighting; maintaining security cameras; displaying signage; addressing litter; and other measures, including "any other measures deemed likely to abate or prevent the recurrence of" the nuisance behavior. *Id.* § 9-4404 (as amended Dec. 13, 2023). One component of an abatement plan may include "documenting proactive efforts with the Police Department regarding nuisance behavior or serious violent behavior activities." *Id.* Thus, "Business Owners can avoid a Cease Operations Order by demonstrating that adequate remedial measure[s] have been taken to address the nuisance conduct that led to the designation of the business as a Chronic Nuisance Business or enter[ing] into an agreed upon written nuisance abatement plan." PPD Directive 4.25 at 5; *see also* Phila. Code § 9-4403(3).

Only if the owner refuses to respond to the City or enter into an abatement plan after issuance of an Intent to Cease Notice can the City issue a Cease Operations Order (except in cases of emergency, where the owner is provided a post-Order opportunity to take remedial measures). Phila. Code § 9-4403(3)(a)-(c); *see also* PPD Directive 4.25 at 5 (only permitting Cease Operations Order the business does not respond to the notice or "it is determined the remedial actions taken are insufficient or a nuisance abatement plan cannot be agreed upon"). The same process applies to "Critical Nuisance Businesses" after a qualifying crime occurs. *See id.* at 5-7. At every stage of the process, the owner may request administrative review and has the right to appeal any adverse administrative decision. *Id.* §§ 9-4403(2), 9-4405.

### B. <u>Philadelphia Enacts the Commercial Curfew Ordinances</u>

In 2024, the City enacted a series of "Commercial Business Hour Restriction" Ordinances, which regulate business hours for certain commercial establishments in specific areas of some City neighborhoods. Bill Nos. 240013-A (effective Apr. 3, 2024), 240414, 240468, 240474, 240476, 240498, codified at Phila. Code §§ 9-630, 9-640, and 9-641 (effective June 13, 2024).[6]

These Curfew Ordinances apply to "Commercial Establishments" that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for consumption or use off premises," including "Food Establishments," defined elsewhere in the Code, and excluding those with a "Restaurant liquor license," as well as those that "serve[] customers exclusively from a drive-through window" or any "vehicle fueling station." Phila.

---

[6] The Bills are substantially the same except for the geographic area covered by each Bill. Bill No. 240013-A is available at: https://files.amlegal.com/pdffiles/Philadelphia/240013-A.pdf. The Bills are publicly available at https://phila.legistar.com/Legislation.aspx by searching by Bill Number.

Code § 9-630; *id.* § 9-641 (same); *id.* § 9-642 (same); *id.* § 9-643 (same except for exclusions omitted). The Ordinances prohibit covered establishments from serving the public between 11 p.m. and 6 a.m. in specified areas, except for Section 9-642, which prohibits public service from 12 midnight to 6 a.m. *Id.*

The Ordinances cover areas described by street boundaries, including both sides of the boundary streets, in parts of the City's Sixth, Seventh, Ninth, and the boundary of the Eighth and Ninth City Council Districts. Phila. Code §§ 9-641(2) (effective Aug. 12, 2024); 9-630(2) (as amended Aug. 12, 2024); 9-642(2) (effective Aug. 12, 2024); 9-643(2) (effective Aug. 12, 2024).

On February 23, 2024, the City Council Committee on Licenses and Inspections held a public hearing on the first of the Curfew Ordinances. At the hearing, DC Healy testified that the purpose of the Curfew Ordinances is to "positively impact crime and disorder that historically occurs during the overnight hours." Tr. of Hearing (Feb. 23, 2024) ("Ex. 3") 6:5-9.[7] DC Healy further testified that PPD received many complaints between 11 p.m. and 6 a.m. in the designated areas, often related to "public disorder," and "open air drug use," and often having "a nexus to certain businesses." *Id.* 8:3-9.

The Executive Director of the Frankford Community Development Corporation testified that the Frankford neighborhood "has a number of . . . smoke shops and businesses that operate with food establishment licenses, but they barely sell any food [and] have hours that extend for twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor." *Id.* 15:22-16:9. "They have been a site for illegal drug sales, prostitution, shootings and other violent crimes." *Id.* 16:9-17.

---

[7] The cited portions of the transcript are attached hereto as **Ex. 3.** The full transcript is publicly available at: https://www.transcriptroom.org/tr/CAF/DownloadFile/2223200?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20022324.pdf.

On June 3, 2024, the Committee held a public hearing on Curfew Bills Nos. 240414, 240468, 240474, 240476, and 240498, designating additional areas to be covered by the operating hours restrictions. The President of the Harrowgate Civic Association testified that she requested the business curfew be extended into certain areas due to an abundance of "take-out restaurants [in those areas] that are selling . . . drug paraphernalia, are selling papers, pipes and some of them have some needles in there, to sell them loose cigarettes and keeping the individuals that we are having issues with on the business corridors." Tr. of Hearing (June 3, 2024) ("Ex. 4"), 8:15-20, 9:1-9.[8]

On August 16, 2024, the Police Department issued Memorandum 24-06 regarding enforcement of the business curfew ordinances. Memo 24-6, attached hereto as Exhibit 6; *see also* Am. Compl. at ¶ 97. The Memorandum reiterates the covered areas, including maps, applicable hours, and the procedure for enforcement through issuance of Code Violation Notices if an owner fails to comply, but prohibiting police from "forcefully clos[ing] a business." Ex. 6 at 3. Instead, the Code Violation Notices are processed in accordance with PPD policy. *Id.* Repeated violations may be referred to the Neighborhood Nuisance Enforcement Unit for nuisance enforcement. *Id.* at 4.

### C. Plaintiffs Challenge the Ordinances

On November 26, 2024, Plaintiffs filed a Complaint against the City, as well as the Commonwealth of Pennsylvania, the Pennsylvania State Police Bureau of Liquor Control Enforcement ("BLCE"), and the Pennsylvania Liquor Control Board ("PLCB") (collectively, the

---

[8] The cited portions of the transcript are attached hereto as **Ex. 4.** The full transcript is publicly available at:
https://www.transcriptroom.org/tr/CAF/DownloadFile/1005365?docType=30&FileName=Committee%20on%20Licenses%20and%20Inspections%20060324.pdf.

"Commonwealth Defendants"). Compl., ECF No. 1. After the City and Commonwealth

Defendants moved to dismiss, on January 27, 2025, Plaintiffs filed an Amended Complaint

naming Philadelphia Mayor Cherelle Parker and Pennsylvania Attorney General Dave Sunday as

additional defendants. Am. Compl., ECF No. 28.

Plaintiffs are six (6) individual businesses (the "Individual Plaintiffs") and two (2)

business affinity organizations (the "Organizational Plaintiffs"): the Asian-American Licensed

Beverage Association ("AALBA") and the Arab American Business and Professional

Association of the Delaware Valley ("AAB"). *Id.* ¶¶ 12-20. The Individual Plaintiffs allege that

they are members of AALBA but provide no other information regarding their businesses, save

for entity names and addresses. *Id.* As to the City, Plaintiffs bring federal constitutional claims

under 42 U.S.C. Section 1983 ("Section 1983") and their state constitutional analogues, alleging

the Ordinances violate due process, equal protection, and the right to petition. Plaintiffs also

make a claim for civil conspiracy against all Defendants and seek declaratory relief.

The Amended Complaint alleges a handful of actions taken by the City under the

Nuisance Ordinance against some but not all Plaintiffs. The Amended Complaint alleges that, in

February 2024, Plaintiff 7701 Ogontz received a "warning letter" from PPD after two individuals

were arrested inside the business for allegedly selling drugs near the business. Am. Compl.

¶¶ 192, 193. Plaintiff 7701 Ogontz claims it is "afraid to even contact the police or report

criminal activity in the neighborhood" for fear of "receiv[ing] another nuisance violation," which

Plaintiffs believe "could result in the closing of the establishment." *Id*. ¶ 199. Plaintiffs do not

claim that 7701 Ogontz has been subject to any other enforcement action by the City, or that it

ever received a notice of intent to cease operations.

Plaintiff Maya 2008 Investment Group LLC alleges that it received two "CVNs"[9] from the Philadelphia Police Department in September 2024 for "patrons drinking on the sidewalk in front of the establishment and creating a nuisance." *Id*. ¶ 208. Plaintiff Maya 2008 Investment Group received another CVN days later for creating a nuisance, due to "multiple individuals [. . .] blocking the active pedestrian sidewalk and, when politely asked, fail[ing] to disperse from outside the store." *Id*. ¶ 212. The CVNs were accompanied by warning letters from PPD. *Id*. Ex. F. Plaintiff was not fined or otherwise penalized by the City as a result of the CVN. *See id*. Plaintiffs do not claim that Maya 2008 Investment Group has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff 700 SE Inc. alleges that it received two "citations" —i.e., warning letters—from PPD, one for "consumption of alcohol in public parks and similar spaces," and one for "empty beer containers in bushes nearby." *Id*. ¶¶ 218, 223. Plaintiffs do not claim that 700 SE Inc. has been subject to any other enforcement action by the City, or that it ever received a notice of intent to cease operations.

Plaintiff CDD 725, Inc. alleges that it has been "subjected to numerous unfounded and unnecessary inspections," including three separate inspections at which "no issues were noted," the last of which the manager on duty refused to sign. *Id*. ¶¶ 229-230 & Ex. G (two signed inspection reports and one unsigned report). Plaintiff alleges that the "officer threatened to return every day for further inspections," including with "PLCB." *Id*. ¶¶ 236, 238. Plaintiffs do not claim that CDD 725 has been subject to any enforcement action by the City, or that it ever received a notice of intent to cease operations.

---

[9] Code Violation Notice; *see* Phila. Code § A-506.

The same day they filed the Amended Complaint, Plaintiffs also filed a Motion for a Preliminary Injunction (ECF No. 29). As to injunctive relief, Plaintiffs seek to enjoin the City Defendants from "selective enforcement" of the Curfew and Nuisance Ordinances and "any further harassment, intimidation, or retaliation related to Plaintiffs' business operations." Pls' Proposed Order, ECF No. 29, at 2-3[10] ¶ 3. They also seek to enjoin all Defendants from "obstructing the renewal of Plaintiffs' liquor licenses or business permits based on discriminatory, unconstitutional, or unlawful criteria, including the improper application of the Curfew and Nuisance Ordinances." *Id*. at 3 ¶ 4.

## III.    **ARGUMENT**

Plaintiffs do not satisfy any of the requirements for a preliminary injunction. Their allegations of irreparable harm are purely speculative and based on alleged compensable financial harms. They fail to state any claim for relief, much less establish a likelihood of success on the merits. And they seek to enjoin enforcement of health and safety laws that benefit the public by reducing a variety of nuisances that cause a detriment to City residents, a benefit that far outweighs any mere financial injury Plaintiffs claim they might potentially face at some unknown point in the future.

Plaintiffs are not at risk of irreparable harm. While they complain of selective enforcement as to liquor licenses and business closure, they fail to identify a single instance in which one of their businesses or a member's business was closed by the City or even received notice of the City's intent to cease business operations. Their claims of financial harm are also insufficient. They offer no concrete factual allegations that the Ordinances are harming their

---

[10] Because Plaintiffs' Motion, Proposed Order, and Memorandum of Law are combined in one file on ECF, pin cites refer to the specific document's pagination.

businesses at all, let alone to the extent that they could not continue to operate. And even if they had, it is black letter law that compensable money damages are not irreparable harm. In reality, the only "harm" Plaintiffs could allege is a speculative fear that they may be forced at some future time to take responsibility for the conditions in their business and on their property by entering into an abatement plan that remediates nuisance behaviors.

On the merits, Plaintiffs lack standing to challenge the Ordinances, since they do not allege that any named Plaintiff or identified member falls within the geographic catchment area of the Curfew Ordinances or has suffered cognizable harm from the Nuisance Ordinance. Their Equal Protection claims are legally deficient because Plaintiffs have not, and cannot, show discriminatory intent or point to a single similarly situated business that is not subject to the same level of enforcement for violations, nor can Plaintiffs show a policy or practice of discrimination that would establish municipal liability for their Section 1983 claims.

Plaintiffs' due process vagueness claims are also fatally flawed, as Plaintiffs acknowledge that their businesses are covered by the Ordinances; Plaintiffs also fail to explain how the Ordinances encourage arbitrary enforcement. Plaintiffs' overbreadth argument is misplaced; the doctrine does not apply to due process claims and the Ordinances do not regulate any constitutionally protected First Amendment activity. And while Plaintiffs separately claim the Nuisance Ordinance penalizes them for calling the police in violation of their right to petition, it does no such thing. Instead, any penalties under the Ordinance stem from the business contributing to and not merely reporting nuisance activity, and Plaintiffs plead no facts to the contrary. Finally, Plaintiffs' failure to plead underlying constitutional violations or any agreement among the Defendants to infringe on their civil rights precludes their baseless conspiracy claim.

On the other hand, enjoining enforcement of the Ordinances would harm the public interest by preventing the City from combatting public nuisances and crime. Because every injunction factor favors the City, Plaintiffs' request for preliminary injunctive relief must be denied.

### A.  <u>Legal Standard</u>

To obtain preliminary injunctive relief,

> the moving party must generally show as a prerequisite[:] "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d. Cir. 2017) (citation omitted). "[A] movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors," and if those are met "a court then considers the remaining two factors." *Id.* at 179.

"Because 'a preliminary injunction is an extraordinary and drastic remedy,' the movant bears the burden of making '*a clear showing*,'" *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (quoting *Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025), and it "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

### B.  <u>Plaintiffs Have Not Shown Immediate, Irreparable Harm</u>

At the outset, Plaintiffs fail to show they are suffering or are about to suffer irreparable harm. They appear to claim their businesses will be forced to close because of selective enforcement of the Ordinances, but this argument is purely speculative, lacks factual support, and is insufficient as a matter of law.

"In general, to show irreparable harm a plaintiff must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citation omitted). Economic losses, such as a temporary loss of income, "however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). A plaintiff asserting irreparable harm must be able to demonstrate "potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Id.* (citation omitted). "Thus, in order to warrant a preliminary injunction, the injury created by a failure to issue the requested injunction must '"be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* (quoting *A.O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 525 (3d Cir. 1976)). And even where such harm is present, it must be real and imminent. An injunction "may not be used simply to eliminate a possibility of a remote future injury" or "merely to allay the fears and apprehensions" of a party. *Cont'l. Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted).

The only tangible harm Plaintiffs claim they will suffer from the City[11] is that the Curfew Ordinances will allegedly "mak[e] it economically untenable" to operate their businesses. Pls.'

---

[11] Plaintiffs also suggest they will suffer irreparable harm because the Commonwealth Defendants will engage in selective enforcement against them and revoke their liquor licenses, which will allegedly force them to close. Pls.' Br. at 52-53. Of course, claims about enforcement of the Liquor Code do not provide a basis for enjoining the Ordinances, and the City has no involvement in the issuance or renewal of liquor licenses, nor do Plaintiffs claim as much. Moreover, asserting an equal protection violation alone is insufficient for irreparable harm. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep''t of Safety & Homeland Sec.*, 108 F.4th 194, 203-04 (3d Cir. 2024) ("We explicitly refused to presume that an alleged equal-protection violation irreparably injured the plaintiff." (citing *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 819–20 (3d Cir. 1978)), *cert. denied sub nom. Gray v. Jennings*, No. 24-309, 2025 WL 76443 (U.S. Jan. 13, 2025). "[C]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Id.* (quoting *Hohe v. Casey*, 868 F.2d

14

Mem. of Law, ECF No. 29, at 53-54. But Plaintiffs provide no facts whatsoever to support this speculative claim, so it is insufficient to sustain preliminary injunctive relief. In fact, none of the named Plaintiffs even claim to be located within the catchment areas of any of the Curfew Ordinances, and only one organizational Plaintiff, AAB, cites a single member that falls within the catchment area. *See* Am. Compl. ¶¶ 244–248. Plaintiff AALBA alleges only that some unnamed members are located in areas covered by the Ordinances.

As Plaintiffs rightly acknowledge, they must show "[m]ore than a risk of irreparable harm"; preliminary injunctive relief requires "a '**clear showing of immediate irreparable injury**, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'" Pls.' Br. at 53 (quoting *Acierno*, 40 F.3d at 655) (emphasis added). Failing to demonstrate their claimed harm is an "actual threat" means Plaintiffs are not at risk of irreparable harm.

Plaintiffs defeat their own claim of irreparable harm by threatening to close their businesses of their own accord before any hypothetical and uncertain enforcement. Plaintiffs state that "[s]everal members of AALBA and ABA have already expressed that they are considering closing or selling their businesses to escape the harassment and avoid the uncertainty that they will be shut down arbitrarily." Pls' Br. at 31 (citing Am. Compl. ¶ 256). Of course, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their

---

69, 73 (3d Cir. 1989)). The only exception to this rule is for First Amendment claims, *see Del. State Sportsmen's Ass'n*, 108 F.4th at 203-04, but Plaintiffs do not assert they are suffering irreparable harm from their right-to-petition claims, Pls.' Br. at 52-54. And even if Plaintiffs were to put forward such an argument, it would fail because their First Amendment claim is not likely to succeed on the merits, *see infra* Part III.C.4.

Finally, even if they had cited the selective enforcement of the Nuisance Ordinance, that would not present a risk of imminent irreparable harm, since Plaintiffs have the right to appeal any City enforcement before their business is closed. Phila. Code §§ 9-4403(2); 9-4405.

fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 at 416 (2013).

Moreover, even if Plaintiffs could establish that the Ordinances somehow make their business operations economically untenable, this would merely be a classic financial harm that could be redressed by money damages after trial. *Acierno*, 40 F.3d at, 653 (3d Cir. 1994) ("'however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough'" (citation omitted)). Citing only a nonbinding decision from one of Pennsylvania's intermediate appellate courts[12] and a 30-year-old decision from the Western District, Plaintiffs try to suggest that they somehow fall into exceptions for "'loss of business opportunity'" and "'damage to interest in real estate.'" Pls. Br. at 53 (quoting *Kessler v. Broder*, 851 A.2d 944, 951 (Pa. Super. 2004); *J.C. Penney Co. v. Giant Eagle, Inc.*, 813 F. Supp. 360, 369 (W.D. Pa. 1992)). But not only does the general rule as explained by the Third Circuit in *Acierno* control here, Plaintiffs do not even meet their claimed exceptions.

At best, the cases Plaintiffs cite explain how financial harm can be considered irreparable if it is impossible to estimate, not that *any* harm to a business or property owner suffices for injunctive relief. The theory espoused in *Kessler* stemmed from caselaw discussing the difficulty in quantifying the harm of loss of goodwill resulting from violation of a noncompete agreement and subsequent inference with customer relationships. *See Kessler*, 851 A.2d at 951 & n.11 (citing *Santoro v. Morse*, 781 A.2d 1220, 1229 (Pa. Super. 2001) (citing *Sovereign Bank v. Harper*, 674 A.2d 1085, 1093 (Pa. Super. 1996)). And even *J.C. Penney* recognized that "[b]reach of an exclusive provision in a shopping center lease may not *necessarily* cause

---

[12] Federal, not state, law, applies to procedural issues such as the standard for a preliminary injunction. *See, e.g.*, *Quaker Chemical Corp. v. Varga*, 509 F.Supp.2d 469, 478 n.8 (E.D. Pa. 2007); *Cigar Ass'n of Am. v. City of Philadelphia*, 500 F. Supp. 3d 428, 435–36 (E.D. Pa. 2020).

irreparable damage to the tenant protected by such a clause." 813. F. Supp. at 369. Instead, the reference to "real estate" is just another variation of the impossible-to-estimate exception, where lost profits from forced competition or damaged sightlines may not reliably be ascertained. *See id.* (citing *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989) ("[L]oss of revenues resulting from considerations such as diminished visibility, restricted access, less commodious parking, and the like are sufficiently problematic as to defy precise dollar quantification").

Plaintiffs here do not come close to making a clear showing that their alleged damages cannot be estimated. Plaintiff businesses could easily calculate the profits they previously earned from after-curfew hours. Plaintiffs do not even attempt to show that their businesses rely on such revenue to continue. And even Plaintiffs' alleged harm might not manifest at all if customers shift their business to earlier hours. In any event, such alleged harm is by no means impossible to estimate or otherwise irreparable.[13]

---

[13] Moreover, Plaintiffs' delay in bringing their actions demonstrate that their claimed irreparable harm was not of the urgency requiring preliminary injunctive relief. *See, e.g., EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. 05-5259, 2006 WL 892718, at *12 (D.N.J. Apr. 4, 2006) (citing *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("[W]here a [movant] delays in seeking preliminary injunctive relief, such delay is evidence that speedy relief is not needed."); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *Orson, Inc. v. Miramax Film Corp.*, 836 F. Supp. 309, 312 (E.D. Pa. 1993))). This is true even in the First Amendment context. *See Doe v. Banos*, 713 F. Supp. 2d 404, 415 n.15 (D.N.J. 2010) ("John Doe's lack of urgency as reflected in how this motion was brought before the Court undermines his claim of immediate and irreparable harm to his First Amendment rights"), *aff'd*, 416 Fed. App'x 185 (3d Cir. 2010)). The Amended Complaint cites nuisance notices issued close to a year ago, yet Plaintiffs waited months before seeking injunctive relief. Despite the Court's Order denying Plaintiffs' TRO, setting a hearing date on their original motion for preliminary injunction, and authorizing expedited discovery, Plaintiffs chose to file a superficially amended complaint on the deadline for doing so rather than respond expeditiously or substantively to the fatal defects raised in Defendants' original motions to dismiss. They also filed a new motion for preliminary injunction on the same day, mooting their earlier motion and resetting the briefing schedule, that similarly failed to address the lack of

Because Plaintiffs have not established irreparable harm is immediate and imminent from the Ordinances, preliminary injunctive relief against enforcement cannot be issued.

**C.   <u>Plaintiffs Are Not Likely to Succeed on the Merits</u>**

1.   <u>Plaintiffs Lack Standing to Bring Their Claims</u>

The Individual Plaintiffs fail to allege any actual or imminent injury caused by the City, and the Organizational Plaintiffs cannot maintain associational standing. Plaintiffs' Motion fares no better than their Amended Complaint—both are devoid of specific factual allegations of harm, relying instead on their subjective, hypothetical fears of future action by the City under the Ordinances that may never come to pass. For these reasons alone, Plaintiffs cannot show a likelihood of success on the merits.

*a.   The Individual Plaintiffs Lack Standing Because They Fail to Allege Legally Cognizable Harm.*

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167,185 (2000) (citations omitted). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."" *Friends of the Earth*, 528 U.S. at 180-81 (citation omitted). "These elements are conjunctive, with no one being dispositive and all necessary." *Id.* (citation omitted).

---

irreparable harm their original motion contained despite having two more months of data to draw from. This conduct highlights that even Plaintiffs do not believe any alleged harm requires interim relief.

To confer standing, the "threatened injury must be certainly impending to constitute injury in fact," and "there must be at least a substantial risk that the harm will occur." *Schaller v. United States Soc. Sec. Admin.*, 844 F. App'x 566, 571 (3d Cir. 2021) (cleaned up)*; see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that a "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are insufficient).

Here, Individual Plaintiffs claim that the City enforces the Ordinances in a racially discriminatory fashion but point to no consequences of the alleged enforcement. As to the Curfew Ordinances, no Individual Plaintiff alleges that they are even located in a covered area or that they have suffered any harm as a result of having to close during the curfew period. The only specific business the Amended Complaint alleges is subject to any Curfew Ordinance[14] is Quick Stop, a non-party member of Organizational Plaintiff AAB, but the Amended Complaint does not allege Quick Stop has suffered any actual injury, and in any event, AAB's alleged harm cannot establish standing for the Individual Plaintiffs. Am. Compl. ¶¶ 244–248.

With regard to the Nuisance Ordinance, per the Amended Complaint, half of the six Individual Plaintiffs—Yo Deli Inc., Best Beer, Inc., and CDD 725 Inc.— have had no interaction at all with the City under the Nuisance Ordinance. The Amended Complaint identifies a handful of warning notices and two CVNs issued by the City to other Individual Plaintiffs, none of which resulted in a fine or a Cease Operations Order, or even a precursor Notice of Intent to Cease Operations. And even if they had, the City is required to give Plaintiffs the opportunity to

---

[14] Each Curfew Ordinance is a separate law, so in order to challenge one, Plaintiffs would need to identify a separate member business that was harmed for each individual ordinance. *See supra* Part II.B.

remediate the issues through an abatement plan before moving forward with ceasing operations. *See* Phila. Code § 9-4403(3)(a)-(c).

While Plaintiffs suggest that one or two nuisance citations (which carry no financial penalty) constitute harm because it allegedly means they could be closed at some future time, that speculation is insufficient to confer standing as it depends on a long string of events that may or may not occur: (1) another nuisance behavior *possibly* occurring at a Plaintiff's business, (2) PPD *possibly* responding to that nuisance behavior and *possibly* issuing a citation, only after there is a determination that the behavior has a nexus to the business, (3) then *possibly* issuing a Notice of Intent to Cease Operations, if the business has already had two other violations in a twelve month period, and (4) *possibly* ceasing operations if the owner refused to remediate the issues contributing to the nuisance activity. This is precisely the speculative, hypothetical harm courts have held is insufficient to confer standing. *See Clapper*, 568 U.S. at 409 ("[A] threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are insufficient).

Instead, much of the harm Plaintiffs cite in the Amended Complaint refers to action by the Commonwealth Defendants that Plaintiffs claim poses a threat to their liquor licenses—specifically, the Complaint repeatedly emphasizes that some Plaintiffs and other members of AALBA have received only temporary license renewals for the most recent period. *See, e.g.*, Am. Compl. ¶ 251. But the City is not involved in the issuance, renewal, or revocation of state liquor licenses—nor have Plaintiffs claimed as much. And in the two specific examples of temporary license renewal cited in the Complaint, no action by the City is even alleged. *See* Am. Compl. ¶¶ 176–189 (alleging temporary license renewal for Plaintiff Yo Deli Inc. but action only by the Commonwealth); *id.* ¶¶ 200–206 (alleging temporary license renewal for Best Beer but

action only by the Commonwealth). Therefore, any injury related to Plaintiffs' liquor licenses is not "fairly traceable" to the City.

Finally, Plaintiffs lack standing for their First Amendment right-to-petition claim. It is undisputed that the Nuisance Ordinance does not govern speech or protected conduct. Where the law "issues no commands or prohibitions . . . and sets forth no standards governing . . . [protected] conduct," a plaintiff lacks sufficient First Amendment harm to invoke the jurisdiction of the federal courts. *United Presbyterian Church in the U.S. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (then-Circuit Judge Scalia). And as discussed above, Plaintiffs have suffered no harm.

Instead, Plaintiffs claim a "chilling effect," in that they are afraid to report crimes because they may receive a citation under the Ordinance. *See* Am. Compl. ¶¶ 199, 285. But merely fearing a potential downstream consequence from expressive activity, where the expressive activity itself is not subject to the challenged regulation, is not a legally cognizable harm.[15] "All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) **apart from the 'chill' itself.**" *Reagan*, 738 F. 2d at 127*8* (emphasis added) (giving examples of being denied admission to the bar, threatened or actual firing, or denied mail delivery).

At most, Plaintiffs have alleged subjective, hypothetical fears, which cannot confer standing in the absence of identified concrete harm. As a result, the Individual Plaintiffs lack standing and are unlikely to succeed on the merits for that reason alone.

---

[15] Plaintiffs are no different from anyone else who reports a suspected crime—if they had a part in the crime, they may be liable, but not simply because they called the police, and their subjective fear of reporting the crime does not implicate the First Amendment.

       *b.  The Organizational Plaintiffs Cannot Maintain Associational Standing.*

It is well-settled that an association only "has standing to bring suit on behalf of its members when; (a) its members would otherwise have standing to sue in their own right; (b) the interests at stake are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 n.10 (3d Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)). As to the third element, this turns on whether the claim(s) at issue and relief requested require "individualized proof." *Hunt*, 432 U.S. at 344.

Here, the Organizational Plaintiffs lack standing for multiple, independently fatal reasons. First, Organizational Plaintiffs lack standing because they fail to make "specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). As discussed above, none of the member Individual Plaintiffs have alleged cognizable harm by the City, and the Amended Complaint does not allege any harm to the only non-plaintiff member identified. *See* Am. Compl. ¶¶ 244-248 (alleging only that individuals in the community rely on Quick Stop for groceries, without alleging any harm to the specific business, enforcement by the City, or the racial identity of the business's owner). For the Nuisance Ordinance specifically, Plaintiff AAB has not alleged *any* action by the City against *any* of its members, in the form of a citation, warning, Notice of Intent to Cease, or otherwise.

Second, the nature of the challenged ordinances requires the participation of covered individual members in the lawsuit. The Curfew Ordinances apply only within distinct geographical areas of the City, requiring individualized proof that a business falls within the catchment areas, is affected by the curfew, and is not otherwise exempt. Moreover, application and enforcement of the Nuisance Ordinance is quite nuanced and hinges on details that will

necessarily vary significantly from business to business. *See* Ex. 2 at 25:16-24 (DC Healy

explaining that complaints of nuisance behavior are referred to District captains, and that "just

because nuisances happen at a location doesn't mean that the owner is aware of it or responsible

for it," so "there's a step-by-step process" in addressing complaints). As discussed *supra*, the

circumstances of just the six Individual Plaintiffs, all of whom are members of AALBA, vary

greatly, with half the group alleging no action at all by the City under the Ordinance.

      Because the Amended Complaint does not contain allegations showing that any member

of AALBA or AAB would have standing in their own right to challenge each of the Ordinances,

and because the participation of individual member businesses is necessary to prove the types of

claims in the Amended Complaint, the Organizational Plaintiffs also lack standing and cannot

succeed on the merits.

      2.  <u>Plaintiffs Are Not Likely to Succeed on Their Equal Protection Claims</u>

      Plaintiffs' equal protection claims are not likely to succeed, as they have not alleged a

policy or practice to establish a basis for municipal liability under Section 1983, have not

identified a single similarly situated business that was treated differently, and cannot show

discriminatory intent or purpose on the part of the City.

      *a.  Plaintiffs Do Not Allege a Policy or Practice on Which to Base Municipal*
         *Liability under Section 1983.*

      Plaintiffs cannot succeed on their Section 1983 selective enforcement claims because

they fail to state a claim for municipal liability on the part of the City. It is well-settled that "a

local government may not be sued under § 1983 for an injury inflicted solely by its employees or

agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A

municipality can be sued directly under Section 1983 only where "the action that is alleged to be

unconstitutional implements or executes a **policy statement, ordinance, regulation, or decision**

**officially adopted and promulgated** by that body's officers." *Id.* at 690 (emphasis added).

Thus, a complaint that asserts a Section 1983 claim against a municipality must include "**specific**

**factual allegations** referencing the **conduct, time, place, and persons** responsible for any

official municipal policy or custom." *Torres v. City of Allentown*, No. 07-1934, 2008 WL

2600314, at *5 (E.D. Pa. June 30, 2008) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.

2005)) (emphasis added).

A complaint that fails to allege conduct by a municipal decisionmaker is legally

insufficient. *See McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009); *Pembaur v.

City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy with respect to the action

ordered."); *Rees v. Office of Children & Youth*, 473 F. App'x 139, 143 (3d Cir. 2012) (holding

that a complaint cannot state a claim against a municipality if it "fails to link the alleged

offending policies or customs to anyone within [a municipality] who had policy-making

authority").

In adjudicating Section 1983 claims against local governments, "courts have recognized a

two-path track to municipal liability . . . depending on whether the allegation is based on

municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)

(citations and quotations omitted). A policy occurs when a decisionmaker with final authority

"issues an official proclamation, policy, or edict," while a custom occurs when practices are "so

permanent and well-settled as to virtually constitute law." *Id.* (citations and quotations omitted).

Regardless of whether the claim is based on an alleged municipal policy or custom, "a plaintiff

must show that **an official who has the power to make policy is responsible** for either the

affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (emphasis added).

Plaintiffs plead no action by a City decisionmaker with policymaking authority, nor have they asserted a City custom regarding selective enforcement that is at all permanent or well-settled. The Amended Complaint does not identify a single City official who was responsible for the City's alleged selective enforcement of the Ordinances. The only mention made of a City policy is in one boilerplate legal conclusion:

> The acts complained of were carried out by the Defendants under the color of state law in their capacities as policymakers, city and state officials and/or police officers, pursuant to the customs, usages, practices, procedures, and laws of the City of Philadelphia, the Philadelphia Police Department, the Commonwealth of Pennsylvania and the Pennsylvania Liquor Control Board.

Am. Compl. ¶¶ 326. Such legal conclusions are "not entitled to the assumption of truth," *In re Schering Plow Corp. Intron*, 678 F.3d at 243, and are therefore insufficient to support a preliminary injunction.

At best, the Amended Complaint points to several isolated instances in which the Nuisance Ordinance was validly enforced against Plaintiffs, with no factual allegations concerning enforcement of any of the Ordinances against other businesses in the City. Plaintiffs set forth no factual allegations concerning the issuance of any supposed City 'policy' or 'custom' of selectively enforcing the Ordinances or the City officials purportedly involved. Plaintiffs have simply failed to plead a plausible claim for municipal liability and so cannot show a likelihood of success on their Section 1983 equal protection claims.

> b.   *Plaintiffs Have Not Shown Discrimination Through Selective Enforcement of the Ordinances.*

Plaintiffs' equal protection claims also fail on the merits because Plaintiffs have not, and cannot, plead discriminatory intent or treatment with respect to the Curfew or Nuisance

Ordinances. Neither Ordinance discriminates based on race, religion, or any other protected class: the Nuisance Ordinance is aimed at behavior and the Curfew Ordinances are based on geographical location and business model. *See* Phila. Code §§ 9-4400 *et seq.*, 9-630, 9-640, and 9-641. Recognizing the Ordinances are neutral on their face, Plaintiffs attempt to manufacture an argument that the Ordinances are being selectively enforced but plead no facts to support their threadbare assertions, falling far short of the clear showing required for preliminary injunctive relief.

"To establish a selective enforcement claim, a party must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . or to prevent the exercise of a fundamental right." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 184 n. 5 (3d Cir. 2010); *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). "Persons or parties are similarly situated for Equal Protection Clause purposes when they are alike in all relevant aspects." *Id.* "In order to prove selective enforcement, a party must also 'provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.'" *Id.* at 212 (quoting *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359 (3d Cir. 2012)).

Here, the Amended Complaint cites no evidence of a discriminatory purpose on the part of the City in enacting the Ordinances, nor does it identify a single similarly situated business that is subject to a different level of enforcement of the Ordinances. As to the Nuisance Ordinance, Plaintiffs' claim regarding selective enforcement consists of one boilerplate assertion: "[o]n information and belief, similarly situated white-owned businesses, takeouts, grocery stores, or restaurants are not similarly designated as potential nuisances." Am. Compl.

¶ 216. Plaintiffs do not identify what "white-owned businesses" they claim are subject to different enforcement of the Ordinance or how those businesses are similarly situated to Plaintiffs in all other respects. Put simply, Plaintiffs do not allege that any other businesses are committing the same violations of the Ordinance without the same enforcement by the City.

As to the Curfew Ordinances, Plaintiffs' claim is similarly deficient—Plaintiffs merely conclude that, "[u]pon information and belief, other businesses not owned by minorities are not subject to the same level of enforcement." Am. Compl. ¶ 249. Plaintiffs also baldly state that "[m]ore affluent, whiter, neighborhoods within Philadelphia are not subject to the same restrictions and oversite as Plaintiffs' businesses," without providing a single example of a similarly situated "whiter" neighborhood not subject to the Ordinance. Am. Compl. ¶ 100. All of the Amended Complaint's assertions regarding selective enforcement amount to legal conclusions and boilerplate assertions, not the kind of specific evidence necessary to obtain injunctive relief.

Even if Plaintiffs could show differential treatment in relation other businesses, their claims still fail because they cannot show the differential treatment was "based on an unjustifiable standard," *Jewish Home*, 693 F.3d at 363, nor can they show the City had a discriminatory purpose in enacting or enforcing the Ordinances. City Council enacted the Nuisance Ordinance after hearing testimony that undesirable, often dangerous behavior occurs on the grounds of, and is sometimes enabled by, certain business models. *See* Ex. 3 15:22-16:17 (testimony during Council hearings that certain City neighborhoods have "a number of what we call smoke shops and businesses that operate with food establishment licenses, but they barely sell any food that have hours that extend for twenty-four hours," and that those businesses "have also served as a nuisance on our commercial corridor . . . [t]hey have been a site for illegal drug

sales, prostitution, shootings and other violent crimes."). Indeed, Plaintiffs themselves posit a reason for the alleged, unspecified differential treatment other than race—also unsupported by any factual allegation—that "other similarly situated businesses . . . controlled by larger corporate interests" are "treated differently" than Plaintiffs. Am. Compl. ¶ 258.

As to the Curfew Ordinance, City Council heard testimony that the geographical areas and business models subject to the Curfew Ordinances had higher rates of overnight crime and nuisance behavior than other areas in the City. *See* Ex. 3 6:5-9 & 8:39 (testimony describing higher rates of crime overnight including "public disorder" and "open air drug use" with "a nexus to certain businesses"). Thus, it was certainly reasonable for the City to enact ordinances aimed directly at those issues, even if it resulted in the regulation of some businesses more than others. *See, e.g.*, *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 556 (3d Cir. 2011) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)) ("Under rational basis review, the challenged classification must be upheld if it is 'rationally related to a legitimate state interest.'"); *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)) ("[A party must] show that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects.'").

Beyond alleging a handful of minority businesses that received letters under the Nuisance Ordinance, Plaintiffs plead no facts that even begin to show discriminatory intent or selective enforcement of the Ordinances, so their equal protection claims have no likelihood of success on the merits.

3. Plaintiffs Are Not Likely to Succeed on Their Due Process Claims

Plaintiffs also assert that the Curfew and Nuisance Ordinances are so vague and "overbroad" that they violate state and federal due process.[16] But Plaintiffs are not likely to succeed on these claims either, for ***three reasons***. ***First***, the Ordinances are not unconstitutionally vague; ***second,*** the overbreadth doctrine only applies to First Amendment claims, not due process, and does not provide a substantive basis for relief; and ***third,*** the Ordinances are not overbroad in any event.

*a. The Ordinances Are Not Vague*

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "[T]o find an economic civil statute void for vagueness, it must be so vague as to be "no rule or standard at all." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631-32 (3d Cir. 2013) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 1231 (1967)). "That an ordinance may contain some ambiguities does not render it impermissibly vague," *id.*, so long as it does not lack "any legally fixed standards," *Giaccio v. Pennsylvania.*, 382 U.S. 399, 403 (1966).

Further, "[t]o succeed on a facial vagueness challenge, the plaintiff must 'demonstrate that the law is impermissibly vague in all of its applications.'" *CMR D.N. Corp.*, 703 F.3d at 632. But "speculation about possible vagueness in hypothetical situations not before the Court will

---

[16] The parties agree the same analysis applies under both constitutions. Am. Compl. ¶ 277; *see also HAPCO v. City of Philadelphia*, 482 F.Supp.3d 337, 356 (E.D. Pa. 2020) ("The federal and Pennsylvania due process clauses are '"substantially equivalent" in their protective scope.'" (quoting *Hosp. & Healthsystem Ass'n of Pa. v. Com.*, 77 A.3d 587, 600 n.15 (2013)).

not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733. Similarly, "a plaintiff whose [action] is clearly proscribed cannot raise a successful vagueness claim." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010); *Commonwealth v. Costa*, 861 A.2d 358, 362 (Pa. Super. 2004) ("[V]agueness challenges may be rejected where an appellant's conduct is clearly prohibited by the statute in question.").

Here, Individual Plaintiffs cannot even proceed with a vagueness challenge because, to the extent they have standing, they do not dispute that the Ordinances apply to them, and because it is not vague as to them, it is not "vague in all of its applications," *CMR D.N. Corp.*, 703 F.3d at 632; as a result, neither they nor the Organizational Plaintiffs can successfully raise a facial challenge either. Moreover, examining the language of the Ordinances shows they are not unduly vague in any instance.

> i.   *The Curfew Ordinances Are Not Vague*

The Curfew Ordinances apply to "Commercial Establishments" within certain geographic areas of the City that are "involved in the buying and selling of goods where consumers primarily purchase goods intended for consumption or use off premises." Phila. Code §§ 9-630(1)(a), 9-641, 9-642 and 9-643. Plaintiffs claim this language is unduly vague because the terms "primarily" and "goods" are not further defined. Am. Compl. ¶¶ 137-142. But these terms are easily understood by a person of reasonable intelligence, and Plaintiffs provide no explanation as to how they are otherwise confusing or leave law enforcement with unfettered discretion.

Plaintiffs suggest "primarily" is a vague because it is a "term of degree." (Pls.' Br. at 38 (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1047 (1991)). But *Gentile* dealt with the terms "general" and "elaboration," which "ha[d] no settled usage or tradition of interpretation in law" in the relevant context. 501 U.S. at 1048-49. By contrast, "primarily" is easily defined in

30

customary usage and legal precedent. "Webster's Dictionary defines 'primarily' as 'for the most part; chiefly' and 'in the first place.'" *Bloomsburg Town Ctr., LLC v. Town of Bloomsburg*, 241 A.3d 687 (Pa. Cmwlth. 2020) (quoting Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/primarily (last visited November 4, 2020)). Similarly, the term has been construed by courts to mean at least a "bare majority." *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005) (collecting examples in bankruptcy context).

The term "goods" is even more obvious, to the point that Plaintiffs make no effort to explain how it even could be vague in this context. The term refers to tangible objects, as opposed to services. *See, e.g.*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/goods#dictionary-entry-2 (last updated December 23, 2024) (defining "goods" as, among other things, "something manufactured or produced for sale" such as "canned *goods*"); *see also* 13 Pa. C.S. § 9102 (defining for Pennsylvania's Uniform Commercial Code "goods" as ""All things which are movable"). Further, the Ordinances provide additional clarity by giving the example of an establishment that sells "food" or drinks. Phila. Code § 6-102(19); *see also id.* § 6-102(18) (defining "[f]ood" as any "substance intended for human consumption, whether in solid or liquid form").

In the context of the Curfew Ordinances, these terms are easily applied to provide guidance. The Ordinances apply to establishments where the majority of business consists of customers purchasing tangible items, like food or drink, that they take elsewhere to consume. Plaintiffs do not even dispute that they or their members fall into this category. In fact, they specifically allege that they sell "grocer[ies]" and "alcoholic beverages."  Am. Compl. ¶¶ 31-37.

Nor do Plaintiffs explain how these terms encourage arbitrary enforcement. The most Plaintiffs do is conclusorily suggest "upon information and belief" that this clear language will

nonetheless be enforced arbitrarily. Am. Compl. ¶¶ 142-143. But a void-for-vagueness claim

must allege how the language of the law itself supports arbitrary enforcement. *Cf. Vill. of*

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (holding that

where the "*language* of the ordinance is sufficiently clear . . . the speculative danger of arbitrary

enforcement does not render the ordinance void for vagueness." (emphasis added)). Plaintiffs do

not identify any part of the Curfew Ordinances that leave room for law enforcement to make

subjective determinations or policy judgments that would run afoul of due process. Having failed

to make that showing, Plaintiffs vagueness challenge to the Curfew Ordinances is not likely to

succeed.

### ii.    The Nuisance Ordinance Is Not Vague

Plaintiffs' vagueness challenge to the Nuisance Ordinance is facially deficient. While

Plaintiffs couch their claim as one of vagueness (and overbreadth, addressed below), they fail to

identify any problematic language in the law itself; instead, they take issue with the so-called

"wide range of behaviors" for which a citation may be issued. Am. Compl. ¶¶ 144-145, 268-279.

But the fact that a statute may apply to a broad range of behavior alone is no basis for finding it

void for vagueness absent some language "encourag[ing] arbitrary and discriminatory

enforcement," *Hill*, 530 U.S. at 732.

Beyond pointing to its broad range, Plaintiffs do not explain what part of the Ordinance's

language encourages arbitrary or discriminatory enforcement. To the extent Plaintiffs take issue

with the appropriateness of penalizing a business for third-party conduct, that is a challenge to

the rationality of the legislature's policy decision and one they have failed to plead in the

32

Amended Complaint.[17] *See* Am. Compl. ¶ 145 (suggesting the Ordinance is problematic because it allegedly prohibits behavior "not related to the operation of the business itself"). And as discussed above, Plaintiffs incorrectly interpret the statutory scheme, which only punishes businesses that contribute to the harmful conduct and refuse to make efforts to remedy it. *See supra* Part II.A.

       *b.*   *The Overbreadth Doctrine Does Not Apply to Due Process Claims*

      Plaintiffs also suggest the Curfew and Nuisance Ordinances are "unconstitutionally overbroad" in violation of due process because the Ordinances have "overbroad terms" that do not provide fair notice of what conduct is prohibited, leading to arbitrary enforcement. Am. Compl. ¶¶ 144, 267-279. Not only do Plaintiffs fundamentally misunderstand the nature of an overbreadth claim, but precedent in this Circuit clearly forecloses one not based on the First Amendment.[18] As a result, any claim that the Ordinances are "overbroad" in violation of due process fails as a matter of law.

      "Overbreadth is a [federal] standing doctrine that permits parties in cases involving First Amendment challenges to government restrictions on noncommercial speech to argue that the regulation is invalid because of its effect on the First Amendment rights of others not presently before the Court." *Vill. of Hoffman Ests.*, 455 U.S. at 508. Thus, whether a plaintiff "may make use of the overbreadth doctrine depends, in the first instance, on whether or not it has a colorable claim that the ordinance infringes on constitutionally protected, noncommercial speech of

---

[17] Of course, such a challenge would fail, both because the Ordinance in question does no such thing and because a legislature could rationally conclude that a business whose operation contributes to behavior harmful to the public should be limited to decrease the risk of future harm.

[18] As discussed in greater detail below in Part III.C.4, *infra*, Plaintiffs' overbreadth argument for their Right to Petition claims in Counts V and VI also fails as a matter of law because the Ordinances do not apply to any expressive activity of Plaintiffs or third parties.

others." *Id.* That is because "[t]he overbreadth doctrine has only been applied in First Amendment cases." *Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*, 733 F. App'x 34, 39 (3d Cir. 2018) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); *Lutz v. City of York*, 899 F.2d 255, 270-71 (3d Cir. 1990) ("[T]he overbreadth doctrine has never been recognized outside the context of the First Amendment[.]")).

For purposes of Counts I and II, Plaintiffs ground their claims for overbreadth in due process rather than the First Amendment. As a result, as to these counts, Plaintiffs "overbreadth arguments are misplaced, because [t]he[y] allege[] substantive due process violations rooted in the Fifth and Fourteenth Amendments, not a First Amendment claim." *Id.*

And even if Plaintiffs could invoke overbreadth for purposes of their due process claim, it would fail as a matter of law. Plaintiffs do not identify any fundamental due process rights belonging to third parties that the Ordinances unconstitutionally infringe upon. Just as they fail to articulate how the Ordinances are vague as applied to Plaintiffs, they also do not allege any vagueness as to third parties. And in any event, businesses generally have no constitutional right to engage in non-expressive commercial activity that harms the public. Cf. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 371 (3d Cir. 2012) ("'[A] public program adjusting the benefits and burdens of economic life to promote the common good . . . ordinarily will not be compensable.'" (citation omitted) (alteration in original)). Because the Ordinances to not infringe on non-expressive fundamental rights, Plaintiffs cannot succeed in challenging the Ordinances on the basis of being vague and "overbroad."

4.  <u>Plaintiffs Are Not Likely to Succeed on Their Right to Petition and Related
Overbreadth Claims</u>

Plaintiffs are also unlikely to succeed in their claims in Counts III through VI that the

City Defendants are violating their and others' right to petition the government because Plaintiffs

allege only a subjective chilling effect, not that the Nuisance Ordinance penalizes protected

conduct. On its face, the Nuisance Ordinance does not regulate or restrict Plaintiffs' speech in

any manner, including their right to petition the government. Plaintiffs instead claim that they are

afraid to call PPD to report crimes because they may receive a nuisance warning, which they

characterize as a "strike" towards being labeled a chronic nuisance business. *See* Am. Compl.

¶¶ 148. As discussed *supra* in Part III.C.1.a, this subjective chilling effect is not a legally

cognizable harm—for Plaintiffs or third parties—and is insufficient to succeed on a right-to-

petition or "overbr[eadth]" claim.

Far from barring Plaintiffs from contacting police, the plain language of the Ordinance

contemplates a dialogue between business owners and the City. *See* Phila. Code §§ 9-4403

(providing that a Cease Operations Order may be issued only if the business refuses to respond

or fails to comply with an abatement plan), 9-4404 (describing nuisance abatement plans as

agreements between a business and the City). Moreover, the warning notices attached as exhibits

to Plaintiffs' Amended Complaint *invite* Plaintiffs to contact PPD, providing that if Plaintiffs

"need recommendations of how to stop this nuisance behavior from occurring, please feel free to

contact the Crime Prevention Officer." Am. Compl., Ex. C, ECF No. 28-3, at 3; *id.*, Ex. F, ECF

No. 28-6 at 2. PPD Directive 4.25 expressly requires a "nexus" or "connection" between the

business and the nuisance activity, and does not contemplate nuisance enforcement action in

response to a business's call. Ex. 5 at 3. It also provides for communication between the business

and PPD with no penalty; indeed, such communication is a key component to resolving ongoing

35

nuisance issues. *Id.* at 5. And Plaintiffs do not allege that they have contacted PPD for assistance with nuisance behavior and then received a citation under any Ordinance, nor do they allege any retaliation for having contacted PPD.

Although denominated as "First Amendment . . . Overbr[eadth]" claims, Counts V and VI are merely recitals of the elements of the due process vagueness claim, not a First Amendment claim. *Compare*, *e.g.*, Am. Compl. ¶¶ 297, 299 (alleging laws are overbroad because "they are not sufficiently defined and do not provide a person of ordinary intelligence fair notice of what conduct is prohibited" and "invite selective discriminatory enforcement"), *with Hill*, 530 U.S. at 732 ("A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."). As discussed in Part III.C.3 above, the laws are not vague as to Plaintiffs or third parties.

Moreover, overbreadth is not a type of First Amendment claim; it is a standing doctrine that allows a party to assert that a law could unconstitutionally infringe the expressive activity of nonparties, even if it is constitutional as to the named plaintiffs. *Vill. of Hoffman Ests..*, 455 U.S. at 508. Even applying overbreadth, a plaintiff must still state a valid First Amendment claim as to those nonparties. But because Plaintiffs do not allege a cognizable First Amendment harm to *anyone*, overbreadth does not cure the legal deficiencies in their claims.

Because the Nuisance Ordinance does not regulate Plaintiffs' expressive activity, they cannot succeed on their right-to-petition and overbreadth claims in Counts III, IV, V, and VI.

5. <u>Plaintiffs Are Not Likely to Succeed on Their Conspiracy Claim</u>

Plaintiffs fail to state underlying constitutional claims and fail to allege facts to support a civil conspiracy claim, beyond a mere recitation of the elements. A conspiracy under Section 1983 requires that two or more conspirators reach an agreement to deprive a plaintiff of a constitutional right under color of law. *Berrios v. City of Philadelphia*, 96 F. Supp. 3d 523, 534 (E.D. Pa. 2015) (citations omitted). "To prove a conspiracy, a plaintiff must establish: (1) a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for the consequences; (2) the purpose of the plan was to violate the constitutional rights of the plaintiff; and (3) an overt act resulted in the actual deprivation of the plaintiff's constitutional rights." *Id.* at 534-35 (citation omitted). When a plaintiff fails to "demonstrate a deprivation of a constitutional right" in its underlying claims, their "conspiracy claims fail" as well. *Id.* at 535 (citation omitted). "A plaintiff must allege a factual basis to support **agreement** and **concerted action**-the elements of conspiracy." *Id.* at 534 (citations omitted) (emphasis added).

The Amended Complaint is devoid of any allegation regarding a plan, purpose, agreement, or concerted activity between Defendants. As discussed *supra*, the City is not given a role in the issuance, renewal, or revocation of state liquor licenses, and in the two specific licensing incidents cited in the Amended Complaint, no action by the City is even alleged. Moreover, Plaintiffs fail to state underlying constitutional violations by Defendants. Because the Amended Complaint is devoid of facts necessary to establish conspiracy, Plaintiffs cannot succeed on this claim either.

6.  <u>Plaintiffs Are Not Likely to Succeed and Cannot Obtain Injunctive Relief on Their Declaratory Judgment Claim</u>

Plaintiffs are not likely to succeed on their Declaratory Judgment cause of action because it is duplicative of their other, legally deficient counts. Plaintiffs do not allege that they seek a declaratory judgment on any basis not already alleged in the preceding counts. *See* Am. Compl. ¶¶ 342-348. As the Amended Complaint notes, a declaratory judgment claim requires an "actual controversy" indicating imminent and inevitable litigation and direct, substantial, and present interest. Am. Compl. ¶ 345. But because Plaintiffs have elsewhere failed to state a claim for any compensable injury, *see supra* Part III.C.2-5, and there is no imminent and inevitable injury, *see supra* Part III.B, C.1, they are not likely to succeed on their separate declaratory judgment count against the City Defendants here. *Cf.  Mills v. City of Philadelphia*, No. CV 21-273, 2022 WL 4389518, at *6 (E.D. Pa. Sept. 22, 2022) ("A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention." ((citing *Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004))).

D.  **The Equities and the Public Interest Do Not Support Injunctive Relief**

Beyond Plaintiffs' failure to show irreparable harm and a likelihood of success on the merits, the balance of the equities and public interest both support the Ordinances' continued enforcement to prevent further public nuisances and crime in Philadelphia.

"'Balancing the equities' is jurisprudential 'jargon for choosing between conflicting public interests.'" *Pennsylvania v. Trump*, 281 F. Supp. 3d 553 (E.D. Pa. 2017) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1952) (Frankfurter, J., concurring)). "'[C]ourts must *balance* the competing claims of injury and must consider the

38

effect on each party of the granting or withholding of the requested relief." *Reilly*, 858 F.3d at 177–78 (emphasis in original) (quoting *Winter*, 555 U.S. at 24), *as amended* (June 26, 2017). Further, this factor and the public interest factor merge when the government is the defendant. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, Plaintiffs have not shown any irreparable harm to weigh against the public interest in reduced nuisance behavior, so these factors favor continued enforcement by the City. The Ordinances are specifically designed to further the public interest: they exist to deter and prevent behavior that is harmful to the public, such as crime and other public nuisances. The Nuisance Ordinance does this directly by incentivizing businesses whose behavior contributes to the nuisance to take steps to reduce the harmful activity. The Curfew Ordinances build on this by limiting business hours in areas where harmful activity is more likely to occur overnight. Even if Plaintiffs' unsupported allegations of selective enforcement were true, the solution would not be to enjoin enforcement of the Ordinances; it would be increased enforcement against additional, unidentified businesses that are violating the Ordinances and against whom the City is supposedly not taking action.

Because the Ordinances further the public interest in reducing public nuisances, the equities and public interest favor continued enforcement of the Ordinances.

IV.    **RELIEF SOUGHT**

For the reasons discussed *supra*, the City Defendants respectfully request that the Court

deny Plaintiffs' Motion without a hearing.[19]


Date: February 10, 2025                     Respectfully submitted,

                                            PHILADELPHIA LAW DEPARTMENT
                                            RENEE GARCIA, CITY SOLICITOR


                                            */s/ Ryan B. Smith*
                                            MELISSA MEDINA
                                            Divisional Deputy City Solicitor
                                            Pa. Bar No. 327048
                                            MICHAEL PFAUTZ
                                            Deputy City Solicitor
                                            Pa. Bar No. 325323
                                            RYAN B. SMITH
                                            Deputy City Solicitor
                                            Pa. Bar No. 324643
                                            City of Philadelphia Law Department
                                            1515 Arch Street, 15th Floor
                                            Philadelphia, PA 19102
                                            (215) 410-8264
                                            Ryan.Smith@phila.gov
                                            *Counsel for City Defendants*

---

[19] A district court is not required to hold a hearing on a moving party's request for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990).

## **CERTIFICATE OF SERVICE**

I, Ryan B. Smith, hereby certify that on February 10, 2025, I caused a true and correct copy of the foregoing City Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction to be served via CM/ECF filing upon counsel for all parties.


Date: February 10, 2025                    _/s/ Ryan B. Smith_
                                           Ryan B. Smith
                                           Deputy City Solicitor