**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, et al., | : | |
| | : | No.  2:24-cv-06348 |
| Plaintiffs, | : | |
| v. | : | Judge Schmehl |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | Electronically Filed Document |
| | : | *Complaint Filed 11/26/2024* |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of Plaintiffs' Amended Motion for Preliminary Injunction, and Commonwealth Defendants' Opposition thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **DENIED**.

_____
**HONORABLE JEFFREY L. SCHMEHL**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED | : | |
| BEVERAGE ASSOCIATION, et al., | : | |
| | : | No. 2:24-cv-06348 |
| Plaintiffs, | : | |
| v. | : | Judge Schmehl |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | Electronically Filed Document |
| | : | *Complaint Filed 11/26/2024* |
| Defendants. | : | |

**COMMONWEALTH DEFENDANTS' OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR PRELIMINARY INJUNCTION**

Defendants Commonwealth of Pennsylvania, Pennsylvania State Police Bureau of Liquor Control Enforcement, Pennsylvania Liquor Control Board, and Pennsylvania Attorney General David W. Sunday, Jr. (collectively, "Commonwealth Defendants"), by and through undersigned counsel, respectfully submit the present Opposition to Plaintiffs' Amended Motion for Preliminary Injunction.

**I.    INTRODUCTION**

Plaintiffs' Amended Motion for Preliminary Injunction ("Motion") must be denied because Plaintiffs have failed to demonstrate a likelihood of succeeding upon the merits of the operative Complaint, and have failed to demonstrate a likelihood of suffering irreparable harm absent the award of a preliminary injunction. Plaintiffs' Motion requests that this Court issue a preliminary injunction, in relevant part, staying all proceedings related to the renewal of Plaintiffs' liquor licenses and the "temporary licenses" issued to Plaintiffs pending resolution of this action. (ECF No. 29 at 3.) Plaintiffs' Motion, additionally, requests that this Court issue a preliminary injunction enjoining Commonwealth Defendants from enforcing section 4-470 of the Liquor Code against Plaintiffs' businesses, and denying the renewal of Plaintiffs' liquor licenses.

(*Id.* at 2-3.)  Plaintiffs are not entitled to the requested preliminary injunction because Plaintiffs have failed to demonstrate a likelihood of succeeding upon their causes of action under against Commonwealth Defendants, and furthermore, have failed to demonstrate that they will suffer irreparable harm absent issuance of the requested preliminary injunction.

## II.    PROCEDURAL BACKGROUND

The present civil action was commenced on November 26, 2024, when the following plaintiffs filed a Complaint against Commonwealth Defendants and the City of Philadelphia ("City Defendant") (together, "Defendants"): Asian-American Licensed Beverage Association, Yo Deli, Inc., Best Beer, Inc., Sky Beer Deli, Inc., Maya Investment Group, LLC, 7701 Ogontz, Inc., CDD 725, Inc., and Arab American Business Association and Professional Association of the Delaware Valley's (collectively, "Plaintiffs").  (ECF No. 1.)  Additionally on November 26, 2025, Plaintiffs filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery (hereinafter, "Motion").  (ECF No. 3.)  The Court held a hearing upon Plaintiffs' Motion on December 3, 2024, and denied Plaintiffs' request for a temporary restraining order, granted Plaintiffs' request for expedited discovery, and scheduled a further hearing upon Plaintiffs' request for a preliminary injunction.  (ECF No. 14.)  The hearing upon Plaintiffs' request for a preliminary injunction is scheduled for March 19, 2025.  (*Id.*)

Subsequently, Plaintiffs, Commonwealth Defendants, and City Defendant entered into a stipulation agreeing that Defendants' responses to Plaintiffs' Complaint will be filed no later than January 6, 2025, and Defendants' responses to Plaintiffs' Motion will be filed no later than January 16, 2025.  (ECF No. 15.)  The Court granted the parties' joint stipulation, confirming the deadlines enumerated therein, on December 19, 2024.  (*Id.*)  On January 6, 2025, Commonwealth Defendants and City Defendant each filed a Motion to Dismiss Plaintiffs'

Complaint. (ECF Nos. 17, 18.) Thereafter, on January 16, 2025, Commonwealth Defendants and City Defendants each filed an Opposition to Plaintiffs' Motion.

On January 27, 2025, in response to Defendants' Motions to Dismiss, Plaintiffs filed an Amended Complaint. (ECF No. 28.) Plaintiffs' operative Amended Complaint added the following parties as defendants: Commonwealth Defendant Attorney General David W. Sunday, Jr., in his official capacity as Attorney General of the Commonwealth of Pennsylvania, and Cherelle Parker, in her official capacity as Mayor of the City of Philadelphia. (*Id.*) Plaintiffs' Amended Complaint alleges the following causes of action against Commonwealth Defendants and City Defendant:

> (1)    Violation of Due Process Clause of Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. section 1983 ("Section 1983") (against all Defendants);
>
> (2)    Violation of Due Process Clause of Article I, Section 1 of Pennsylvania Constitution (against all Defendants);
>
> (3)    Violation of First Amendment Right to Petition, pursuant to Section 1983 (against all Defendants);
>
> (4)    Violation of Right to Petition of Article I, Section 20 of Pennsylvania Constitution (against all Defendants);
>
> (5)    Violation of First Amendment Overbroad Doctrine (against all Defendants);
>
> (6)    Violation of Overbroad Doctrine of Article I, Section 20 of Pennsylvania Constitution (against all Defendants);
>
> (7)    Violation of Procedural Due Process of Fourteenth Amendment, pursuant to Section 1983 (against Commonwealth Defendants only);
>
> (8)    Violation of Procedural Due Process of Article I, Section 1 of Pennsylvania Constitution (against Commonwealth Defendants only);
>
> (9)    Selective Enforcement in Violation of Equal Protection Clause of Fourteenth Amendment, pursuant to Section 1983 (against all Defendant);

(10)    Selective Enforcement in Violation of Article I, Section 26 of Pennsylvania Constitution (against all Defendants);

(11)    Civil Conspiracy pursuant to Section 1983 (against all Defendants); and

(12)    Declaratory Judgment, pursuant to 28 U.S.C. § 2201 *et seq*.

(*Id.*)  Also on January 27, 2025, Plaintiffs filed an Amended Motion for Preliminary Injunction.  (ECF No. 29.)  Commonwealth Defendants, now, file the present Opposition to Plaintiffs' Amended Motion for Preliminary Injunction.

## II.    FACTUAL BACKGROUND

The Pennsylvania Liquor Control Board ("PLCB") is an independent administrative agency created by the Pennsylvania Liquor Code ("Liquor Code"). 47 P.S. § 2-201.  The duties and responsibilities of the PLCB are defined by the provisions of the Liquor Code, and provide, in pertinent part, that the PLCB is statutorily responsible for the regulation of liquor sales in the Commonwealth of Pennsylvania, including, but not limited to, the issuance of liquor licenses. *Id.* § 2-207.  The Liquor Code, separately, created a Bureau of Liquor Control Enforcement ("BLCE") within the Pennsylvania State Police, which is expressly responsible for enforcing the provisions of the Liquor Code.  *Id.* § 2-211.  In relevant part, the Liquor Code confers upon the BLCE the responsibility of investigating whether licensees have violated the provisions of the Liquor Code, and issuing citations when licensees have committed such violations.  *Id.* § 2-211(a)(4).

Plaintiffs maintain they are Asian-American and Arab-American business owners in the City of Philadelphia, who each have been issued a liquor license by the PLCB.  (ECF No. 28 at ¶¶ 31-40.)  Plaintiffs allege they have secured licenses from the PLCB categorized as "Restaurant Licenses" (R-Licenses), or "Eating Place Retail Licenses" (E-Licenses).  (*Id.* at ¶ 39.)  Those holding R-Licenses and E-Licenses are required to adhere to certain requirements

enumerated in the Liquor Code as well as PLCB regulations. As a form of exemplar, a nonexclusive list of requirements include the following: establishments holding a R-License and E-License must have seating for at least thirty (30) persons; must have sufficient food for at least thirty (30) persons; must have sufficient dishes and silverware to serve thirty (30) patrons at one time; must have a current and valid health permit; establishments holding a R-License must be not less than four hundred (400) square feet; and establishments holding an E-License must be not less than three hundred (300) square feet. 47 P.S. § 1-102 (seating, food, and square footage requirements); 40 Pa. Code § 5.41 (health permit requirements). As noted in the preceding paragraph, the BLCE is the law enforcement agency responsible for investigating whether the provisions of the Liquor Code have been violated, and may issue citations to licensees who have violated the provisions of the Code. *Id.* § 2-211(a)(4).

Importantly, establishments holding R-Licenses and E-Licenses are required to file an application with the PLCB to renew their licenses every two years. 47 P.S. § 4-470(a.1). Under the provisions of the Liquor Code, renewal of a liquor license is not automatic. *Id.* In considering whether or not to renew a liquor license, the PLCB may consider a variety of factors enumerated within the Liquor Code, including, but not limited to, the following: (a) whether the licensee has violated any of the laws in the Commonwealth or any of the regulations of the PLCB; (2) whether a licensee has been issued a citation for previous violations of the Liquor Code or PLCB regulations; (3) whether the licensed premises meets the requirements of the Liquor Code or PLCB regulations; and (4) "activity" that occurred on the licensed premises, or on another licensed premises operated by licensee, while the premises was open for operation and if there was a relationship between the activity and the manner in which the licensed premises was operated. *Id.* § 4-470(a.1). The PLCB may consider all Liquor Code violations

committed by a licensee in determining whether to renew a liquor license, regardless of when the violations occurred.

Plaintiffs' primary allegation contends Commonwealth Defendants PLCB and BLCE have targeted their businesses on the basis of Plaintiffs' Asian- or Arab-American race, and selectively enforced the provisions of the Liquor Code against such businesses in an effort to revoke their respective liquor licenses and close down their businesses. (ECF No. 28 at ¶¶ 45, 165-174, 323-330.) More specifically, Plaintiffs allege when they attempt to renew their liquor licenses with Commonwealth Defendant PLCB, rather than "simply issu[ing] a renewal", Commonwealth Defendant PLCB has instead "issued dozens of 'temporary renewal' letters" in response to Plaintiffs' applications. (*Id.* at ¶¶ 165-174.) Plaintiffs reason Commonwealth Defendants' issuance of "temporary renewal letters" to their businesses is the result of race-based discrimination. (*Id.* at ¶ 45.)

Additionally, Plaintiffs contend that Commonwealth Defendants' issuance of "temporary renewal letters" violates procedural due process afforded by the Fourteenth Amendment, as well as the Pennsylvania Constitution. Plaintiffs maintain that Commonwealth Defendants' actions of issuance such letters threaten to "close established businesses . . . without adequate due process." (ECF No. 28 at ¶ 164.) Evident from the "temporary renewal letters" attached to the Amended Complaint, the "temporary renewal letters" issued to Plaintiffs provide that Commonwealth Defendant PLCB will hold a hearing on whether to renew the respective liquor licenses. (*Id.* at ¶¶ 175, 202, Exhibit B, D.) The "temporary renewal letters" specifically identify the citations issued to Plaintiffs, and further identify additional grounds warranting a hearing upon Plaintiffs' renewal applications. (*Id.*) Furthermore, the "temporary renewal letters" provide that Plaintiffs'

liquor licenses will remain valid and Plaintiffs will be permitted to continue operating during the administrative hearing process. (*Id.*)

Plaintiffs additionally allege that section 4-470(a.1) of the Liquor Code is unconstitutionally vague, and impedes upon Plaintiffs' rights under the due process clause of the Fourteenth Amendment of the United States Constitution and the Pennsylvania Constitution's equivalent. Specifically, Plaintiffs take issue with the fourth category Commonwealth PLCB may consider when determining whether or not to renew a liquor license—"activity" that occurred on the licensed premises, or on another licensed premises operated by licensee, while the premises was open for operation and if there was a relationship between the activity and the manner in which the licensed premises was operated. 47 P.S. § 4-470(a.1)(4). Plaintiffs contend that the Liquor Code does not include a definition for the phrase "activity", and therefore, it is unclear what sort of "activity" may be considered when Commonwealth PLCB is determining whether or not to renew Plaintiffs' licenses, rendering the statutory provision unconstitutionally vague. (ECF No. 28 at ¶¶ 132-134.)

However, Plaintiffs seemingly contradict the above-described vagueness allegations, representing within the Amended Complaint that the "activity" referenced in section 4-470(a.1)(4) of the Liquor Code refers to—not just any "activity"—but *unlawful*, or *criminal* "activity" occurring on or near a licensed premises. (ECF No. 28 at ¶¶ 133-134, 160.) Indeed, Plaintiffs' First Amendment causes of action rely upon this interpretation. Notably, Plaintiffs argue section 4-470(a.1)(4) is unconstitutionally overbroad in violation of the First Amendment, and the Pennsylvania Constitution's equivalent, because the phrase "activity" may allow Commonwealth Defendant PLCB to consider whether the licensed premises itself was a victim of a crime, when determining whether or not to renew a liquor license. (ECF No. 28 at ¶ 133.)

Additionally, Plaintiffs contend section 4-470(a.1)(4) of the Liquor Code violates Plaintiffs' "right to petition law enforcement for assistant or to report a crime" under the First Amendment and the Pennsylvania Constitution.  (*Id.* at ¶¶ 133-134, 160, 298.)  Specifically, Plaintiffs represent that the phrase "activity" as used in section 4-470(a.1)(4) allows Commonwealth PLCB to "consider police incident reports" and thereby "discourages [Plaintiffs] from calling the police for assistance or reporting crimes occurring on or near their premises[,]" thereby violating Plaintiffs' rights under the First Amendment and Pennsylvania Constitution.  (*Id.* ¶ 134.)

Plaintiffs' Amended Complaint prays for damages, attorney's fees, as well as the following relief against Commonwealth Defendants: (1) A preliminary and permanent injunction enjoining Commonwealth Defendants from continuing their unlawful and discriminatory treatment of Plaintiffs, including the selective enforcement of Section 4-470 of the Liquor Code; (2) A preliminary and permanent injunction restraining Commonwealth Defendants from denying or obstructing the renewal of Plaintiffs' liquor licenses or business permits based on discriminatory, unconstitutional, or unlawful criteria, including the improper application of Section 4-470 of the Liquor Code; (3) A preliminary and permanent injunction restraining Commonwealth Defendants from suspending Plaintiffs' liquor licenses under the PLCB Compliance Program and 72 P.S. § 1799.6-E(a)(1) and (b) of the Fiscal Code; (4) Staying all liquor license renewal proceedings of Plaintiffs'.  (ECF No. 28 at 48-49.)

## III.    LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson– Merck Consumer Pharm. Co*., 290 F.3d 578, 586 (3d Cir.2002)).  A plaintiff seeking a

preliminary injunctive must establish two "gateway factors". *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). First, the plaintiff must show that he or she "is likely to succeed on the merits". *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). In order to show a likelihood of succeeding on the merits of the case, the plaintiff must demonstrate that the chances of success are "significantly better than negligible but not necessarily more likely than not". *Reilly*, 858 F.3d at 179. Second, the plaintiff must show they are "more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* If the plaintiff satisfies both "gateway" factors, the court then must consider two additional factors, "the possibility of harm to other interested persons from the grant or denial of the injunction" as well as "the public interest". *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974). In considering the four factors stated above, the court should determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179. Importantly, the "failure to establish any element . . . renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir.1999). As a general matter, every order granting an injunction must state the reasons it was issued, state its terms specifically, and describe in reasonable detail any acts restrained. Fed. R. Civ. P. 65(d).

## IV.    ARGUMENT

Commonwealth Defendants urge this Court to deny Plaintiffs' Amended Motion for Preliminary Injunction on the ground Plaintiffs have failed to satisfy the two "gateway factors" required for an award of a preliminary injunction. *Reilly*, 858 F.3d at 179. Specifically, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their Complaint, and have failed to demonstrate a likelihood of suffering irreparable harm absent the award of a

preliminary injunction.  Commonwealth Defendants address Plaintiffs' failure to satisfy the two "gateway factors" in turn, below.

### A.      <u>Plaintiffs Fail to Demonstrate a Likelihood of Succeeding on the Merits</u>

Plaintiffs have failed to demonstrate a likelihood of succeeding on the merits of their Complaint against Commonwealth Defendants.  Plaintiffs' Complaint alleges twelve causes of action against Commonwealth Defendants.  (ECF No. 29.)  Plaintiffs have failed to demonstrate a likelihood of succeeding upon *any* of the causes of action advanced against Commonwealth Defendants for the following reasons.  First, Plaintiffs Asian-American Licensed Beverage Association ("AALBA") and Arab American Business Association and Professional Association of the Delaware Valley (hereinafter, "AAB") lack organizational standing to bring the present action.  Second, Plaintiffs' causes of action advanced pursuant to 42 U.S.C. section 1983 ("Section 1983")—First, Seventh, Ninth, and Eleventh—must be dismissed because Commonwealth Defendants are immune from suit against such claims pursuant to the Eleventh Amendment of the United States Constitution.  Third, the whole of Plaintiffs' causes of action fail to state a claim against Commonwealth Defendants.

### 1.      <u>Plaintiffs AALBA and AAB are Unable to Succeed upon Any of the Twelve Causes of Action Because they Lack Organizational Standing</u>

Plaintiffs AALBA and AAB, which are allegedly "association[s] of businesspeople . . . who[] have been granted a license from [Commonwealth Defendant] PLCB", are without organizational standing to bring the present civil action against Commonwealth Defendants. (ECF No. 28 at ¶¶ 31, 36.)  Accordingly, Plaintiffs AALBA and AAB are unable to demonstrate a likelihood of success upon *any* of the twelve cause of action advanced against Commonwealth Respondents.

"Article III of the Constitution limits '[t]he judicial power of the United States" to 'cases' or 'controversies,' ensuring that federal courts act only 'as a necessity in the determination of real, earnest and vital' disputes." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 199 (2023) (quoting *Muskrat v. United States*, 219 U.S. 346, 351 (1911)). "To state a case or controversy under Article III, a plaintiff must establish standing." *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 133 (2011). "In cases like these, where the plaintiff is an organization, the standing requirement of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right, or alternatively, it can assert 'standing solely as the representative of its members.' " *President and Fellows of Harvard College*, 600 U.S. at 199 (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). "The latter approach is known as representational or organizational standing." *Id.* In order to properly invoke organizational standing, "an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Id.* (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

The requirement concerning individual member participation has been informed by precedent from the Third Circuit. The Third Circuit Court has determined, where a plaintiff-organization brings a claim for damages, such a claim "fatally undercuts a request for organizational standing" because "damages claims usually require significant individual participation". *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F. 3d 278, 284 (3d Cir. 2002). "[T]he Supreme Court has additionally counseled 'that an association's action for damages running solely to its members would be barred for want of the association's

standing to sue.' " *Id.* ("Because claims for monetary relief usually require individual participation, courts have held associations cannot generally raise these claims on behalf of their members") (quoting U*nited Food & Commercial Workers Union Local 751 v. Brown Group, Inc*., 517 U.S. 544, 546 (1996)).  Furthermore, the Third Circuit has additionally determined, a plaintiff-organization's claim for injunctive or declaratory relief will be fatal to a request for organizational standing where the relief requested would require "a fact-intensive individual inquiry" into the organization's members.  *Id.* at 285-86.

### a.    *Plaintiff AAB Does Not Have Organizational Standing*

Presently, as evidenced by the allegations of the Amended Complaint, Plaintiff AAB seeks to invoke organizational standing for the purposes of bringing the present lawsuit against Commonwealth Defendants.  (ECF No. 28 at ¶¶ 21-22.)  Plaintiff AAB has wholly failed to demonstrate a satisfaction of the three requisite factors to establish organizational standing, thereby warranting dismissal of all causes of action advanced by Plaintiff AAB against Commonwealth Defendants.  With respect to the first factor, Plaintiff AAB has not established that its members would have standing to bring suit in their own right.  Tellingly, Plaintiffs' Amended Complaint does not identify a *single* member of Plaintiff AAB by name, or otherwise, and furthermore, does not allege any facts whatsoever demonstrating how that member was wronged by Commonwealth Defendants' conduct.  (ECF No. 28 at ¶¶ 13-22 [six members of Plaintiff AALBA identified, and no members of Plaintiff AAB identified].)  It would be purely speculative to assume some, or all, members of Plaintiff AAB would have standing themselves to advance the present lawsuit.  Additionally, with respect to the second factor, Plaintiff AAB has not demonstrated that the interests it seeks to protect through the present lawsuit "are germane to the organization's purpose".  *President and Fellows of Harvard College*, 600 U.S. at

199.    Notably, the Amended Complaint does not identify the purpose of Plaintiff AAB's organization, let alone sufficiently explain how the present lawsuit would further the interests of Plaintiff AAB's organizational purpose.

Moreover, as to the final criterion, even without having identified any members, it is clear participation of Plaintiff AAB's members in this lawsuit would be required in order to afford the requested relief.  Importantly, Plaintiffs' Amended Complaint requests damages be awarded to the members of Plaintiff AAB.  (ECF No. 28 at 48.)  Plaintiffs contend "as a result of the unconstitutional state and local laws and selective enforcement of such"  Plaintiffs "have been subjected to fines, forced to cease operations, and deprived of their livelihoods", thereby suffering economic damage.  (*Id.* at ¶ 12.)   Significant participation from the members of Plaintiff AAB would be required to determine the damage recoverable in this case, and accordingly, such a damages claim is "fatal" to Plaintiff AAB's request to invoke organizational standing.  *Green Spring Health Services*, 280 F.3d at 284.  Further, Plaintiffs' corresponding request for declaratory and injunctive relief would also require significant individual participation of members, thereby rendering organizational standing inappropriate.  Notably, with respect to Commonwealth Defendants, Plaintiff AAB contends that its members have been subjected to selective enforcement of provisions of the Liquor Code by Commonwealth Defendant PLCB and BLCE.  Specifically, Plaintiff AAB alleges that their members have been targeted on the basis of their Arab ethnicity, and issued baseless citations for violations of the Liquor Code by Commonwealth Defendant BLCE.  (ECF No. 28 at ¶¶ 255-257.)  Additionally, Plaintiff AAB also alleges Commonwealth Respondent PLCB has selectively issued "temporary renewal letters" to members in an effort to strip members of their liquor licenses on the basis of their race.  (*Id.* at ¶¶ 172-174.)   To determine whether Commonwealth Defendant BLCE's

issuance of citations and "temporary renewal letters" to Plaintiff AAB's members constitute a pretext for discrimination, an inquiry as to each citation issued would be required, including (a) a determination of the specific type of liquor license held by each member in order to ascertain what provisions of the Liquor Code are applicable to them, as well as (b) the facts surrounding each citation and "temporary renewal letter" issued to each member to determine whether the citation has been issued for meritorious reasons (*i.e.*, whether selective treatment was based on an unjustified standard). *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). Accordingly, as significant individual participation of Plaintiff AAB's members would be required for Plaintiffs' requested relief—damages and injunctive relief—the Court should conclude Plaintiff AAB is without organizational standing to sustain the present action.

### b.    *Plaintiff AALBA Does Not Have Organizational Standing*

Plaintiff AALBA is, similarly, without organizational standing because Plaintiff AALBA is unable to satisfy the third requisite requirement for organizational standing, as recognized by the Third Circuit. *Green Spring Health Services, Inc.*, 280 F. 3d at 284. For the reasons discussed with respect to Plaintiff AAB, Plaintiff AALBA is unable to demonstrate that the relief requested within the Amended Complaint would not require individual member participation. Plaintiffs AAB and AALBA allege identical causes of action, and request identical monetary and injunctive relief against Commonwealth Defendants. Plaintiffs' Amended Complaint requests damages be awarded to the members of Plaintiff AALBA. (ECF No. 28 at 48.) As explained previously, the Third Circuit has determined that a request for the recovery of damages as to an organization's members would be "fatal" to an organization's request to invoke organizational standing. *Green Spring Health Services*, 280 F.3d at 284. Furthermore, Plaintiff AALBA additionally requests injunctive relief arising from Commonwealth Defendants alleged

discriminatory and selective enforcement of the Liquor Code, including the discriminatory issuance of citations and temporary renewal letters for the purpose of stripping Plaintiff AALBA's members of liquor licenses.  (ECF No. 28 at ¶¶ 172-174, 255-257.)  As explained above, determining whether Plaintiff AALBA is entitled to such relief would require significant member participation in order to adequately ascertain whether such citations and letters were issued with discriminatory intent, as opposed to legitimate violations of the Liquor Code. Accordingly, Plaintiff AALBA is unable to satisfy the third element of organizational standing.

       2.    <u>Plaintiffs are Unable to Succeed upon Any of the Causes of Action Advanced Pursuant to Section 1983 Because Commonwealth Defendants are Immune from Suit Pursuant to the Eleventh Amendment</u>

Plaintiffs cannot, as a matter of law, demonstrate a likelihood of success upon their First, Seventh, Ninth, and Eleventh causes of action, which are each advanced pursuant to Section 1983, because Commonwealth Defendants are immune from suit pursuant to the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The United States Supreme Court has interpreted the Eleventh Amendment to render states immune from suit from private parties in federal court.  *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  Furthermore, it is "well established" that the immunity granted to states by the Eleventh Amendment is extended to "arms" of a state, including state agencies, departments, and officials.  *Karns v. Shanahan*, 879 F.3d 504, 512-13 (3d Cir. 2019) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), and *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475

16

F.3d 524, 545 (3d Cir. 2007)); *see also Hans v. Louisiana*, 134 U.S. 1, 20 (1890); *see also C.H., ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir.2000).

The sovereign immunity conferred by the Eleventh Amendment is subject to three exceptions. *MCI Telecommunication Corp. v. Bell Atlantic Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). The first exception is congressional abrogation, which occurs when Congress unequivocally and expressly abrogates sovereign immunity and authorizes suits against states. *Id.*; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996). The second exception occurs when a state waives immunity by consenting to suit. *Id.* A state's waiver to suit may be invoked by bringing suit in federal court, or by making a " 'clear declaration that [the state] intends to submit itself to [federal] jurisdiction.' " *Id.* at 504 (quoting *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999)). "The third exception to the Eleventh Amendment is the doctrine of *Ex Parte Young*, 2019 U.S. 123 (1908), under which individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing violations of federal law." *Id.* at 506.

Presently, Plaintiffs' First, Seventh, Ninth, and Eleventh causes of action, which are advanced pursuant to Section 1983, are unequivocally barred by the immunity granted to Commonwealth Defendants by the Eleventh Amendment. First and foremost, Plaintiffs have brought suit against Commonwealth Defendants, which include the Commonwealth of Pennsylvania, the Pennsylvania Liquor Control Board (previously abbreviated, "PLCB"), the Pennsylvania State Police Bureau of Liquor Control Enforcement (previously abbreviated, "BLCE"), and the Attorney General of Pennsylvania David W. Sunday ("General Sunday"). The Commonwealth of Pennsylvania, as a state, unquestionably enjoys the immunity granted by the Eleventh Amendment. *Urella v. Pennsylvania State Troopers Ass'n*, 628 F.Supp.2d 600, 605

(E.D. Pa. 2008).   Additionally, the Pennsylvania Liquor Control Board and the Pennsylvania State Police Bureau of Liquor Control Enforcement have both been determined to be "arms" of the Commonwealth of Pennsylvania, and entitled to the sovereign immunity granted by the Eleventh Amendment.   *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022) ("Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania" and entitled to Eleventh Amendment immunity); *Patterson v. Pennsylvania Liquor Control Board*, 915 F.3d 945, 956 (3d Cir. 2019) ("We therefore conclude the PLCB is an arm of the state that is entitled to Eleventh Amendment sovereign immunity.").   Moreover, General Sunday, as Attorney General of the Commonwealth of Pennsylvania, is entitled to the immunity afforded by the Eleventh Amendment because the Attorney General has, similarly, been found to be an "arm" of the Commonwealth of Pennsylvania.   *Doe v. Schorn*, 711 F.Supp.3d 375, 386 (E.D. Pa. 2024). Accordingly, as each of Commonwealth Defendants are either states or "arms" of the state which enjoy Eleventh Amendment immunity, Plaintiffs' First, Seventh, Ninth, and Eleventh causes of action must be dismissed for absence of subject matter jurisdiction unless one of the three exceptions apply.

None of the exceptions to Eleventh Amendment immunity apply in the present case, thereby warranting dismissal of Plaintiffs' First, Seventh, Ninth, and Eleventh causes of action causes of action against Commonwealth Defendants.   Initially, the first exception of congressional abrogation is inapplicable in this case because our Supreme Court has previously determined Congress did not abrogate a state's immunity under the Eleventh Amendment when enacting Section 1983.   *Quern v. Jordan*, 440 U.S. 332, 345 (1979).   Additionally, the second exception of state waiver is not contemplated in this case because the Commonwealth of Pennsylvania has not waived immunity by bringing suit in federal court or by making a clear

declaration that it intends to submit itself to federal jurisdiction. Indeed, the Commonwealth of Pennsylvania, by statute, has explicitly reserved its right to immunity from suit in federal court pursuant to the Eleventh Amendment. *See* 42 Pa. C.S. § 8521(b). Furthermore, the third exception is inapplicable to Commonwealth Defendants Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, and Bureau of Liquor Control Enforcement because these parties are not individual state officers subject to the exception enumerated in *Ex Parte Young*. *MCI Telecommunication Corp.*, 271 F.3d at 506.

Moreover, while Plaintiffs have amended the operative Complaint to add an individual state officer as a defendant—Commonwealth Defendant General Sunday—General Sunday remains entitled to sovereign immunity under the Eleventh Amendment, and Plaintiffs remain unable to advance their Section 1983 causes of action. As noted above, the exception of *Ex Parte Young* allows a plaintiff to avoid Eleventh Amendment immunity and bring suit against "individual state officers . . . for prospective injunctive and declaratory relief to end continuing violations of federal law." *MCI Telecommunication Corp.*, 271 F.3d at 506. In order for the exception of *Ex Parte Young* to be applicable, the individual state officer against whom the lawsuit is brought must be engaged in an "ongoing violation of federal law". *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002). "It is not enough to show that a state official is charged with defending the constitutionality of the state's law; instead, the official must have 'some connection with the enforcement of the act' and have demonstrated a willingness to exercise that duty." *Schorn*, 711 F.Supp.3d at 387 (citing *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) ("*Ex parte Young* does not require that the state official have a special connection to the unconstitutional act or conduct. But it does

require that the state official have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.")).

In the present case, Plaintiffs are unable to demonstrate the exception in *Ex Parte Young* is applicable to deprive Commonwealth Defendant General Sunday of his immunity under the Eleventh Amendment because General Sunday was not engaged in an "ongoing violation of federal law". *Verizon Md., Inc*, 535 U.S. at 645. Plaintiffs' requests for injunctive relief exclusively center upon the provisions of the Liquor Code concerning the regulation and renewal of liquor licenses in the Commonwealth of Pennsylvania. Specifically, Plaintiffs maintain certain provisions of the Liquor Code are vague in violation of the due process clause of the Fourteenth Amendment, are overbroad in violation of the First Amendment, and impede upon Plaintiffs' right to petition under the First Amendment. Plaintiffs additionally maintain that the provisions of the Liquor Code are being selectively enforced against Plaintiffs, in an effort to revoke the liquor licenses issued to Asian- and Arab-American business owners. Dispositive of the applicability of *Ex Parte Young*, Commonwealth Defendant General Sunday is not statutorily responsible for the enforcement of the Liquor Code. Such responsibility of enforcement is afforded by statute to Commonwealth Defendant BLCE. *Pa. State Police v. Hospitality Invs. of Phila., Inc.*, 689 A.2d 213, 214 (Pa. 1997) (Bureau of Liquor Control Enforcement "is responsible for enforcing the Liquor Code."). The powers and responsibilities of the Attorney General are statutorily enumeration within the Commonwealth Attorneys Act. 71 P.S. § 732-205 (enumerating eight instances in which the Attorney General has "the power to prosecute" individuals). While the Commonwealth Attorneys Act does provide Commonwealth Defendant General Sunday with the authority to enforce the laws of the Commonwealth if requested by a district attorney, presiding judge, or Commonwealth agency, such general enforcement authority

has been held to be "too attenuated" to trigger the exception of *Ex Parte Young*.  Accordingly, as Commonwealth Defendant General Sunday is not engaged in the "ongoing violation of federal law", the exception of *Ex Parte Young* is inapplicable.

       3.    <u>Plaintiffs are Unable to Succeed upon Any of the Causes of Action, Advanced Pursuant to Section 1983 Because Commonwealth Defendants are Not "Persons" Subject to Liability under Section 1983</u>

Even where the Court concludes Commonwealth Defendants are not entitled to Eleventh Amendment immunity—which Commonwealth Defendants would dispute is the case—Plaintiffs' First, Seventh, Ninth, and Eleventh causes of action advanced remain subject to dismissal because Plaintiffs have failed to state a viable cause of action under the statute against Commonwealth Defendants.  Plaintiffs cannot establish a likelihood of success with respect to the causes of action advanced under Section 1983 because Commonwealth Defendants are not "persons" subject to suit under Section 1983.

Section 1983 allows an individual to bring an action against a "person" who, acting under the color of state law, has deprived the individual of their constitutional rights.  42 U.S.C. § 1983.  In order to maintain an action advanced under Section 1983, the plaintiff is required to demonstrate that the defendant sued is a "person" as defined by Section 1983.  Whether a defendant is a "person" under Section 1983 involves an inquiry which is similar, but distinct, from that employed within an Eleventh Amendment immunity analysis.  *Kaul v. Christie*, 372 F.Supp.2d 206, 244 (D.N.J. 2019).  The United States Supreme Court, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (*Will*), determined that neither a state nor state agencies nor state official acting in their official capacities are "persons" under Section 1983."  *Will*, 491 U.S. at 70-71 (holding, neither "states [n]or governmental entities that are considered 'arms of the State'" nor "officials acting in [their] official capacity" are "persons" under Section 1983).

Following the Supreme Court's determination in *Will*, courts have routinely dismissed Section 1983 lawsuits advanced against states, state agencies, and state officials. *Machon v. Pennsylvania Dept. of Public Welfare*, 847 F.Supp.2d 734, 744-45 (E.D. Pa. 2012); *Sutton v. City of Philadelphia*, 21 F.Supp.3d 474, 485 (E.D. Pa. 2014); *Bey v. Pennsylvania Dept. of Corrections*, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000).

Plaintiffs' First, Seventh, Ninth, and Eleventh causes of action under Section 1983 are each advanced against Commonwealth Defendants, which include the Commonwealth of Pennsylvania, the Pennsylvania Liquor Control Board, the Pennsylvania State Police Bureau of Liquor Control Enforcement, and General Sunday.  Commonwealth Defendants are made up of either a state (Commonwealth of Pennsylvania) or state agencies or officials which qualify as "arms of the State" (Pennsylvania Liquor Control Board, the Pennsylvania State Police Bureau of Liquor Control Enforcement, and General Sunday).  *Frein*, 47 F.4th at 257; *Patterson*, 915 F.3d at 956.  Accordingly, in light of the Supreme Court's holding in *Will*, Commonwealth Defendants are not "persons" subject to suit under Section 1983.  *Will*, 491 U.S. at 70-71.

4.     Plaintiffs are Unable to Maintain their First and Second Causes of Action against Commonwealth Defendants

Plaintiffs are unable to establish a likelihood of success upon their First and Second causes of action against Commonwealth Defendants.  Plaintiffs' First cause of action maintains section 4-470(a.1)(4) of the Liquor Code is unconstitutionally vague and overbroad in violation of the due process clause of the Fourteenth Amendment.  Plaintiffs' Second cause of action advances identical allegations, contending such vagueness and overbreadth violate Article I, Section 1 of the Constitution of the Commonwealth of Pennsylvania.  Plaintiffs' First and Second causes of action are unmeritorious as Plaintiffs have failed to sufficiently demonstrate that relevant provision of the Liquor Code is unconstitutionally vague or overbroad.

> **a.** **_Section 4-470 of the Liquor Code is Not Vague in Violation of_**
> **_Due Process Protections Afforded by Fourteenth Amendment_**
> **_and Article I, Section 1 of Pennsylvania Constitution_**

The Due Process Clause of the Fourteenth Amendment provides no state "shall ... deprive any person of life, liberty, or property, without due process of law". U.S. const. amend. XIV, § 1. "Under federal constitutional law, '[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.' " *Dailey v. City of Philadelphia*, 417 F.Supp.3d 597, 616 (E.D. Pa. 2019) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "The 'void for vagueness' doctrine addresses two due process concerns: 'first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.' " *Id.* (quoting *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). "Although rooted in the context of criminal statutes, the void for vagueness doctrine now extends to the civil context." *Id.*

"The measure of 'vagueness' is based on the understanding of people of 'common intelligence.' " *Dailey*, 417 F.Supp.3d at 616. "It is well-settled in American jurisprudence, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as its meaning and differ as to its application, violates the first essential of due process of law." *Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir. 1980). "The void for vagueness doctrine is 'based on the idea of fairness. Its purpose is only to give fair warning of prohibited conduct.' " *Dailey*, 417 F.Supp.3d at 616. " '[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.' " *Id.* (quoting *U.S. v. Mazurie*, 419 U.S. 544, 550 (1975)).

Void for vagueness challenges as of two types—facial or as applied. "The difference between the two is significant." *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014). "A party asserting a facial challenge to a statute 'must establish that no set of circumstances exists under which the Act would be valid.' " *Dailey*, 417 F.Supp.3d at 617 (quoting *Heffner*, 745 F.3d at 65)). "This is a particularly demanding standard and is the 'most difficult challenge to mount successfully.' " *Heffner*, 745 F.3d at 65. "The Supreme Court 'disfavors' facial challenges because such claims 'often rest on speculation', 'run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied', and 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.' " *Dailey*, 417 F.Supp.3d at 617 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008)).

In instances where a vagueness challenge is facial, "[a] law that might appear vague at first glance may withstand a constitutional challenge if its meaning has been narrowed by judicial interpretation, custom, or common and approved usage." *Lopez v. City of Oil City*, No. 07–206, 2008 WL 906521 at *6 (W.D. Pa. Mar. 31, 2008); *see e.g.*, *Parker v. Levy*, 417 U.S. 733 (1974) (holding, a statute's language may be informed by judicial interpretation and "by less formalized custom and usage"); *Purple Orchid, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 721 A.2d 84, 86 (Pa. Cmwlth. 1998) ("Although at first blush a law may appear vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage.").

Presently, the allegations of Plaintiffs' Amended Complaint wholly fail to demonstrate that section 4-470 of the Liquor Code is vague and violates the due process protections afforded by the Fourteenth Amendment and Article I, Section 1 of the Pennsylvania Constitution. Section 4-470 of the Liquor Code enumerates four factors Commonwealth Defendant PLCB may consider when determining whether to renew a liquor license. 47 P.S. § 4-470(a.1). The fourth factor Commonwealth Defendant PLCB may consider is "activity" that occurred on the licensed premises . . . while the premises was open for operation and if there was a relationship between the activity and the manner in which the licensed premises was operated. *Id.* § 4-470(a.1)(4). Plaintiffs opine that because the Liquor Code does not include a definition for the phrase "activity", section 4-470 of the Liquor Code is vague, and Plaintiffs cannot ascertain what form of "activity" may be considered by Commonwealth Defendant PLCB when determining to renew a liquor license. (ECF No. 28 at ¶¶ 157-158.) However, Plaintiffs' representations concerning the vagueness of section 4-470 are contradicted by the expressed averments within Plaintiffs' Amended Complaint. Namely, Plaintiffs appear to concede within the Amended Complaint that the "activity" referenced within section 4-470 is *unlawful* or *criminal* activity which occurs on the licensed premises. (ECF No. 28 at ¶¶ 133-134, 160, 298.) In connection with Plaintiffs' First Amendment causes of action, Plaintiffs contend that, because section 4-470 allows Commonwealth Respondent PLCB to consider the "activity" which occurs on the licensed premises, Plaintiffs are hesitant to "report a crime" that occurs on or around the licensed premises—in other words, Plaintiffs concede that the "activity" which may be considered is "crim[inal]" or "police" activity. (*Id.* at ¶ 160-161 ["Several Plaintiffs have expressed reluctance to contact law enforcement out of fear that doing so will generate police reports of 'activity', which may later be cited as ground for denying their liquor licenses." ]).

Imperatively, the term "activity" as employed in section 4-470 of the Liquor Code is not vague as Pennsylvania courts have repeatedly determined that the term "activity" refers to criminal activity—just as Plaintiffs have conceded within the Amended Complaint. *Gold Room, Inc. v. Pa. Liquor Control Bd.*, 245 A.3d 1143, 1153-54 (Pa. Cmwlth. 2020) (determining "activity" as employed in section 4-470(a.1)(4) equates to "criminal activity"); *St. Nicholas Greek Catholic Russian Aid Society v. Pa. Liquor Control Bd.*, 41 A.3d 953 (Pa. Cmwlth 2012) (discussing the "activity" referenced in section 4-470(a.1)(4) as "*illegal activity*") (emphasis added); *Paey Associates v. Pa. Liquor Control Bd.*, 78 A.3d 1187, 1193 (Pa. Cmwlth. 2013) (explaining, while citing to and mirroring the language of section 4-470(a.1)(4), that "Pennsylvania law is clear that a licensee is strictly liable for violations of the Liquor Code, and may also be held accountable for non-Liquor Code violations, if it can be established that there was a pattern of *illegal activity* on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity."). As noted previously, "[a] law that might appear vague at first glance may withstand a constitutional challenge if its meaning has been narrowed by judicial interpretation, custom, or common and approved usage." *Lopez*, No. 07–206, 2008 WL 906521 at *6. Accordingly, as Pennsylvania courts have consistently and repeatedly interpreted the phrase "activity" to mean "criminal" or "illegal" activity, and there is absent a case that interprets the phrase differently, Plaintiffs' First and Second causes of action on grounds of vagueness are wholly without merit.

### b.    Plaintiffs' Overbreadth Challenge Pursuant to the Due Process Protections of the Fourteenth Amendment and Article I, Section 1 of Pennsylvania Constitution are Misplaced

Plaintiffs' First and Second causes of action, additionally, contend that section 4-470(a.1)(4) of the Liquor Code is overbroad in violation of the due process clause of the

Fourteenth Amendment, as well as Article I, Section 1 of the Pennsylvania Constitution. However, Plaintiffs' arguments are entirely misplaced as "the overbreadth doctrine has only been applied in First Amendment cases", as opposed to cases concerning the due process clause. *Stoltzfoos v. Sec'y of Pa. Dep't of Corr.*, 733 F. App'x 34, 39 (3d Cir. 2018) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."). Accordingly, Plaintiffs' overbreadth allegations advanced under the due process clause of the Fourteenth Amendment and Article I, Section 1 of the Pennsylvania Constitution are misplaced.

5.    <u>Plaintiffs are Unable to Maintain their Third and Fourth Causes of Action against Commonwealth Defendants</u>

Plaintiffs are unable to establish a likelihood of success upon their Third and Fourth causes of action against Commonwealth Defendants.  Plaintiffs' Third and Fourth causes of action contends section 4-470 of the Liquor Code violates the right to petition afforded by the First Amendment of the United States Constitution and Article I, Section 20 of the Pennsylvania Constitution.  Plaintiffs' Third and Fourth causes of action are unmeritorious because, as a matter of law, section 4-470 of the Liquor Code does not violate the right to petition afforded by the aforementioned constitutional provisions.

The First Amendment of the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.  "These two guarantees are known, respectively, as the Speech Clause and the Petition Clause."  *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017).  "The right to petition the government is 'one of the most precious of the liberties safeguarded by the Bill of Rights.' "  *Id.* (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002)).  The precedents of the Supreme Court "confirm that the Petition

27

Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). However, the right to petition afforded by the First Amendment is not "absolute" and is "not[un]restrained". *Id.* at 390. Accordingly, when assessing a right to petition claim under the First Amendment the evaluating court must determine "whether the government may 'nevertheless burden' the right to petition, given countervailing government interests." *Mirabella*, 853 F.3d at 654.

"To balance such competing interests," the United States Supreme Court has confirmed that precedents concerning the Speech Clause, "rather than any freestanding Petition Clause doctrine", should be applied determine which level of scrutiny will apply to the law challenged under the Petition Clause. *Mirabella*, 853 F.3d at 654 (citing to *Guarnieri*, 564 U.S. at 398). The level of scrutiny applied to a law challenged under the Petition Clause is determined on whether the law is a content-neutral or a content-based restriction on speech. *Id.* A law or statute will be content-based where the law "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). A court may appropriately assess whether a law content-based by ascertaining whether the law "draws a distinction based on the message a speaker conveys." *Id.* Content-based restrictions on speech are "presumptively unconstitutional" and may be justified so long as the law passes strict scrutiny, which requires that the government prove that the law is narrowly tailored to serve a compelling state interest. *Id.* In contrast, a law is content-neutral where it does not regulate speech based upon the topic discussed or the idea or message expressed. A content-neutral law is "subject to an intermediate level of scrutiny", and will be upheld where (a) the law furthers an important or substantial government interest, (b) if the governmental interest

is unrelated to the suppression of free expression, and (c) if the incidental restriction on alleged First Amendment freedoms is no great than is essential to the furtherance of that interest. *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994) (citing *United States v. O'Brien*, 391 U.S. 367 (1968)).

By way of Petitioner's Third and Fourth causes of action, Plaintiffs contend that section 4-470 of the Liquor Code impedes upon their right to petition under the First Amendment and Article I, Section 20 of the Pennsylvania Constitution. Plaintiffs allege that because, under section 4-470(a.1)(4) of the Liquor Code, Commonwealth Defendants PLCB may consider unlawful "activity" on or nearby the licensed premises when determining whether to renew a liquor license, Plaintiffs are discouraged from reporting crimes to law enforcement because they fear such reporting may serve as a basis not to renew their liquor licenses. (ECF No. ¶¶ 134, 160.) Petitioner's appear to contend, because section 4-470(a.1)(4) has discouraged Plaintiffs from reporting criminal activity to the police, this provision of the Liquor Code is subject to strict scrutiny. *See* ECF No. 29 at 43 (maintain that section 4-470(a.1)(4) is subject to "strict scrutiny"). However, Petitioner's reasoning is wholly misplaced.

Commonwealth Defendants urge this Court to recognize that the provision of the Liquor Code challenged is neither a content-based nor a content-neutral restriction on speech, and instead, is an "exercise of Pennsylvania's 'broad power to establish standards for licensing" in the Commonwealth, as determined by the Third Circuit with respect to a separate licensing provision. *National Ass'n for the Advancement of Multijurisdictional Practice v. Castille*, 799 F.3d 216, 221 (3d Cir. 2015). As can be ascertained from the plain language of section 4-470(a.1)(4), this provision of the Liquor  Code does not regulate speech, whatsoever, and instead, merely enumerates four categories of conduct Commonwealth Defendant PLCB may

consider when determining whether to renew a liquor license. 47 P.S. § 4-470(a.1). The fourth category of conduct, which is the focus of Plaintiffs' Amended Complaint, does not contemplate speech, but informs Commonwealth Defendant PLCB that it may consider whether criminal activity has occurred on or surrounding the licensed premises. *Id.* Section 4-470(a.1)(4) of the Liquor Code does not constitute a content-based restriction on speech because the provision does not discriminate based on the subject matter or viewpoint of any licensee's speech. *Castille*, 799 F.3d at 220 ("First, Rule 204 does not discriminate on the basis of the subject matter or viewpoint of any bar applicant's speech, the area of law an applicant would practice, or the clients an applicant would represent."). Additionally, section 4-470(a.1)(4) does not regulate speech in a content-neutral manner. Section 4-470(a.1)(4) does not regulate when, where, or how a licensee may speak. *Castille*, 799 F.3d at 221 ("Neither does Rule 204 regulate when, where, or how attorneys speak"). The statutory provision merely lists criteria that Commonwealth Defendant PLCB may consider when renewing a liquor license. 47 P.S. § 4-470(a.1). Accordingly, "because [section 4-470(a.1)] regulates only the requirement for *obtaining* [and maintaining] a license" and "does not 'restrict[] what a [licensee] can or cannot say,' [section 4-470(a.1) "does not 'create[] a collision between the power of government to license and . . . the rights of freedom of speech . . . guaranteed by the First Amendment." *Castille*, 799 F.3d at 221 (emphasis in original). Based on the foregoing, section 4-470(a.1) passes constitutional muster and is valid under the First Amendment.

Moreover, even where this Court determines section 4-470(a.1) does constitute a content-neutral restriction on speech, the statutory provision would remain valid under the "intermediate" scrutiny standard which applies to content-neutral restrictions. *Turner*, 512 U.S. at 662. Initially, section 4-470(a.1) of the Liquor Code unquestionably furthers an important and

substantial government interest, namely ensuring businesses which have been granted the privilege of holding a liquor license are not hubs for criminal activity.  Furthermore, section 4-470(a.1) is clearly unrelated to the suppression of free expression because, by the statute's plain terms, it merely provides criteria which Commonwealth Defendant PLCB may consider when renewing a liquor license.  Lastly, any incidental restriction on Plaintiffs' speech which is caused by section 4-470(a.1) is outweighed by the Commonwealth's interest to ensure that businesses which have been afforded a liquor license do not abuse such a privilege and endanger the public. Accordingly, Plaintiffs have failed to state a viable violation of the right to petition under the first Amendment and Article I, Section 20 of the Pennsylvania Constitution.

6.    Plaintiffs are Unable to Maintain their Fifth and Sixth Causes of Action against Commonwealth Defendants

Plaintiffs are unable to establish a likelihood of success upon their Fifth and Sixth causes of action against Commonwealth Defendants.  Plaintiffs Fifth and Sixth causes of action contend that section 4-470(a.1) of the Liquor Code is overbroad in violation of the First Amendment of the United States Constitution and Article I, Section 20 of the Pennsylvania Constitution. Succinctly, Plaintiffs' Fifth and Sixth causes of action are meritless because Plaintiffs have failed to demonstrate that the statutory provision challenged is substantially overbroad.

The overbreadth doctrine under the First Amendment "strike[s] a balance between competing social costs."  *United States v. Williams*, 553 U.S. 285, 293 (2008).  "Specifically, the doctrine seeks to balance the 'harmful effects' of 'invalidating a law that in some of its applications is perfectly constitutional' against the possibility that 'the threat of enforcement of an overbroad law [will] dete[r] people from engaging in constitutionally protected speech.' " *U.S. v. Stevens*, 599 U.S. 460, 485 (2010) (quoting *Williams*, 553. U.S. at 293).  "In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's

overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553. U.S. at 293.

"In determining whether a statute's overbreadth is substantial, we consider a statute's application to real-world conduct, not fanciful hypotheticals." *Stevens*, 599 U.S. at 485. "Accordingly, we have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Id.* (quoting Virginia v. Hicks, 539 U.S. 113, 122 (2003)). "Similarly, 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.' " *Id.* (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984)). "[W]hen addressing whether a law suffers from substantial overbreadth, [the court] must weigh 'the number of valid applications of the statute,' 'the historic or likely frequency of conveyable impermissible applications,' 'the nature of the government's interest underlying the regulation,' and 'the nature of the activity or conduct sought to be regulated.' " *Free Speech Coalition, Inc. v. Attorney General United States*, 974 F.3d 408, 427 (3d Cir. 2020).

Presently, Plaintiffs are unable to demonstrate a likelihood of success upon their Fifth and Sixth causes of action because Plaintiffs have failed to demonstrate that the statutory provision challenged is substantially overbroad. Section 4-470(a.1) is not substantially overbroad. Initially, as noted above, the purpose of the provision is to provide Commonwealth Defendant PLCB with criteria with which it may evaluate whether or not to renew a liquor license. The provision, itself, informs Commonwealth Defendant that it may consider whether the licensed premises has been the repeated subject of criminal activity. Ensuring establishments that have been awarded a liquor license do not engage in criminal activity is an interest of the utmost

important to the Commonwealth.  Furthermore, there is a complete absence of a substantial likelihood that the application of section 4-470(a.1) would result in a high frequency of impermissible regulations of speech.  Importantly, Plaintiffs have only identified one possible impermissible application, that is, Plaintiffs choosing not to report crimes to law enforcement because they fear such reporting may be considered by Commonwealth Defendant PLCB during the renewal process.  Plaintiffs have failed to articulate any other impermissible applications. Considering the foregoing, a balancing of the factors enumerated in the preceding paragraph confirm that section 4-470(a.1) is not substantially overbroad so as to violate the First Amendment of the United States Constitution or Article I, Section 20 of the Pennsylvania Constitution.

       7.      <u>Plaintiffs are Unable to Maintain their Seventh and Eighth Causes of Action against Commonwealth Defendants</u>

Plaintiffs are unable to demonstrate a likelihood of success upon their Seventh and Eighth causes of action against Commonwealth Defendants.  Plaintiffs' Seventh and Eighth causes of action maintain that Commonwealth Defendants' issuance of "temporary renewal letters" and requiring Plaintiffs to undergo a hearing to determine whether renewal of their respective liquor licenses will be awarded, constitute a violation of Plaintiffs' procedural due process rights afforded by the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution.  (ECF No. 29 at ¶¶ 252-253.)  Plaintiffs' Seventh and Eighth causes of action are meritless because Plaintiffs have failed to allege facts demonstrating a violation of their procedural due process rights.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  In order to state a cause of action for the violation of procedural due process under

the Fourteenth Amendment in the context of Section 1983, a plaintiff must demonstrate the following: (a) defendants acted under color of state law in depriving plaintiff a protected property interest; and (b) the state and local procedures for challenging the deprivation do not satisfy the requirements for procedural due process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

Plaintiffs have failed to demonstrate a likelihood of success upon thier Seventh and Eighth causes of action because Plaintiffs have failed to allege facts demonstrating Commonwealth Defendants have violated the procedural due process afforded by the Fourteenth Amendment.  Plaintiffs maintain that, by issuing the aforementioned "temporary renewal letters" and requiring Plaintiffs to undergo a hearing to determine whether renewal of their respective liquor licenses will be awarded, Commonwealth Defendants have "threaten[ed] to permanently close [Plaintiffs'] established businesses arbitrarily and without adequate due process".  (ECF No. 29 at ¶¶ 252-253.)  However, as a matter of law, Plaintiffs are unable to maintain a claim for procedural due process based upon the threatened revocation of their liquor licenses because a liquor license is not considered property in the Commonwealth of Pennsylvania.  *Golden Eagle Tavern, Inc. v. City of Lancaster*, No. 13–1426, 2014 WL 881139 at *2-3 (E.D. Pa. Mar. 6, 2014) (Schmell, J.).  Rather, a liquor license is a "privilege" between Commonwealth Defendant PLCB and the respective licensee.  47 P.S. § 4–468(d); *see 770 Ameribeer, Inc. v. Pennsylvania Liquor Control Board*, 218 A.3d 998, 1005 (Pa. Cmwlth. 2024) ("A liquor license is a privilege granted by the state . . . .").  Considering the foregoing, it has been determined by this Court that a licensee does not have a protected property interest in a liquor licensed obtained from Commonwealth Defendant PLCB.  *Golden Eagle Tavern, Inc.*, 2014 WL 881139 at *2-3.  Accordingly, Plaintiffs are unable to demonstrate Commonwealth Defendants' alleged conduct

violated the procedural due process afforded by the Fourteenth Amendment because Plaintiffs never had a protected property interest in the liquor licenses issued by Commonwealth Defendants PLCB. *Id.*

Furthermore, even where a liquor license was considered "property" in the Commonwealth, Plaintiffs have failed to allege facts establishing there has been a deprivation of, or revocation of, Plaintiffs' liquor licenses. Instead, all Plaintiffs have alleged is that a hearing will be held before a hearing examiner to determine whether Plaintiffs' licenses will be renewed. (ECF No. 28 at ¶¶ 175, 202, Exhibit B, D.) Plaintiffs' licenses have not been revoked, and Plaintiffs are permitted to operate during the administrative hearing process. (*Id.*) In summary, Plaintiffs have wholly failed to allege facts demonstrating Commonwealth Defendants have violated the protections afforded by the procedural due process clause of the Fourteenth Amendment because Plaintiffs have failed to allege any deprivation of a protected property interest as a result of Commonwealth Defendants' conduct or actions.

8. Plaintiffs are Unable to Maintain their Ninth and Tenth Causes of Action against Commonwealth Defendants

Plaintiffs are unable to demonstrate a likelihood of success upon their Ninth and Tenth causes of action against Commonwealth Defendants. Plaintiffs' Ninth and Tenth causes of action maintain Commonwealth Defendants have violated the equal protection clause of Fourteenth Amendment of the United States Constitution, as well as Article I, Section 26 and 29 of the Pennsylvania Constitution, by selectively enforcing the provisions of the Liquor Code against Plaintiffs. (ECF No. 28 at ¶¶ 321-336.) . Plaintiffs' Ninth and Tenth causes of action are meritless because Plaintiffs have failed to allege facts sufficiently establishing Commonwealth Defendants violated the equal protection clause of the Fourteenth Amendment, as well as Article I, Section 26 and 29 of the Pennsylvania Constitution.

The United States Supreme Court has determined the equal protection clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996); *see also PG Publ'g Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). In order to establish a selective enforcement claim under the Fourteenth Amendment, a plaintiff must demonstrate the following elements: (a) "he was treated differently from other similarly situated individuals," and (b) "the selective treatment 'was based on an unjustifiable standard such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of some fundamental right.' " *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). "A plaintiff must do more than merely allege facts that illustrate unequal application of a law or practice; he or she must also allege the existence of an 'intentional or discriminatory purpose' motivating the unequal application." *Gillespie v. Pennsylvania State Police*, 574 F.Supp.3d 272, 287 (E.D. Pa. 2021) (citing *PG Publ'g Co.*, 705 F.3d at 115).

"A person is 'similarly situated' when he or she is 'alike in all relevant aspects' to another person or entity." *Gillespie*, 574 F.Supp.3d at 287 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). In order to satisfy the first element of a selective enforcement cause of action, "a plaintiff must do more than merely allege he or she was 'similarly situated' to an individual or group treated differently. *Id.* (citing *PG Publ'g Co.*, 705 F.3d at 115). "A plaintiff must allege specific facts, circumstances, or occurrences showing he or she was similarly situated to another specified person or entity *and* illustrate the alleged differential treatment that occurred." *Id.* (emphasis added); *see Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008). Where a plaintiff fails to identify an individual or entity with whom he was similarly situated and treated differently, or where a plaintiff fails to allege with sufficient specificity the

specific instances where he was treated differently from other similarly situated, courts have determined plaintiff has failed to state a claim for selective enforcement under the Fourteenth Amendment. *Id.* at 287 (dismissing selective enforcement claim because "no comparators are identified" in the complaint); *Prof'l Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp. 2d 575, 595 (E.D. Pa. 2010) (internal citation omitted) (holding that "plaintiff must name someone who was similarly situated but treated differently."); *Brobson v. Borough of New Hope*, No. 00–0003, 2000 WL 1738669 at *5 (E.D. Pa. Nov. 22, 2000) (dismissing selective enforcement claim because "plaintiff in the instant case failed to name anyone who was similarly situated but treated differently"); *Richardson v. Didok*, No. 19-5072, 2020 WL 5602526 at *3 (E.D. Pa. Sept. 17, 2020) (dismissing selective enforcement claim because plaintiff "baldly alleges" he was similarly situated and failed to identify "any specific individuals or groups of people who might serve as comparators").

In the present case, Plaintiffs have not demonstrated a likelihood of success upon their Ninth and Tenth causes of action because Plaintiffs have failed to allege sufficient facts establishing a claim for "selective enforcement" under the Fourteenth Amendment. Plaintiffs represent within their operative Complaint that Commonwealth Defendants have targeted their businesses in an effort to revoke their liquor licenses and force the closure of their businesses. (ECF No. 1 at ¶ 147.) Plaintiffs allege that, in an effort to target Plaintiffs' businesses, Commonwealth Defendant PLCB has issued "temporary renewal letters" in response to Plaintiffs' license renewal applications, informing Plaintiffs a hearing will be required to determine whether their licenses will be renewed. (*Id.* at ¶¶ 147-165, 176-178.) Plaintiffs' allegations are insufficient to satisfy the first element of a claim for "selective enforcement" because Plaintiffs have failed to specifically identify any other licensees who are similarly

situated to Plaintiffs, and did not receive a "temporary renewal letter" in response to their license renewal application.   Plaintiffs' Complaint only includes the bald, general assertion that "other businesses, owned by non-minorities or controlled by larger corporate interests, are treated differently" than Plaintiffs.  (ECF No. 1 at ¶¶ 234-236.)  These, albeit insufficient, allegations, additionally, do not include any specific facts, circumstances, or occurrences demonstrating Plaintiffs are similarly situated to these "other businesses", or how these "other businesses" were treated differently than Plaintiffs.  (*Id.*)  Plaintiffs' failure to specifically identify comparators who are similarly situated and treated differently renders Plaintiffs' Fifth cause of action deficient, and subject to dismissal.  *Gillespie*, 574 F.Supp.3d at 287; *Wolff*, 752 F. Supp. 2d at 595; *Brobson*, 2000 WL 1738669 at *5; *Richardson*, 2020 WL 5602526 at *3.

9.    <u>Plaintiffs are Unable to Maintain their Eleventh Cause of Action against<br>Commonwealth Defendants</u>

Plaintiffs are unable to demonstrate a likelihood of success upon their Eleventh cause of action against Commonwealth Defendants.  Plaintiffs' Eleventh cause of action maintains Commonwealth Defendants have improperly conspired with City Defendant to deprive Plaintiffs of their rights under the Fourteenth Amendment.  (ECF No. 28 at ¶¶ 337-341.)  Plaintiffs' Eleventh cause of action is meritless because Plaintiffs have failed to allege facts demonstrating Commonwealth Defendants entered into an agreement with City Defendant to deprive Plaintiffs of their constitutional rights under the Fourteenth Amendment.

In order to state a cause of action for civil conspiracy under Section 1983, a plaintiff must allege facts establishing the following: (a) "the existence of a conspiracy involving state action", and (b) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy".  *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009).  Speaking to the first element of the cause of action, to prove the existence of a conspiracy "plaintiff must plead that

38

there was 'an agreement, understanding, or meeting of the minds to violate the plaintiff's rights.'" *Miller v. Goggin*, 672 F. Supp. 3d 14, 53 (E.D. Pa. 2023) (quoting *Gale*, 608 F.Supp.2d at 635); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) ("A conspiracy is not parallel conduct by different parties; it must embody, at its heart, 'an agreement between the defendants and state officials[.]").  A plaintiff "must plead more than legal conclusions of a conspiracy or agreement", and must "assert facts from which a conspiratorial agreement can be inferred".  *Mikhail*, 991 F. Supp. 3d at 645.  Furthermore, speaking to the second element of the cause of action, a plaintiff must sufficiently allege facts demonstrating the "predicate federal violation" to "anchor" the cause of action for conspiracy. *Miller*, 672 F. Supp. 3d at 53.

Plaintiffs have failed to establish a likelihood of success upon their Eleventh cause of action because Plaintiff has failed to allege facts demonstrating the two requisite elements of a claim for civil conspiracy under Section 1983.  With respect to the first element, Plaintiffs' operative Complaint fails to allege substantive facts establishing Commonwealth Defendants and City Defendant entered into an agreement to deprive Plaintiffs of their constitutional rights. Plaintiffs' Complaint is limited to legal conclusions, and fails to allege any facts from which the Court may reasonably infer an expressed agreement was made between Commonwealth Defendants and City Defendant.  (ECF No. 28 at ¶ 339.)  To be sure, Plaintiffs' Complaint includes only **one** allegation concerning the alleged "agreement" entered into between Commonwealth Defendants and City Defendant, and this allegation is wholly conclusory.  (*Id.* ("The conspiracy, as it applied to Plaintiffs, was an expressed or implied agreement between the Defendants and others, whose exact identity is unknown to Plaintiffs, to deprive Plaintiffs of their constitutional rights by selective enforcement of local and state laws."))    Furthermore,

Commonwealth Defendants have demonstrated in the preceding sections of this Memorandum that Plaintiffs have failed to allege facts establishing a "predicate federal violation" which "anchor[s]" Plaintiffs' claim for civil conspiracy.    *Miller*, 672 F. Supp. 3d at 53. Commonwealth Defendants cannot be said to have conspired to deprive Plaintiffs of their Fourteenth Amendment rights because, as stated above, Commonwealth Defendants are immune from suit and, additionally, Plaintiffs have failed to state a claim for such constitutional violations.  Accordingly, Plaintiffs have failed to demonstrate a likelihood of success upon their cause of action for civil conspiracy under Section 1983.

10.    <u>Plaintiffs are Unable to Maintain their Twelfth Cause of Action against Commonwealth Defendants</u>

Plaintiffs are unable to demonstrate a likelihood of success upon their Twelfth cause of action.  Plaintiffs' Twelfth cause of action is advanced under the federal Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq.*, and requests that this Court issue a declaratory judgment in order to award relief for the causes of action alleged in the Amended Complaint.  (ECF No. 28 at ¶¶ 346-348.)  Plaintiffs' Twelfth cause of action is without merit because the basis for such a claim—the whole of the causes of action alleged in the Amended Complaint—are without merit, as described in the present Opposition.  Accordingly, without a basis to grant declaratory judgment, Plaintiffs have failed to demonstrate a likelihood of success upon their Twelfth cause of action.

**B.**    **<u>Plaintiffs Fail to Demonstrate a Likelihood of Suffering Irreparable Harm Absent a Preliminary Injunction</u>**

In addition to Plaintiffs' inability to demonstrate the first "gateway factor" necessary for an award of a preliminary injunction, Plaintiffs similarly are unable to establish the second "gateway factor" necessary to award the requested relief.

"[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy *following a trial*." *Rosario v. Wetzel,* No. 2:23-cv-966, 2024 WL 1677489, *3 (W.D. Pa. April 18, 2024) (emphasis added) (citing *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 408 (3d Cir. 2021)). Plaintiff must "produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied," *Id.* (citing *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987)), and the threatened harm "must not be speculative." *Id.* (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487–88 & n.13 (3d Cir. 2000)). Furthermore, "[m]ore than a risk of irreparable harm must be demonstrated." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with tour characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). Importantly, where a plaintiff's request for injunctive relief requests "largely the same . . . relief sought in his initial complaint", the granting of injunctive relief would be inappropriate and would, "in effect, fail to 'preserve the relative positions of the parties' until the merits of the case are considered and would instead amount to a 'final judgment on the merits.' " *Rosario*, No. 2:23-cv-966, 2024 WL 1677489, *3 (quoting *Martinez v. Rivello*, No. 22-2518, 2023 WL 3376545, ay *2 (3d Cir. May 11, 2023)).

Plaintiffs have failed to demonstrate they will suffer irreparable harm. In the pending Amended Motion for Preliminary Injunction, Plaintiffs advance a single argument with respect to the irreparable harm they will suffer in the event Commonwealth Defendants are permitted to continue their "selective enforcement". (ECF No. 29 at 59-60.) Plaintiffs contend that, in the event the requested preliminary injunction is not granted, Commonwealth Defendants will

continue to issue "temporary renewal letters" to Plaintiffs, and Plaintiffs will "*risk* permanent closure as they cannot operate without a liquor license." (*Id.* at 45 [emphasis added].) Plaintiffs' argument is unavailing. Plaintiffs appear to equate issuance with a "temporary renewal letter" with automatic revocation of a liquor license. This is absolutely not the case, and such an argument is clearly refuted from a plain reading of the "temporary renewal letter[s]" issued to two of the Plaintiffs. (ECF No. 29 at Exhibits B, D.) The "temporary renewal letters" provide, following a preliminary review of two of Plaintiffs' liquor license renewal applications, a hearing will be held in order to determine whether or not Plaintiffs' liquor license will be renewed. (*Id.*) The "temporary renewal letters" additionally provide that the two Plaintiffs are permitted to operate during the administrative hearing process. (*Id.*) Only after the abovementioned hearing, which takes place before a neutral administrative law judge, and where licensees such as the two Plaintiffs may present testimony and evidence, may a licensee's liquor license be subject to non-renewal. Plaintiffs' proffered evidence merely demonstrates a "*risk*" of potential non-renewal of the two Plaintiffs' liquor licenses, which is not sufficient to satisfy the second "gateway factor" required for the award of a preliminary injunction. *Acierno*, 40 F.3d at 653; *Winter*, 555 U.S. at 22.

Moreover, even where this Court determines Plaintiffs' showing of a mere "*risk*" of irreparable harm is sufficient for the purposes of an award of a preliminary injunction, the harm described is not sufficiently "imminent". *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) ("The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury or a presently existing actual threat.") Plaintiffs have not proffered evidence demonstrating a hearing upon the abovementioned license renewal applications are scheduled to occur in the near future. Additionally, Commonwealth Defendants'

records merely reflect that a hearing has been scheduled with respect to one of the two named Plaintiffs' mentioned in the previous paragraph (Best Beer, Inc.), to commence on May 20, 2025[1].  While Commonwealth Defendants contend that the scheduling of such a hearing only demonstrates a "*risk*" of irreparable harm, Plaintiffs have, nonetheless, failed to demonstrate that hearings upon Plaintiffs' license renewal applications are imminent and upcoming.

Furthermore, Plaintiffs have failed to establish irreparable harm for all of named-Plaintiffs in this action.  Plaintiffs include six individually named licensees, as well as 110 members of the Asian-American Licensed Beverage Association and Arab American Business Association and Professional Association of the Delaware Valley[2].  (ECF No. 1 at ¶¶ 12-.) Plaintiffs have only specified that two out of the hundreds of Plaintiffs have been issued "temporary renewal letters".  Plaintiffs have failed to demonstrate that each Plaintiff is subject to irreparable harm as a result of the alleged actions of Commonwealth Defendants, which is fatal to the present Motion for Preliminary Injunction. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (holding, the lower court erred in granting plaintiffs' motion for preliminary injunction because "there was insufficient evidence from which the District Court could infer that *all the plaintiffs-retirees and their spouses*" would suffer irreparable harm).

Lastly, the relief requested within Plaintiffs' present Motion for Preliminary Injunction is "largely the same" as the relief requested in Plaintiffs' operative Complaint.  (*Compare* ECF No. 1 at 42-43 *and* ECF No. 3 at 2-3.); *Rosario*, No. 2:23-cv-966, 2024 WL 1677489, *3. Accordingly, the granting of Plaintiffs' requested injunctive relief would be inappropriate and

---

[1]    The dates and participants of licensing hearings are public information, and available on the website of Commonwealth Defendant PLCB: https://www.pa.gov/agencies/lcb/licensing/virtual-licensing-hearings.html.

[2]    Plaintiffs' Complaint does not specify the individual members of the Asian-American Licensed Beverage Association, and does not specify how many members make up the Arab American Business Association and Processional Association of the Delaware Valley.

would, "in effect, fail to 'preserve the relative positions of the parties' until the merits of the case are considered and would instead amount to a 'final judgment on the merits.' " *Id.* Based on the foregoing, Plaintiffs have failed to sufficiently satisfy the second "gateway factor" necessary for an award of a preliminary injunction, and therefore, the present Motion must be denied.

## V.    CONCLUSION

Based on the foregoing, Commonwealth Defendants respectfully request that this Honorable Court deny Plaintiffs' Amended Motion for Preliminary Injunction.

Respectfully submitted,

Dated:  February 10, 2025

DAVID W. SUNDAY, JR.
Attorney General

By: */s/ Sarin V. Keosian-Frounjian*

SARIN V. KEOSIAN-FROUNJIAN
Deputy Attorney General
Attorney I.D. 329591

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, Pennsylvania 19103
Phone: (215) 560-2128
Email: skeosianfrounjian@attorneygeneral.gov

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants Commonwealth of Pennsylvania, Pennsylvania State Police Bureau of Liquor Control Enforcement, Pennsylvania Liquor Control Board, and Attorney General Sunday*

## CERTIFICATE OF SERVICE

I, Sarin V. Keosian-Frounjian, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on February 10, 2025, I caused to be served a true and correct copy of the foregoing document titled, "Commonwealth Defendants' Opposition to Plaintiffs' Amended Motion for Preliminary Injunction", to the following:

**VIA ECF**

Edward T. Kang, Esq.
Kyle Garabedian, Esq.
Kelly A Lavelle, Esq.
Kang Haggerty LLC
123 S. Broad Street, Suite 1950
Philadelphia, PA 19109
ekang@kanghaggerty.com
kgarabedian@kanghaggerty.com
klavelle@kanghaggerty.com
*Counsel for Plaintiffs*

**VIA ECF**

Michael Wu-Kung Pfautz, Esq.
Ryan Smith, Esq.
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
michael.pfautz@phila.gov
Ryan.Smith@phila.gov
*Counsel for Defendant City of Philadelphia*

*/s/ Sarin V. Keosian-Frounjian*
**SARIN V. KEOSIAN-FROUNJIAN**
**Deputy Attorney General**