IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION D/B/A ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION OF PHILADELPHIA, et al. | : : : CIVIL ACTION : : : Case No. 2:24-cv-06348 |
| Plaintiffs, | : : |
| v. | : ***Jury Trial Demanded*** : |
| CITY OF PHILADELPHIA, et al. | : : |
| Defendants. | : : |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A
PRELIMINARY INJUNCTION AGAINST COMMONWEALTH DEFENDANTS**

Plaintiffs, Asian-American Licensed Beverage Association D/B/A Asian-American Licensed Beverage Association Of Philadelphia ("AALBA"), Yo Deli, Inc.,  Best Beer, Inc., Sky Beer Deli, Inc., Maya Investment Group, LLC, 7701 Ogontz, Inc., CDD 725, Inc. and Arab American Business And Professional Association Of The Delaware Valley ("AAB") submit this Reply Brief in Further Support of their Motion for a Preliminary Injunction against Defendants, Cherelle Parker, In Her Official Capacity as Mayor of the City of Philadelphia, City of Philadelphia, David W. Sunday, Jr., In His Official Capacity as Attorney General of the Commonwealth of Pennsylvania, Pennsylvania State Police Bureau of Liquor Control Enforcement and Pennsylvania Liquor Control Board.

I. **PRELIMINARY STATEMENT**

On January 27, 2025, Plaintiffs filed an Amended Motion for Preliminary Injunction, which was supported by the Amended Verified Complaint and exhibits. ECF Nos. 29, 28. On February 10, 2025, David W. Sunday, Jr., In His Official Capacity as Attorney General of the

Commonwealth of Pennsylvania, Pennsylvania State Police Bureau of Liquor Control Enforcement and Pennsylvania Liquor Control Board ("Commonwealth Defendants") filed their Opposition to Plaintiffs' Amended Motion for Preliminary Injunction ("Opposition"). ECF No. 37. Plaintiffs submit this Reply to address certain issues raised in the Commonwealth Defendants' Opposition.

## II.    LEGAL ARGUMENT ON LIMITED DISPUTED ISSUES

### A. Association Plaintiffs Have Standing to Bring Causes of Action Against Defendants

Despite the Commonwealth Defendants' challenge to the standing of Plaintiffs AALBA's and AAB's (the "Association Plaintiffs") to bring this action on behalf of their members, the well-established doctrine of associational standing firmly supports their right to do so. In *Warth v. Seldin*, 422 U.S. 490 (1975), the United States Supreme Court affirmed that an association may assert the rights of its members when the challenged conduct adversely affects its members' collective interests. Moreover, the Court recognized that even in the absence of the individual members asserting an injury, an association may have standing solely as the representative of its members. *Warth, 422 U.S. at 511* (citing *National Motor Freight Assn. v. United States*, 372 U.S. 246 (1963)).

To establish standing, an association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action. *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-741 (1972)). As long as this can be established, and as long as the nature of the claim and the nature of the relief sought does not make the individual participation of each injured party indispensable to the resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction. *Id.* The Court elaborated on the type of relief that an association could properly pursue on behalf of its members:

"(W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind."

*Id*. at 515. Consistent with these principles, the Supreme Court recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Importantly, the need for some level of participation of the individual members does not bar associational standing under the third prong. Associational standing remains intact even if some members must provide discovery or trial testimony, as long the lawsuit does not require participation from every injured member. *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002).

The Association Plaintiffs clearly satisfy the prerequisites for associational standing. The Amended Complaint details how Defendants' conduct has directly deprived members of AALBA and AAB of their First Amendment freedoms, due process rights, equal protection, and other constitutional guarantees under both federal and Commonwealth law. Protecting these rights is central to the Association Plaintiffs' purpose. Moreover, the Association Plaintiffs seek only declaratory and injunctive relief, not monetary damages, which eliminates the need for proof from each member and further supports their standing to sue on behalf of their members.

**B. Commonwealth Defendants Are Not Immune from Suit under the Eleventh Amendment**

Defendants challenge Plaintiffs' request for relief, asserting the Commonwealth Defendants are immune from suit under the Eleventh Amendment of the Constitution. However, this argument is misplaced for several reasons. First, Plaintiffs do not name the Commonwealth itself as a Defendant. Accordingly, any arguments asserting Eleventh Amendment immunity on that basis are irrelevant and should be disregarded by the Court.

Second, the *Ex Parte Young* doctrine is a well-established exception to Eleventh Amendment immunity that ensures state officials cannot use immunity as a shield to evade accountability for unconstitutional conduct. *Ex Parte Young*, 2019 U.S. 123 (1908); .*MCI Telecommunication Corp. v. Bell Atlantic Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001). Under this doctrine, plaintiffs may bring claims against state officials, such as the Attorney General, in their official capacities to seek prospective relief and prevent ongoing unconstitutional conduct. *Id.* The principle applies even when the state itself would otherwise be immune from suit.

Despite this well-settled legal principle, Defendants cite *Frein v. Pennsyvania State Police*, 47 F.4th 247 (3d Cir. 2022) to support their immunity argument, but their reliance on this case is misplaced. While *Frein* recognized that the Pennsylvania State Police is an "arm" of the Commonwealth and therefore immune from suits for monetary damages, the Third Circuit expressly acknowledged that injunctive relief remains available under *Ex Parte Young*. *Id*. at 257 (citing *Ex Parte Young*, 209 U.S. at 159)(holding Plaintiffs could "not sue the police for money damages" but " they may seek [ ] an injunction."). As such, Defendants' immunity argument mischaracterizes the case law and ignores the clear exception allowing injunctive and declaratory relief. Their reliance on *Frein* does not support their claim of immunity but rather underscores the very exception that permits Plaintiffs' claims to proceed.

### C. Defendants Are "Persons" under Section 1983

Just as Eleventh Amendment immunity does not bar Plaintiffs' claims for injunctive relief, Defendants also qualify as "persons" subject to liability under Section 1983 when sued for prospective relief. *Hafer v. Melo*, 502 U.S. 21, 24 (1991)(citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989). Courts have consistently recognized that state parties may be held liable under Section 1983 for ongoing constitutional violations, affirming Plaintiffs' right to seek injunctive relief in this case. *See Machon v. Pennsylvania State Dept. of Public Welfare*, 847 F. Supp,2d 734, 744-745 (E.D. Pa. 2012)(citing *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 255-56 (2011). Because Plaintiffs seek prospective relief to prevent ongoing constitutional harm, the Defendants' arguments to the contrary lack merit.

### D. Section 4-470 of the Liquor Code is Overbroad and Violates Plaintiffs' Right to Petition Under the First Amendment

Commonwealth Defendants challenge Plaintiffs' claims under the First Amendment, arguing that Section 4-470 of the Liquor Code does not infringe upon Plaintiffs' right to petition. In responding to the Commonwealth Defendants' arguments, it is necessary to address both the City's Nuisance Ordinance and the Liquor Code, as these laws operate in tandem to restrict Plaintiffs' right to petition and collectively contribute to the constitutional violations at issue.

Courts have long recognized that ordinances penalizing individuals or property owners for frequent calls to the police have a chilling effect on the constitutional right to seek redress from the government. As a result, such laws have been found to be overbroad and facially invalid under the First Amendment. *See Bd. of Trustees of Vill. of Groton v. Pirro*, 152 A.D.3d 149, 150, 58 N.Y.S.3d 614 (N.Y. App. Div. 2017). For instance, in the *Pirro* matter, a nuisance ordinance was found unconstitutional because of the chilling effect it had on the right to call the police. Of

particular concern, much like the Nuisance Ordinance at issue here, the ordinance failed to distinguish between crimes committed *by* tenants of certain properties from crimes committed *against* them. *Id.* The enforcement of the Nuisance Ordinance and Section 4-470 has the same chilling effect by discouraging business owners from calling the police for fear of adverse consequences.

1. <u>Plaintiffs Have a Well-Established First Amendment Right to Seek Law Enforcement Assistance</u>

Plaintiffs' claims implicate constitutionally protected conduct, as both the state and local laws deter Plaintiffs and other business owners from seeking police assistance in violation of their First Amendment right to petition—a right recognized as "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Const. Co. v. NLRB*, 536 U.S. 516, 524 (2002)(internal citations omitted). The First Amendment guarantees the right of individuals, including business owners, to seek government intervention without fear of retaliation or penalty. Any law that creates the risk of adverse consequences, such as non-renewal of a liquor license, for exercising this right raises significant constitutional concerns.

2. <u>The Law Causes a Concrete, Tangible and Ongoing Chilling Effect on Plaintiffs' First Amendment Rights</u>

As detailed in Plaintiffs' Amended Motion for Preliminary Injunction, the Nuisance Ordinance and Section 4-470 impose an immediate and substantial chilling effect on Plaintiffs' exercise of their First Amendment right to petition, particularly when implemented in tandem against business owners. The impact is real, current and palpable: business owners face penalties for calling the police, even when they are victims of crime.

The Nuisance Ordinance and Section 4-470 effectively punish business owners for engaging in constitutionally protected activity by using their calls for police assistance as grounds

to classify their business as a nuisance. Citations issued under the Nuisance Ordinance can then be used as a basis to deny liquor license renewal under Section 4-470. 47 P.S. § 4-470(a).  Further, Section 4-470 authorizes the PLCB to consider any activity occurring on or around the licensed premises during the renewal process. 47 P.S. § 4-470(a.1). This means that even when a business owner is the victim of criminal activity, the simple fact that the police were called to the premises may be weighed against them. The result is a deterrent effect, where business owners must decide between seeking law enforcement assistance or protecting their ability to operate. Any reasonable business owner under these circumstances would be afraid to call the police out of fear of receiving a citation that could result in the closing of their business or the loss of the liquor license and livelihood. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (holding that the "plaintiffs [had] alleged an actual and well-founded fear that [a] law [would] be enforced against them" and that harm could "be realized even without an actual prosecution"); *White v. Lee*, 227 F.3d 1214, 1229 (9th Cir. 2000)(holding that the plaintiff was chilled from engaging in First Amendment activities when the state actors' actions "would have chilled or silenced a person of ordinary firmness from engaging in future First Amendment activities").

The ability of a business owner to appeal under the Nuisance Ordinance or enter into an abatement plan offers no guarantees that past citations will not be used against them in the liquor license renewal process. Notably, an abatement plan may impose drastic operational changes such as altering business hours, modifying operations, or restricting the sale of certain products—effectively serving as another means for the City to pressure the business into closure. Likewise, while the Liquor Code includes notice requirements before denying a renewal, these provisions provide no real assurance that prior citations will not factor into the final decision.

     3.    <u>The Laws Cannot Withstand Strict Scrutiny</u>

The strict scrutiny standard applies to Plaintiffs' First Amendment claims, requiring the government to demonstrate that any restrictions are narrowly tailored to serve a compelling state interest. *See Am. Civil Liberties Union v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123, 1128-29 (D.N.J. 1981)(providing that laws that infringe on the right to petition "must be based on a compelling governmental interest" and take the "least restrictive means to further such an interest"). This level of scrutiny is necessary even when the deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable consequence of the government's conduct. *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 at 461 (1958). Neither the Nuisance Ordinance nor Section 4-470 of the Liquor Code can withstand this level of judicial scrutiny.

The City's assertion that the Nuisance Ordinance advances an important government interest in reducing nuisance behavior, and Commonwealth Defendants' claim that Section 4-470 of the Liquor Code is justified by the need to prevent liquor-licensed businesses from becoming hubs of criminal activity, both fail to meet the compelling interest threshold necessary to survive strict scrutiny. In fact, these laws directly undermine the very interests the City and the Commonwealth Defendants claim to protect. By discouraging businesses from reporting criminal activity for fear of receiving a citation, the laws deter cooperation with law enforcement and silence victims, thereby perpetuating rather than mitigating nuisance behavior and criminal activity.

Defendants' attempt to justify these laws under the intermediate level of scrutiny falls far short of the scrutiny required here. The purported governmental interests are insufficient to justify the substantial infringement on the First Amendment rights of Plaintiffs and other business owners.

Courts have repeatedly invalidated similar laws for their chilling effect on the right to petition, finding them overbroad and facially unconstitutional. The same conclusion is warranted here.

**E.  The Licensee Compliance Program and the Fiscal Code Violate Plaintiffs' Right to Procedural Due Process**

Defendants challenge Plaintiffs' due process claims but fail to address the specific laws and conduct at issue. Instead, they rely on arguments regarding "temporary renewal letters," disregarding Plaintiffs' actual claims. Counts VII and VII of Plaintiffs' Amended Complaint challenge Defendants' actions under the Licensee Compliance Program and Section 1779.6-E of the Fiscal Code, which allow Defendants to suspend or effectively revoke liquor licenses without prior notice or warning *and without providing any procedures to challenge or contest these actions*. Amend. Compl. ¶¶ 68, 69, 120-124.

Defendants' enforcement of these provisions has resulted in businesses being shut down for weeks at a time, depriving Plaintiffs of their ability to operate and sustain their livelihood—a clear violation of due process. The failure to provide notice or an opportunity to be heard before imposing such drastic penalties is fundamentally unconstitutional. *See Mathews v. Eldridge*, 424 U.S. 319, 332-33 (!976)(holding that, at a minimum, due process requires notice and an opportunity for a hearing before state actor deprives a person of property interest.)

Plaintiffs clearly have a constitutionally protected interest in maintaining their liquor licenses, which are essential to the operation of their businesses and their ability to sustain their livelihood. Defendants attempt to sidestep the issue by arguing that Pennsylvania law classifies a liquor license as a "privilege" rather than a "right."  However, this argument is legally irrelevant. A state's characterization of an interest as a "privilege" does not determine whether the interest is protected under the Fourteenth Amendment; rather federal constitutional law controls. *Board of Regents v. Roth*, 408 U.S. 564, 571-72 (1972). The Supreme Court has made it clear that once a

license is issued and becomes integral to a person's livelihood, it cannot be revoked or suspended without due process of law. *Bell v. Burson*, 402 U.S. 535, 539 (1971).

Despite these well-established constitutional principles, the laws at issue provide no procedural protections. Defendants' The Licensee Compliance Program and Section 1779.6-E of the Fiscal Code do not provide any mechanism for a liquor license holder to challenge a unilateral decision to suspend a liquor license. Further, Defendants do not even attempt to address the specific statutory provisions Plaintiffs challenge, effectively conceding that they have no valid defense. Given these uncontested violations of due process, Plaintiffs are likely to succeed on their claims.

## III.   <u>CONCLUSION</u>

For all these reasons, as well as those set forth in Plaintiffs' Amended Motion for Preliminary Injunction, and Plaintiffs' forthcoming Opposition to the Motions to Dismiss, Plaintiffs have satisfied the four factors required for the issuance of a preliminary injunction. As such, Plaintiffs respectfully request this Court to grant their Amended Motion for Preliminary Injunction.

**KANG HAGGERTY LLC**

*/s/ Kyle Garabedian*
Edward T. Kang
Kyle Garabedian
Kelly Lavelle
Kang Haggerty LLC
123 South Broad Street, Suite 1950
Philadelphia, Pennsylvania 19109
(215) 525-5850 (tel)
(215) 525-5860 (fax)
ekang@kanghaggerty.com
kgarabedian@kanghaggerty.com
klavelle@kanghaggerty.com

Dated: February 18, 2025          *Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION D/B/A ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION OF PHILADELPHIA, et al. | : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| CITY OF PHILADELPHIA, et al. | : : : |
| Defendants. | : : |

CIVIL ACTION

Case No. 2:24-cv-06348

***Jury Trial Demanded***

## <u>CERTIFICATE OF SERVICE</u>

I, Kyle Garabedian, counsel for the Plaintiffs, hereby certify that a true and correct copy of the foregoing Reply in Further Support of Plaintiffs' Amended Motion for a Preliminary Injunction was served on the following counsel via CM/ECF notification.

<table>
<tr>
<td>

Sarin V. Keosian-Frounjian, Esq.
Office of the Attorney General
1600 Arch St., Suite 300
Philadelphia, Pennsylvania 19103
skeosianfrounjian@attorneygeneral.gov
*Counsel for Commonwealth Defendants*

</td>
<td>

Michael Wu-Kung Pfautz, Esq.
Ryan Smith, Esq.
City of Philadelphia Law Department
1515 Arch St., 15th Floor
Philadelphia, PA 19102
Michael.pfautz@phila.gov
Ryan.smith@phila.gov
*Counsel for Defendant City of Philadelphia*

</td>
</tr>
</table>

<u>*/s/ Kyle Garabedian*</u>
Kyle Garabedian

Dated: February 18, 2025