IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION D/B/A ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION OF PHILADELPHIA, et al. | CIVIL ACTION |
| Plaintiffs, | Case No. 2:24-cv-06348 |
| v. | ***Jury Trial Demanded*** |
| CITY OF PHILADELPHIA, et al. | |
| Defendants. | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION AGAINST CITY DEFENDANTS**

Plaintiffs, Asian-American Licensed Beverage Association D/B/A Asian-American Licensed Beverage Association Of Philadelphia ("AALBA"), Yo Deli, Inc., Best Beer, Inc., Sky Beer Deli, Inc., Maya Investment Group, LLC, 7701 Ogontz, Inc., CDD 725, Inc. and Arab American Business And Professional Association Of The Delaware Valley ("AAB") submit this Reply Brief in Further Support of their Motion for a Preliminary Injunction against Defendants, Cherelle Parker, In Her Official Capacity as Mayor of the City of Philadelphia, City of Philadelphia, David W. Sunday, Jr., In His Official Capacity as Attorney General of the Commonwealth of Pennsylvania, Pennsylvania State Police Bureau of Liquor Control Enforcement and Pennsylvania Liquor Control Board.

## I. PRELIMINARY STATEMENT

On January 27, 2025, Plaintiffs filed an Amended Motion for Preliminary Injunction which was supported by the Amended Verified Complaint and exhibits. ECF Nos. 29, 28. On February 10, 2025, Defendants City of Philadelphia and Mayor Cherelle Parker ("City Defendants") filed

their Opposition to Plaintiffs' Amended Motion for Preliminary Injunction ("Opposition") together with six exhibits. ECF No. 35. Plaintiffs submit this Reply to address certain issues raised in the City Defendants' Opposition.

## II. LEGAL ARGUMENT ON LIMITED DISPUTED ISSUES

### A. Plaintiffs Have Standing to Pursue this Action

#### 1. The Individual Member Plaintiffs Have Standing

Defendants' argument that the individual member Plaintiffs lack standing because they have not suffered a cognizable "injury in fact" does not have any basis in law or fact. The individual member Plaintiffs have standing to challenge the Nuisance and Curfew Ordinances because they have suffered, or are at imminent risk of suffering, direct harm as a result of these laws. To establish standing, a plaintiff must demonstrate (1) an injury-in-fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504U.S. 555, 560-61 (1992). Plaintiffs meet all three elements.

First, the individual business owners face tangible harm, including fines, suspension or revocation of their liquor licenses, and even closure of their businesses due to enforcement of the ordinances. These penalties directly impact their ability to operate and sustain their livelihood, creating a concrete and particularized injury. Second, the harm is directly caused by the enforcement of the challenged ordinances, which impose the penalties described in detail in the Plaintiffs' Amended Complaint. Third, a favorable ruling would redress these harms by preventing the enforcement of unconstitutional ordinances and restoring the individual Plaintiffs' ability to operate their business without fear of arbitrary punishment. Courts have consistently recognized

standing in cases where business owners challenge government actions that restrict their ability to lawfully operate. *Clark v. City of Lakewood*, 259 F.3d 996, 1008 (9th Cir. 2001), as amended (Aug. 15, 2001)(recognizing business owner's standing to request an injunction stopping enforcement of an ordinance impacting the operation of his business). Moreover, because Plaintiffs have standing to seek injunctive relief, they also have standing to seek declaratory relief. *See Nashville, C. & St. L. Ry. v. Wallace,* 288 U.S. 249, 261, 264 (1933) (holding that where a request for injunctive relief is properly before the court, a suit for declaratory judgment is also appropriate for federal adjudication).

Further, because First Amendment rights are at stake, Plaintiffs not only have standing on their own behalf, but also on behalf of other members as the broadened concepts of standing in First Amendment cases would permit them to do so. *See Virginia v. Am. Booksellers Ass'n*, *Inc.*, 484 U.S. at 392-93 (holding that "in the First Amendment context, litigants are permitted to challenge a statute. . .because . . . the statute's very existence may cause [them or] others not before the court to refrain from constitutionally protected speech or expression.") (internal quotation marks omitted). Moreover, as discussed herein, the individual Plaintiffs clearly suffered and continue to suffer a current, concrete injury to their First Amendment right to petition. *See, id.* (finding "injury in fact" requirement met where "the law is aimed directly at plaintiffs, who . . . [would] have to take significant and costly compliance measures or risk criminal prosecution") (internal citations omitted); *Neiderhiser v. Berwick*, 840 F.2d 234, 216-17 (3d Cir. 1988) (holding defendant municipality's threatened enforcement of ordinance sufficient to establish standing).

2. <u>The Association Plaintiffs Have Standing</u>

Despite the City Defendants' challenge to the standing of Plaintiffs AALBA's and AAB's (the "Association Plaintiffs") to bring this action on behalf of their members, the well-established

doctrine of associational standing firmly supports their right to do so. In *Warth v. Seldin*, 422 U.S. 490 (1975), the United States Supreme Court affirmed that an association may assert the rights of its members when the challenged conduct adversely affects its members' collective interests. Moreover, the Court recognized that even in the absence of the individual members asserting an injury, an association may have standing solely as the representative of its members. *Warth, 422 U.S. at 511* (citing *National Motor Freight Assn. v. United States*, 372 U.S. 246 (1963)).

To establish standing, an association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action. *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-741 (1972)). As long as this can be established, and as long as the nature of the claim and the nature of the relief sought does not make the individual participation of each injured party indispensable to a proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction. *Id*. The Court elaborated on the type of relief that an association could properly pursue on behalf of its members:

> "(W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind."

*Id*. at 515. Consistent with these principles, the Supreme Court recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Importantly, the need for some level of participation of the

individual members does not bar associational standing under this third criterion. Associational standing remains intact even if some members must provide discovery or trial testimony, as long the lawsuit does not require participation from every injured member. *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002).

The Association Plaintiffs clearly satisfy the prerequisites for associational standing. The Amended Complaint details how Defendants' conduct has directly deprived members of AALBA and AAB of their First Amendment freedoms, due process rights, equal protection, and other constitutional guarantees under both federal and state law. Protecting these rights is central to the Association Plaintiffs' purpose.

The Association Plaintiffs clearly satisfy the prerequisites for associational standing. The Amended Complaint details how Defendants' conduct has directly deprived members of AALBA and AAB of their First Amendment freedoms, due process rights, equal protection, and other constitutional guarantees under both federal and Commonwealth law. Protecting these rights is central to the Association Plaintiffs' purpose. Moreover, the Association Plaintiffs seek only declaratory and injunctive relief, not monetary damages, which eliminates the need for proof from each member and further supports their standing to sue on behalf of their members.

**B. Plaintiffs Have Established Selective Enforcement on the Part of the City Defendants**

To establish selective enforcement, Plaintiffs must show that (1) they were treated differently from other similarly situated entities, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor or to prevent the exercise of a fundamental right. *Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir.2005) (citing *Holder v. City of Allentown,* 987 F.2d 188, 197 (3d Cir.1993)). Here, the City's own admissions establish both prongs of selective enforcement. The City has acknowledged that

it enacted the Nuisance Ordinance to target "certain business models" and the Curfew Ordinances to target "geographical areas and business models." *See* Def.s Opp. Br. p. 27-28. In effect, Defendants admit that they are targeting Plaintiffs.

First, the City's enactment of and enforcement of the Nuisance and Curfew Ordinances disproportionately impact "certain businesses models," particularly Asian and Arab owned R and E licensed establishments. The Supreme Court has long recognized that law applied in a discriminatory manner, even if facially neutral, can violate the Equal Protection Clause. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). The City here has enacted and enforced these ordinances in a way that disproportionately impacts certain businesses and neighborhoods, effectively creating two separate legal standards—one for Plaintiffs and another for other liquor license holders. Upon information and belief, other similarly situated businesses, *i.e.* other R and E license holders, are not experiencing the same level of enforcement. Discovery is ongoing and necessary to further explore the scope and pattern of the City's selective enforcement.

Second, the City's admission that the ordinances were enacted to target "certain business models" (i.e., the Asian and Arab-owned licensees) provides direct evidence of discriminatory intent. Unlike enforcement measures aimed at all businesses equally, the City has explicitly singled out "certain business models" in certain geographical locations. This targeted approach disproportionately burdens Asian and Arab-owned establishments, creating a pattern of selective enforcement based on impermissible considerations.

While the City may argue that these ordinances were enacted for crime prevention, this justification does not excuse the disparate impact and selective enforcement of the law. Courts have repeatedly held that selective enforcement based on arbitrary factors is unconstitutional when there are less discriminatory means of achieving public safety.

**C. The Nuisance Ordinance is Overbroad and Violates Plaintiffs' Right to Petition Under the First Amendment**

City Defendants challenge Plaintiffs' claims under the First Amendment, arguing that the of the Nuisance Ordinance does not infringe upon Plaintiffs' right to petition. In responding to the City Defendants' arguments, it is necessary to address both the City's Nuisance Ordinance and the Liquor Code, as these laws operate in tandem to restrict Plaintiffs' right to petition and collectively contribute to the constitutional violations at issue.

Courts have long recognized that ordinances penalizing individuals or property owners for frequent calls to the police have a chilling effect on the constitutional right to seek redress from the government. As a result, such laws have been found to be overbroad and facially invalid under the First Amendment. *See Bd. of Trustees of Vill. of Groton v. Pirro*, 152 A.D.3d 149, 150, 58 N.Y.S.3d 614 (N.Y. App. Div. 2017). For instance, in the *Pirro* matter, a nuisance ordinance was found unconstitutional because of the chilling effect it had on the right to call the police. Of particular concern, much like the Nuisance Ordinance at issue here, the ordinance failed to distinguish between crimes committed *by* tenants of certain properties from crimes committed *against* them. *Id.* The enforcement of the Nuisance Ordinance and Section 4-470 has the same chilling effect by discouraging business owners from calling the police for fear of adverse consequences.

1. <u>Plaintiffs Have a Well-Established First Amendment Right to Seek Law Enforcement Assistance</u>

Plaintiffs' claims implicate constitutionally protected conduct, as both the state and local laws deter Plaintiffs and other business owners from seeking police assistance in violation of their First Amendment right to petition—a right recognized as "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Const. Co. v. NLRB*, 536 U.S. 516, 524 (2002)(internal

citations omitted). The First Amendment guarantees the right of individuals, including business owners, to seek government intervention without fear of retaliation or penalty. Any law that creates the risk of adverse consequences, such as non-renewal of a liquor license, for exercising this right raises significant constitutional concerns.

2. The Law Causes a Concrete, Tangible and Ongoing Chilling Effect on Plaintiffs' First Amendment Rights

As detailed in Plaintiffs' Amended Motion for Preliminary Injunction, the Nuisance Ordinance and Section 4-470 impose an immediate and substantial chilling effect on Plaintiffs' exercise of their First Amendment right to petition, particularly when implemented in tandem against business owners. The impact is real, current and palpable: business owners face penalties for calling the police, even when they are victims of crime.

The Nuisance Ordinance and Section 4-470 effectively punish business owners for engaging in constitutionally protected activity by using their calls for police assistance as grounds to classify their business as a nuisance. Citations issued under the Nuisance Ordinance can then be used as a basis to deny liquor license renewal under Section 4-470. 47 P.S. § 4-470(a). Further, Section 4-470 authorizes the PLCB to consider any activity occurring on or around the licensed premises during the renewal process. 47 P.S. § 4-470(a.1). This means that even when a business owner is the victim of criminal activity, the simple fact that the police were called to the premises may be weighed against them. The result is a deterrent effect, where business owners must decide between seeking law enforcement assistance or protecting their ability to operate. Any reasonable business owner under these circumstances would be afraid to call the police out of fear of receiving a citation that could result in the closing of their business or the loss of the liquor license and livelihood. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (holding that the "plaintiffs [had] alleged an actual and well-founded fear that [a] law [would] be enforced against

them" and that harm could "be realized even without an actual prosecution"); *White v. Lee*, 227 F.3d 1214, 1229 (9th Cir. 2000)(holding that the plaintiff was chilled from engaging in First Amendment activities when the state actors' actions "would have chilled or silenced a person of ordinary firmness from engaging in future First Amendment activities").

The ability of a business owner to appeal under the Nuisance Ordinance or enter into an abatement plan offers no guarantees that past citations will not be used against them in the liquor license renewal process. Notably, an abatement plan may impose drastic operational changes such as altering business hours, modifying operations, or restricting the sale of certain products—effectively serving as another means for the City to pressure the business into closure. Likewise, while the Liquor Code includes notice requirements before denying a renewal, these provisions provide no real assurance that prior citations will not factor into the final decision.

3. The Laws Cannot Withstand Strict Scrutiny

The strict scrutiny standard applies to Plaintiffs' First Amendment claims, requiring the government to demonstrate that any restrictions are narrowly tailored to serve a compelling state interest. *See Am. Civil Liberties Union v. N.J. Election Law Enforcement Comm'n*, 509 F. Supp. 1123, 1128-29 (D.N.J. 1981)(providing that laws that infringe on the right to petition "must be based on a compelling governmental interest" and take the "least restrictive means to further such an interest"). This level of scrutiny is necessary even when the deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable consequence of the government's conduct. *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 at 461 (1958). Neither the Nuisance Ordinance nor Section 4-470 of the Liquor Code can withstand this level of judicial scrutiny.

The City's assertion that the Nuisance Ordinance advances an important government interest in reducing nuisance behavior, and Commonwealth Defendants' claim that Section 4-470 of the Liquor Code is justified by the need to prevent liquor-licensed businesses from becoming hubs of criminal activity, both fail to meet the compelling interest threshold necessary to survive strict scrutiny. In fact, these laws directly undermine the very interests the City and the Commonwealth Defendants claim to protect. By discouraging businesses from reporting criminal activity for fear of receiving a citation, the laws deter cooperation with law enforcement and silence victims, thereby perpetuating rather than mitigating nuisance behavior and criminal activity.

Defendants' attempt to justify these laws under the intermediate level of scrutiny falls far short of the scrutiny required here. The purported governmental interests are insufficient to justify the substantial infringement on the First Amendment rights of Plaintiffs and other business owners. Courts have repeatedly invalidated similar laws for their chilling effect on the right to petition, finding them overbroad and facially unconstitutional. The same conclusion is warranted here.

## III. CONCLUSION

For all these reasons, as well as those set forth in Plaintiffs' Amended Motion for Preliminary Injunction, and Plaintiffs' forthcoming Opposition to the Motions to Dismiss, Plaintiffs have satisfied the four factors required for the issuance of a preliminary injunction. As such, Plaintiffs respectfully request this Court to grant their Amended Motion for Preliminary Injunction.

**KANG HAGGERTY LLC**

*/s/ Kyle Garabedian*
Edward T. Kang
Kyle Garabedian
Kelly Lavelle
Kang Haggerty LLC
123 South Broad Street, Suite 1950
Philadelphia, Pennsylvania 19109
(215) 525-5850 (tel)
ekang@kanghaggerty.com
kgarabedian@kanghaggerty.com
klavelle@kanghaggerty.com
*Counsel for Plaintiffs*

Dated: February 18, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION D/B/A ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION OF PHILADELPHIA, et al. | CIVIL ACTION |
| Plaintiffs, | Case No. 2:24-cv-06348 |
| v. | ***Jury Trial Demanded*** |
| CITY OF PHILADELPHIA, et al. | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I, Kyle Garabedian, counsel for the Plaintiffs, hereby certify that a true and correct copy of the foregoing Reply in Further Support of Plaintiffs' Amended Motion for a Preliminary Injunction was served on the following counsel via CM/ECF notification.

Sarin V. Keosian-Frounjian, Esq.
Office of the Attorney General
1600 Arch St., Suite 300
Philadelphia, Pennsylvania 19103
skeosianfrounjian@attorneygeneral.gov
*Counsel for Commonwealth Defendants*

Michael Wu-Kung Pfautz, Esq.
Ryan Smith, Esq.
City of Philadelphia Law Department
1515 Arch St., 15th Floor
Philadelphia, PA 19102
Michael.pfautz@phila.gov
Ryan.smith@phila.gov
*Counsel for Defendant City of Philadelphia*

/s/ Kyle Garabedian
Kyle Garabedian

Dated: February 18, 2025