IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | : : : : | Civil Action No. 24-6348-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| CITY OF PHILADELPHIA, *et al.*, | : : | |
| Defendants. | : : : | |

**CITY DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Plaintiffs' opposition to the City Defendants' Motion to Dismiss is most notable for what it doesn't say: anything that is actually responsive to the dispositive legal flaws identified in the City's Motion. Instead, Plaintiffs ignore black letter law and insist that simply repeating the bare elements of a cause of action "upon information and belief" is sufficient to state a claim. Along the way, they confuse alleged disparate impact for disparate treatment, effectively conceding that they have entirely failed to assert a single nonconclusory fact that suggests the City's enforcement of its Nuisance and Curfew Ordinances is intentionally discriminatory. They have no answer to the City's point that their vagueness claims are foreclosed by their (flawed) standing arguments and the Ordinances' explicit statutory language. And their only defense of their right-to-petition claims is that a different ordinance from New York that did penalize businesses based on number of police complaints was found unconstitutional by a state court— but they fail to explain how that case has any application to Philadelphia's Nuisance Ordinance, which encourages interaction and dialogue between business owners and police regarding

nuisance activity. Because Plaintiffs' legal theories are unsupported in turn by factual allegations, existing precedent, or both, the Amended Complaint should be dismissed.

## A. Equal Protection (Selective Enforcement)

In attempting to save their selective enforcement claims, Plaintiffs give the game away. Although the Amended Complaint is premised on unsupported, boilerplate assertions of *race* discrimination, Plaintiffs' brief effectively drops any pretense that Plaintiffs have plausibly alleged such discrimination. Instead, Plaintiffs now argue that the City's enforcement of the Ordinances violates equal protection because the City has allegedly admitted to targeting businesses, like Plaintiffs, who employ a stop-and-go business model. But the City has done no such thing, and the Amended Complaint is devoid of any factual allegation to support a claim that Plaintiffs have been treated differently at all, whether based on race *or* business model. And because the Curfew Ordinances distinguish based on geographical location and type of goods sold, not on any suspect class, they are subject to and easily satisfy rational basis review.

Plaintiffs' claim that the City "admit[ted]" the Ordinances target Plaintiffs' businesses specifically, Pls.' Br. at 47 (citing City Defs.' PI Opp'n Br., ECF No. 35, at 27-28), misrepresents the City's position as set forth in its briefings. Far from admitting any group is being targeted, the City merely referenced the fact that that—for purposes of rational basis review pursuant to which the Court can hypothesize rationales—the Nuisance Ordinance was enacted after City Council heard testimony regarding the "undesirable, often dangerous behavior" that occurs at "and is sometimes enabled by, certain business models."[1] City Defs.' PI

---

[1] Plaintiffs' argument that the Court may not consider the testimony heard at public legislative hearings on the challenged ordinances is frivolous. Courts may consider "matters of public record" when deciding "a motion to dismiss," which include "criminal case dispositions," "letter decisions of government agencies," and "published reports of administrative bodies," i.e., documents to which "the public had unqualified access." *Pension Ben. Guar. Corp. v. White*

Opp'n Br. at 27. That testimony also noted those behaviors often occur at "smoke shops" that are open twenty-four hours and are a "nuisance" because they "have been [sites] for illegal drug sales, prostitution, shooting, and other violent crimes." *Id.* at 27-28. Thus, if any business model is highlighted by the Ordinances, it is twenty-four-hour "smoke shops"—which Plaintiff businesses do not claim to be—and only problematic 'stop-and-gos' with issues such as loitering and public urination. *See id.* at 3 & n.3, 4 (citing hearing testimony acknowledging that "not all stop-and-gos" are alike); *see also* ECF No. 34, City Br. at 7, 21-22. Plaintiffs' attempt to mischaracterize the City's arguments and the legislative history of the Ordinances does nothing to cure their pleading deficiencies.

By their plain language, the Nuisance and Curfew Ordinances are facially neutral with respect to every protected class. The Nuisance Ordinance prohibits specific behaviors that occur at **any** business in the City, without mention of any particular business model. *See* Phila. Code § 9-4101 (defining covered businesses). The Curfew Ordinances cover all businesses that fall within their definition of "Commercial Establishment" and are located in certain geographical areas of the City. *See, e.g.,* Phila. Code § 9-630(1)(a) (defining covered "commercial establishments" as those "where consumers primarily purchase goods intended for consumption or use off premises . . . ."). Likewise, the City's policies governing enforcement of the Nuisance and Curfew Ordinances are facially neutral and target behaviors, not business models. *See* PPD Directive 4.25, ECF No. 35-5; PPD Memo 25-06, ECF No. 35-6.

---

*Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). Because recordings and transcripts of the public legislative hearings are freely available on the City's website, the Court may consider them on this Motion to Dismiss. Moreover, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature," *F.C.C.*, 508 U.S. at 315 (1993), so this Court can also simply consider those justifications as hypothetical ones rather than City Council's actual reasons.

If problematic stop-and-gos that serve as a site for illegal drug sales, prostitution, shootings, public urination, and other crimes are on the receiving end of more enforcement than other take-out establishments—which Plaintiffs have not alleged—the only reasonable inference is that the enforcement is ***because of those behaviors***, not the purported race of the corporate owner. In fact, Plaintiffs do not allege that City Council or the police even have knowledge of the claimed race of the corporate entities or any individual behind the entities such that race discrimination could be inferred.

Fatally, Plaintiffs acknowledge that their selective enforcement claims require a showing that "they were treated differently from other similarly situated entities," Pls. Br. at 47, but still fail to identify a single similarly situated business subjected to lesser enforcement. Their conclusory assertion that "upon information and belief," unnamed, similarly situated businesses experience a different level of enforcement is insufficient to survive a motion to dismiss. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (stating that a complaint must contain something more than "naked assertion[s]" devoid of "further factual enhancement.").[2] While Plaintiffs suggest that the operators of stop-and-gos tend to be members of certain racial groups and that the alleged business-model targeting therefore has a "disproportionate[] impact" on race, Pls.' Br. at 47-48, it is well-settled that a selective enforcement challenge against a "facially valid law" requires "discriminatory purpose, **not mere unequal treatment or adverse effect**," a fact acknowledged by Plaintiffs in their brief. *Jewish Home of E. Pa. v. Centers for Medicare &*

---

[2] In an effort to mask the deficiencies in their pleadings, Plaintiffs claim that "[d]iscovery is ongoing and necessary to further explore the scope and pattern of the City's selective enforcement," Pls.' Br. at 48, but Plaintiffs still must make an initial showing of "sufficient factual matter" to establish their claim is plausible, and cannot use the discovery process as a fishing expedition to locate the basic facts they are required to assert in the first instance. *Ashcroft*, 556 U.S. at 678.

4

*Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (emphasis added). Because Plaintiffs fail to show *any* discriminatory purpose on the part of the City, their selective enforcement claims fail.

Even assuming arguendo that the City intended to target specific business models such as stop-and-gos through the Ordinances—an argument Plaintiffs fail to support with any facts—Plaintiffs' equal protection claims would still fail. "[I]ntentional discrimination against any [non-suspect] 'identifiable group' is subject to rational-basis review," which only requires the classification to be rationally related to a legitimate governmental purpose. *Hassan v. City of New York*, 804 F.3d 277, 298 (3d Cir. 2015) (applying heightened scrutiny to intentional discrimination on the basis of religion). Moreover, "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (citation omitted).

Here, the City could reasonably believe that stop-and-gos disproportionately contribute to dangerous and harmful public safety issues and that enacting the Nuisance Ordinance, which involves warning and potentially closing those businesses that refuse to attempt to abate the issues, would serve its legitimate purpose of ensuring public safety. *See* City Br. at 21-22. For the Curfew Ordinances, the only plausible "identifiable group" is "commercial establishments" as defined in the Curfew Ordinances, i.e., take-out restaurants and shops. *See* Phila. Code § 9-630(1)(a). The City could reasonably believe that these harms are more concentrated in certain geographic areas and that limiting overnight business operations by businesses that externalize all risks of their customers' behavior—like take-out establishments covered by the Curfew Ordinances and unlike excepted sit-in bars and restaurants—in those places would also reduce harmful behavior. *See* City Br. at 21-22. In fact, City Council heard testimony that the areas covered by the Curfew Ordinances "had higher rates of overnight crime and nuisance behavior

5

than other areas," and that twenty-four hour "smoke shops," among others, were a locus of the undesirable behavior. *Id.* Plaintiffs do not even mention—let alone attempt to negate—these potential justifications. That is fatal to their equal protection claims.

Accordingly, because Plaintiffs fail to plausibly allege intentional differential treatment in any regard and the Ordinances are rationally related to reducing nuisance activity in the City, Plaintiffs' selective enforcement claims fail as a matter of law.

**B. <u>Vagueness</u>**

In a scant two paragraphs, Plaintiffs nitpick the Nuisance Ordinance to manufacture baseless arguments that it is unconstitutionally vague. First, they complain that it does not individually define every targeted behavior, despite Plaintiffs' acknowledgement of the fact that the Ordinance includes a list of over a dozen self-explanatory activities such as littering and prostitution. Plaintiffs' argument here is so cursory that they do not even attempt to identify a case at the margin. Second, they suggest the Ordinance's application to behavior "on the sidewalk or street, abutting the business" is too vague because it does not define abutting to mean an exact number of inches.[3] Plaintiffs contend that together, these omissions amount to "unlimited discretion" on the part of the City. Pls.' Br. at 40. Neither of these objections comes close to the governing legal standard that a law "must be so vague as to be 'no rule or standard at

---

[3] Despite Plaintiffs' apparent confusion, it is black letter law that the sidewalk and street abutting a parcel are owned by the owner of the parcel, subject to the public right-of-way, and that owners are liable for sidewalk conditions. *See, e.g., Fisher v. City of Philadelphia*, 170 A. 875, 878 (Pa. Super. Ct. 1934) ("As respects sidewalks along public streets, the public has the right to use the whole of the unoccupied portion from the building line to the curbstone, and the primary duty of keeping it in repair rests upon the owner of the abutting premises."); *Campbell v. Temple Univ.*, 78 Pa. D. & C.4th 1, 17 (Phila. Com. Pl. 2005) ("the abutting property owner retains responsibility for the conditions outside the curb lines, i.e., the sidewalk, the tree planting strip, and the curb itself.").

all.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631-32 (3d Cir. 2013) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 1231 (1967)).

As to their claim that the Curfew Ordinances are vague because they do not further define the terms "primarily" and "goods," Plaintiffs all but concede defeat. They simply do not address the dictionaries, statutes, and precedent cited in the Motion to Dismiss that explain the common sense meaning of these terms. Although Plaintiffs suggest they are not sure whether Curfew Ordinances apply to them, this is directly contradicted by their arguments on standing. Pls.' Br. at 31 ("[T]he Complaint specifically alleges at least one member of AAB that is subject to the Curfew Ordinance and notes that at least fifteen of Plaintiff AALBA's members are subject to the Curfew Ordinances."). They cannot contend they are subject to the Curfew Ordinances for standing and in the same breath claim they are unsure if the Ordinances apply to them under vagueness.[4]

### C. Right to Petition

The fatal flaw in Plaintiffs' right-to-petition claims is set forth explicitly in their brief: "ordinances ***penalizing*** individuals or property owners ***for calls to the police*** have a chilling effect on the constitutional right to seek redress from the government." (Pls. Br. at 43 (emphasis added). That is simply not what the Nuisance Ordinance does—whether a business is subject to enforcement has exactly zero to do with who, if anyone, reported the nuisance behavior. As if to emphasize their confusion, Plaintiffs cite a decision from one of New York's intermediate appellate courts that addresses a nuisance law that ***did*** explicitly base enforcement on "complaints made to law enforcement officials of illegal activity associated with the property."

---

[4] To be clear, Plaintiffs lack standing because they fail to articulate any legally cognizable harm from the application of the Ordinances to them. The mere fact that Plaintiffs are covered by the Ordinances does not confer standing. *See* City Br. at 14-19.

*Bd. of Trustees of Vill. of Groton v. Pirro*, 152 A.D.3d 149, 150 (N.Y. App. Div. 2017) (quoting Local Law No. 4 [2014] of Village of Groton § 152-3 [A]). Because Philadelphia's Nuisance Ordinance depends on the business's connection to the behavior and not whether the behavior was reported, the right-to-petition is not implicated.[5]

*   *   *

For all these reasons and those set forth in the City Defendants' Motion to Dismiss, the Court should grant the Motion without leave to further amend the pleadings.

Date: March 3, 2025                                    Respectfully submitted,

                                                       PHILADELPHIA LAW DEPARTMENT
                                                       RENEE GARCIA, CITY SOLICITOR


                                                       */s/ Ryan B. Smith*
                                                       MELISSA MEDINA
                                                       Divisional Deputy City Solicitor
                                                       Pa. Bar No. 327048
                                                       MICHAEL PFAUTZ
                                                       Deputy City Solicitor
                                                       Pa. Bar No. 325323
                                                       RYAN B. SMITH
                                                       Deputy City Solicitor
                                                       Pa. Bar No. 324643
                                                       City of Philadelphia Law Department
                                                       1515 Arch Street, 15th Floor
                                                       Philadelphia, PA 19102
                                                       (215) 410-8264
                                                       Ryan.Smith@phila.gov
                                                       *Counsel for City Defendants*

---

[5] To the extent Plaintiffs suggest that their claim survives because the Commonwealth Defendants might consider reports of nuisance activity in their own decisionmaking, that argument is frivolous. Plaintiffs cannot challenge the *City's* laws based on how other governmental entities act—for one thing, the City could have no nuisance ordinance at all, and the Commonwealth Defendants could still elect to consider reports of the same behaviors (e.g., drug dealing) in their licensing decisions.

## **CERTIFICATE OF SERVICE**

      I, Ryan B. Smith, hereby certify that, on the date below, I caused a true and correct copy of the foregoing City Defendants' Reply in Support of its Motion to Dismiss to be served via CM/ECF filing upon counsel for all parties.

Date: March 3, 2025                             */s/ Ryan B. Smith*
                                                                         Ryan B. Smith
                                                                         Deputy City Solicitor