IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASIAN-AMERICAN LICENSED BEVERAGE ASSOCIATION, *et al.*, | |
| *Plaintiffs*, | |
| v. | CIVIL ACTION NO. 2:24-CV-06348-JLS |
| CITY OF PHILADELPHIA, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

**SCHMEHL, J. /s/ JLS**                                                                 **MARCH 24, 2025**

Plaintiffs initiated the present civil action to challenge state laws and local ordinances under 42 U.S.C. § 1983—asserting violations of the First, Fifth, and Fourteenth Amendments—and under provisions of the Pennsylvania Constitution. They seek injunctive relief, a declaratory judgment, and damages. The Defendants have responded to the amended complaint with two motions, arguing—at times in concert, and at times on distinct grounds—for dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants those motions.

I

The Plaintiffs in this case consist of the Asian-American Licensed Beverage Association of Philadelphia ("AALBA"), a Pennsylvania non-profit corporation that represents approximately 110 Asian-owned liquor-licensed businesses—including named plaintiffs Yo Deli, Inc., Best Beer, Inc., Sky Beer Deli, Inc., Maya Investment Group, LLC, 7701 Ogontz, Inc., and CDD 725, Inc.—and the Arab American Business and Professional Association of The Delaware Valley ("AAB"), another Pennsylvania entity. The named defendants fall into two groups: (1) the "City

Defendants," including the Mayor of Philadelphia and the City itself, and (2) the "Commonwealth Defendants," consisting of the Attorney General of Pennsylvania, the Pennsylvania Liquor Control Board, and the Pennsylvania State Police Bureau of Liquor Control Enforcement.

The Plaintiffs focus their claims on the following three sets of laws, which they allege are discriminatorily enforced against their businesses and are unconstitutionally vague and overbroad. First, they challenge the city's "Curfew Ordinances," which are set forth in Sections 9-630, 9-641, 9-642, and 9-643 of the Philadelphia Code. Those sections work collectively to regulate the hours of operation for businesses deemed "Commercial Establishments" in specific areas, barring them from operating between 11:00 p.m. and 6:00 a.m. or, in some instances, midnight to 6:00 a.m. The ordinances define "Commercial Establishments" as businesses primarily selling goods for off-premises consumption, with certain exceptions for those holding a restaurant liquor license, gas stations, or other businesses that fall under various exclusions.

Second, the Plaintiffs challenge the city's "Nuisance Ordinance," codified in Chapter 9-4400 of the Philadelphia Code. The Nuisance Ordinance applies citywide and focuses on businesses that contribute to specific types of conduct that "interferes with the health, safety or welfare of the community," including unlawful alcohol consumption or sales, drug activity, street or sidewalk obstruction, and litter. It is enforced two primary ways. First, a business cited for three such incidents within a twelve-month period qualifies as a "chronic nuisance business." Second, "serious violent behavior" committed on the premises or "on the sidewalk or street abutting the business" can lead to a "critical nuisance business" designation.

Once a business is classified in either category, the city may issue a "Notice of Intent to Cease Operations," which does not require immediate closure, but compels the owner to show either that adequate measures are in place to address the nuisance or to enter a nuisance abatement

plan with the city. If the business owner fails to adopt or implement a sufficient plan, the city may then issue a final "Cease Operations Order." That order takes effect when: (a) the business owner does not request administrative review of the order within five days; (b) after completing an administrative review, the city finds that the owner failed to adopt or implement a sufficient plan; or (c) the city determines that immediate closure is required to protect health, safety, or welfare, even before the owner has an opportunity to remedy the problem. Once the order is in effect, the owner may file an appeal with the city's Board of License and Inspection Review.

Third and finally, the Plaintiffs challenge § 4-470(a.1) of the Pennsylvania Liquor Code, which concerns the periodic renewal of Restaurant Licenses ("R-Licenses") and Eating Place Retail Licenses ("E-Licenses"). Under this provision, the Pennsylvania Liquor Control Board ("PLCB") may refuse to renew a liquor license:

> (1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;
>
> (2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or were involved in a license whose renewal was objected to by the Bureau of Licensing under this section;
>
> (3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or
>
> (4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

47 P.S. § 4-470(a.1).

II

Both the City and Commonwealth Defendants now move to dismiss the twelve-count amended complaint. They base part of their motions on Federal Rule of Civil Procedure 12(b)(1), which raises the question of whether the Court has subject-matter jurisdiction over the action. Such motions fall into two categories: a facial or a factual attack on jurisdiction. A facial attack contests subject-matter jurisdiction without disputing the facts alleged in the complaint and requires the Court to treat the allegations of the complaint as true. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A factual challenge, on the other hand, attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When a factual challenge is made, there is no presumption of truthfulness attached to the plaintiff's allegations and the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. *Mortensen*, 549 F.2d at 891.

With respect to the remaining portions of the motions, the Defendants make a Rule 12(b)(6) challenge. To survive such a challenge, the complaint must contain sufficient factual matter that, taken as true, states a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the Third Circuit, courts resolve such challenges by: (1) identifying the elements of each claim; (2) setting aside conclusory assertions; and (3) evaluating whether the remaining well-pleaded facts, taken as true, plausibly give rise to relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787–89 (3d Cir. 2016).

III

A

The Court begins with the Commonwealth Defendants' assertion of sovereign immunity. As a general rule, under both Article III and the Eleventh Amendment, a state is immune from suit by a citizen, regardless of whether the action seeks legal, equitable, or declaratory relief, and regardless of whether the claims rest on federal or state law. *See Cory v. White*, 457 U.S. 85, 90 (1982); *see generally PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 510-11 (2021) (Gorsuch, J., dissenting) (explaining the difference between structural immunity and Eleventh Amendment immunity). As is relevant here, the Supreme Court has extended the immunity afforded by a state's sovereignty to its subordinate agencies, so long as those agencies qualify as "arms of the state." *See Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018).

Here, the Commonwealth Defendants maintain that the Pennsylvania State Police Bureau of Liquor Control Enforcement and the Pennsylvania Liquor Control Board each qualify for arm-of-the-state immunity from suit. In support, they cite to *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022) (holding that the Pennsylvania State Police is an arm of the Commonwealth), and *Patterson v. Pennsylvania Liquor Control Board*, 915 F.3d 945, 956 (3d Cir. 2019) (holding that the Pennsylvania Liquor Control Board likewise qualifies as an arm of the Commonwealth). The Plaintiffs, in response, concede that these agencies meet the arm-of-the-state standard. They maintain, however, that their immunity extends only to damages claims. Under *Ex parte Young*, 209 U.S. 123, 159 (1908), they say injunctive relief is still available.

But *Ex parte Young* permits federal suits against individual state officers for prospective equitable relief. Its narrow exception to the general rule does not extend to actions against the state or instrumentalities of the state. The Supreme Court has made this point clear: the *Ex parte*

*Young* exception "is narrow . . . and has no application in suits against the States *and their agencies*, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added); *see also MCI Telecommunication Corp. v. Bell A. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001). So, because the Pennsylvania State Police Bureau of Liquor Control Enforcement and the Pennsylvania Liquor Control Board are arms of the Commonwealth—and not individual officials—they do not fall within the *Ex parte Young* exception to sovereign immunity, and the Court must dismiss the claims against them with prejudice.

Still though, there remains the Attorney General of Pennsylvania, named in his "official capacity" as a defendant. The Commonwealth Defendants maintain that the Attorney General likewise enjoys sovereign-immunity protection. They argue that the *Ex Parte Young* exception does not apply because the Attorney General himself is not engaged in any "ongoing violation of federal law," which is another requirement that must be met before the *Ex parte Young* exception applies. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). They emphasize that the Pennsylvania State Police Bureau of Liquor Control Enforcement, not the Attorney General, bears statutory responsibility for administering and enforcing the Liquor Code. *See Pa. State Police v. Hospitality Invs. of Phila., Inc.*, 689 A.2d 213, 214 (Pa. 1997). They also argue that the Commonwealth Attorneys Act sets forth only limited circumstances in which the Attorney General may prosecute offenses or otherwise assume responsibility for law enforcement, *see* 71 P.S. § 732-205, and that any enforcement authority delegated to the Attorney General is "too attenuated" to establish his direct involvement in an ongoing federal-law violation.

The Plaintiffs respond that the Attorney General wields substantial authority over the statutory framework governing the Liquor Code. And they cite to Pennsylvania case law

indicating that the Attorney General is the "sole legal advisor" to the Liquor Control Board, *see Pennsylvania Liquor Control Bd. v. Kusic*, 299 A.2d 53, 55 (Pa. Cmmw. Ct. 1973), as well as the state constitution's designation of him as the Commonwealth's "chief law officer," Pa. Const. art. IV, § 4.1.  Plaintiffs add that the Attorney General is statutorily bound to uphold and defend Pennsylvania laws, *see* 71 P.S. § 732-204, and that the Commonwealth Attorneys Act requires the Pennsylvania State Police, including Bureau of Liquor Control Enforcement, to cooperate with him in law enforcement matters, *see* 71 P.S. § 732-206.  In Plaintiffs' view, these sources of law confirm that the Attorney General is actively involved in enforcing the challenged Liquor Code provisions—enough to bring him within ambit of the *Ex Parte Young* exception.

The question presented to the Court, therefore, is whether the duties assigned to the Attorney General—such as advising the Liquor Control Board, defending the constitutionality of state laws, and directing cooperation by the Pennsylvania State Police—demonstrate the level of active participation required under *Ex parte Young* to fall within its exception.  The Court concludes that these general legal authorities do not.  As recognized in *Doe v. Schorn*, the mere possibility the Attorney General might someday become involved with a challenged law is generally too attenuated to sustain a suit for injunctive relief under the theory of *Ex parte Young*. *See* 711 F. Supp. 3d 375, 387-89 (E.D. Pa. 2024) (collecting similar cases).

Here, Plaintiffs neither allege nor present any factual basis for the Court to find that Attorney General Sunday is actively involved in the liquor-license renewal provisions of the Pennsylvania Liquor Code.  The relevant statutory section, 47 P.S. § 4-470(a.1), neither mentions the Attorney General nor hints at any Attorney General direct involvement in the license renewal process.  The authority over license renewals rests explicitly with the Pennsylvania Liquor Control

7

Board. Accordingly, as the Attorney General's involvement appears merely speculative and is too attenuated, the claims against Attorney General Sunday are dismissed.

B

The Court next addresses the Defendants' contention that the Plaintiffs lack standing under Article III. As the Supreme Court has made clear, a plaintiff satisfies the standing requirement by demonstrating: (1) an injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a "likely" prospect that a favorable ruling would redress that injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). And where an organization seeks to sue on behalf of the interests of its members, the Supreme Court has held three additional conditions must be met: (1) the organization's members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the asserted claim nor the relief requested requires individual members' direct participation. *Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 228 n.10 (3d Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Starting with the Curfew Ordinances, the City Defendants maintain that no individual Plaintiff has alleged any injury in fact. They note that the amended complaint does not allege that any of the individual Plaintiffs are located within the regulated geographic zone, nor does it allege that any of the Curfew Ordinances have actually been enforced against them. The Court agrees. None of the individual Plaintiffs have alleged that they are covered by the curfews. They have therefore not demonstrated any Article III injury. The individual Plaintiffs' claims are consequently dismissed. *Cf. Warth v. Seldin*, 422 U.S. 490, 504-05 (1975) (holding that plaintiffs who challenge a municipality's allegedly exclusionary practices must demonstrate personal harm).

With respect to the organizational Plaintiffs—AALBA and AAB—the City Defendants also maintain that these Plaintiffs have not demonstrated standing to challenge the Curfew Ordinances. They observe that, under *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009), an organization must offer "specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm," and that the amended complaint alleges only that "many . . . members" have been subject to the Curfew Ordinances and that "at least fifteen" members of AALBA are bound by the Ordinances.

After carefully reviewing the amended complaint, the Court agrees with the City Defendants' critique. The amended complaint does not identify with any particularity which businesses are regulated, nor does it clarify which version of the Curfew Ordinances applies to each member. As the amended complaint now stands, the organizations' curfew claims consist of conclusory, no-name and non-specific assertions of their members being affected—precisely the type of allegations that the Supreme Court has held insufficient to establish standing. *See id*. Absent specific identifications, the Court concludes that the organizational Plaintiffs lack standing to challenge the Curfew Ordinances. The organizational Plaintiffs' claims challenging the Curfew Ordinances are therefore dismissed.

Lastly, the City Defendants move to dismiss the portion of Plaintiffs' amended complaint that challenges the Nuisance Ordinance for lack of Article III standing. They present two principal arguments. First, they contend that the warnings and citations issued by the City to a handful of the named Plaintiffs do not constitute an "injury in fact" under Article III. Second, they argue that the Plaintiffs' fears of future enforcement fail to meet the standard required by the Third Circuit to sustain a pre-enforcement challenge.

As is frequently mentioned, to satisfy the injury-in-fact requirement of standing, a plaintiff must demonstrate a "concrete and particularized" harm that is "actual or imminent," rather than "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). In *Spokeo*, the Supreme Court instructed that, in determining whether an intangible harm constitutes injury in fact, courts should assess whether the alleged injury has a "close relationship" to a harm "traditionally" recognized as the basis for a lawsuit in American courts. *Id*. at 340-41. The Court reaffirmed this principle in *TransUnion LLC v. Ramirez*, explaining that plaintiffs must identify a clear historical or common-law analogue for their asserted injury to sustain a federal civil action. 594 U.S. 413, 424 (2021).

Here, Plaintiffs attempt to create Article III standing by attaching to the amended complaint various warning letters and Code Violation Notices ("CVNs"), and by making various averments about "inspections" by city officials at Plaintiffs' businesses. For example, Plaintiff 7701 Ogontz received a warning after two individuals were arrested nearby on suspicion of drug activity; Plaintiff Maya Investment Group LLC was issued several CVNs for patrons allegedly drinking alcohol on the sidewalk; Plaintiff 700 SE Inc. received two warnings related to alcohol consumption and the presence of empty beer containers on or near its premises; and Plaintiff CDD 725, Inc. experienced multiple inspections by city officials.

As Plaintiffs concede, however, in each instance, no fines were assessed, no closures were ordered, and no intent-to-cease-operations notices were issued. These government actions required no affirmative response on the part of Plaintiffs. As the complaint currently stands, no concrete harm is therefore apparent, and the Plaintiffs have identified no common-law analogue that would remedy the harm caused by a government notice or citation that carries no punishment,

penalty, or requirement to do anything. As such, the Court concludes that these acts do not, in and of themselves, establish a concrete harm sufficient to confer standing under Article III.

If anything, this evidence potentially supports pre-enforcement theory of standing. Under *National Shooting Sports Foundation v. Attorney General of New Jersey*, a plaintiff raising a pre-enforcement challenge must: "(1) intend to take action that is (2) 'arguably affected with a constitutional interest' but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against them is substantial." 80 F.4th 215, 219 (3d Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Here, Plaintiffs offer two forms of future action that they intend to take, both of which they claim involve constitutional interests: (1) continuing to lawfully operate their businesses, and (2) reporting criminal activity occurring on or near their businesses to law enforcement. Plaintiffs' second argument appears to suggest that if they report such activity, the city may then cite their businesses for nuisance behavior, potentially leading to closure.

Even assuming that these intended actions qualify for constitutional protection, which the City Defendants do not dispute, the Plaintiffs fail to satisfy the third element of a pre-enforcement challenge. That is, to sustain such a challenge, Plaintiffs must demonstrate that their conduct is arguably prohibited by the challenged law—some nexus is required. Here, the Plaintiffs have demonstrated none.

Again, the Nuisance Ordinance specifically prohibits the following conduct:

(a)   Illegal consumption or sale of alcoholic beverages;

(b)   Illegal drug activity;

(c)   Unlawful street or sidewalk obstruction;

(d)   Gambling and illegal gaming activities;

(e)   Public urination or defecation;

11

    (f)       Litter in the right-of-way, including the sidewalk or street;

    (g)       Prostitution;

    (h)       Owning, operating, or conducting a vehicle chop shop for dealing in stolen vehicles or parts, or for illegally obtaining and altering vehicle identification numbers;

    (i)       Vehicles parked on the sidewalk;

    (j)       Use of street parking spaces or sidewalks for open storage, sale, or rental of goods, or for storage or repair of inoperable vehicles;

    (k)       Unlicensed or unlawful firearm possession by a patron;

    (l)       Short dumping;

    (m)       Unlawful junk dealer operations;

    (n)       Disorderly conduct and related behavior;

    (o)       Violations of the Pennsylvania Liquor Code (47 P.S. §§ 1-101 *et seq.*), specifically unlawful acts related to liquor and licensees (47 P.S. § 4-493);

    (p)       Obstruction of an investigation into nuisance behavior;

    (q)       Repeated or continuing violations of any other City ordinance or regulations;

    (r)       Any other activity that constitutes a public nuisance under The Philadelphia Code.

The ordinance does not prohibit the Plaintiffs from "lawfully operating" a business, nor does it prohibit any Plaintiff from calling 911 or reporting criminal activity. As the City Defendants correctly note, "merely fearing a consequence from expressive activity, where the expressive activity itself is not subject to the challenged regulation, is not a legally cognizable harm." Mem. of L. in Supp. of City Defs.' Mot. to Dismiss Am. Compl. at 16, ECF No. 34. And so, because Plaintiffs have failed to demonstrate a concrete harm resulting from the issued warnings, CVNs, and government inspections, and because they have otherwise not shown that any of their intended

conduct is proscribed by the Nuisance Ordinance, they lack Article III standing.  Accordingly, their claims challenging the Nuisance Ordinance are dismissed.

III

For the reasons set forth above, the claims asserted against the Pennsylvania Liquor Control Board and the Pennsylvania State Police Bureau of Liquor Control Enforcement are dismissed with prejudice.  The remaining claims are dismissed without prejudice.